# EXHIBIT A-33

# DISTRICT OF COLUMBIA COURT OF APPEALS

# BOARD ON PROFESSIONAL RESPONSIBILITY



RECEIVED

Sep 1 2022 4:52pm

Board on Professional Responsibility

In the Matter of

**JEFFREY B. CLARK**

**A Member of the Bar of the District of Columbia Court of Appeals**

**Bar No. 455315**

**Date of Admission: July 7, 1997**

**Disciplinary Docket No.**

**2021-D193**

## ANSWER OF RESPONDENT

Comes now Jeffrey B. Clark, Respondent in the above-entitled matter, and for his Answer to the Specification of Charges, pleads the following, subject to the caveat that this filing is made in a fashion akin to a special appearance designed merely to preserve all of and not waive any of Respondent's rights, since Respondent steadfastly maintains that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████:[1]

---

[1] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

FIRST DEFENSE— 

SECOND DEFENSE—

_____

[2] The listing of all defenses beginning with this one should not be taken to mean that Respondent is assuming the burden of proof as to every one of the defenses pleaded. To the contrary, on many of the defenses, ODC bears the burden, especially regarding the jurisdictional defenses, since ODC must affirmatively establish that jurisdiction exists in this case.

### THIRD DEFENSE—JURISDICTION IS ABSENT IN LIGHT OF THE TAKE CARE CLAUSE, OPINION CLAUSE, AND LACK OF COMPLAINT AGAINST RESPONDENT BY THE FORMER PRESIDENT

The D.C. Bar lacks jurisdiction over the conduct of the Respondent referred to in the Charges because the President has an absolute right to seek legal and other forms of advice as to the discharge of his responsibilities under the Take Care Clause, U.S. Const., art. II, § 3, and officers of the United States have an absolute duty and corresponding privilege to provide their opinions on a confidential basis when the President so asks. U.S. Const. art. II, § 2, cl. 1 (Opinion Clause). D.C. R.P.C. 2.1.[3] At no time has President Trump complained about the legal, factual, and/or policy advice he received from Respondent or voluntarily submitted a dispute of that nature to the D.C. Bar for investigation and adjudication.

### FOURTH DEFENSE—JURISDICTION IS ABSENT UNDER THE OPINION CLAUSE COUPLED WITH 28 U.S.C. § 506 AND THE AUGUST 2, 1985 OLC OPINION

The D.C. Bar lacks jurisdiction over the conduct of the Respondent referred to in the Charges under the Opinion Clause of Article II of the U.S. Constitution. *See also* 28 U.S.C. § 506 (most Assistant Attorney Generals, including Mr. Clark, to be appointed by President with advice and consent of Senate); U.S. Department of Justice, Office of Legal Counsel Opinion, *State Bar Disciplinary Rules as Applied*

---

[3] Rule 2.1 provides, in full: "In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social, and political factors, that may be relevant to the client's situation."

*to Federal Government Attorneys* (Aug. 2, 1985) ("Rules promulgated by state courts or bar associations that are inconsistent with the requirements or exigencies of federal service may violate the Supremacy Clause."), *available at* https://tinyurl.com/56bft7sb, *last visited* (Sep. 1, 2022) ("OLC Opinion").

### Fifth Defense—Jurisdiction Is Absent Where It Would Invade a Sphere of Unreviewable Presidential Authority

The D.C. Bar lacks jurisdiction over the conduct of Respondent referred to in the Charges under the Constitution of the United States because attempting to assert jurisdiction over Respondent's conduct as alleged in the Charges would intrude on the President's exclusive and unreviewable authority over federal criminal and civil investigations occurring during his term of office, pursuant to the Take Care Clause and as such authority is delegated by the President consistent with the U.S. Department of Justice power structure established in 28 U.S.C. § 506.

### Sixth defense—Jurisdiction Is Absent Where It Would Intrude on Presidential Appointments Clause Prerogatives

The D.C. Bar lacks jurisdiction over the conduct of Respondent referred to in the Charges under the Constitution of the United States because attempting to assert jurisdiction over Respondent's conduct as alleged in the Charges would intrude on the President's exclusive and unreviewable authority to remove and appoint senior officials of the Department of Justice. *See* U.S. Const. art. II, § 2, cl. 2 (Appointments Clause). Note as well that the House Select Committee on January 6 presented

evidence that at the time an Oval Office meeting is said to have commenced on January 3, 2022, Respondent was then the Acting Attorney General of the United States, even though that later changed.

SEVENTH DEFENSE—THE BOARD HAS NO JURISDICTION TO ENFORCE UNANIMITY AMONG THE OFFICERS OF THE DEPARTMENT OF JUSTICE IN THE ADVICE THEY OFFER TO THE PRESIDENT, OR TO PUNISH ANY OFFICER WHO DISAGREES WITH THE VIEWS OF OTHER PRINCIPAL OFFICERS OR PARTICULARLY WITH THE INDIVIDUAL OPINIONS OF THE ACTING ATTORNEY GENERAL OR DEPUTY ATTORNEY GENERAL AND SO ADVISES THE PRESIDENT UPON REQUEST

The President of the United States is the chief law enforcement officer of the United States and is the ultimate decision maker on all contested issues of policy on which advice has been requested. U.S. Const. art. II cl. 1 (Vesting Clause). The President is advised in that capacity by the officers who exercise the authorities assigned by law to the Department of Justice. These include the Attorney General, any Acting Attorney General, the Deputy Attorney General, the Principal Associate Deputy Attorney General, and Senate-confirmed Assistant Attorneys General. Nothing in the Constitution and laws of the United States limits the President's unreviewable authority to seek the opinion of any subordinate, or the absolute the duty of any such subordinate to respond to a Presidential request with anything other than "candid advice" formed on the basis of "independent professional judgment". U.S. Const. art. II, § 2, cl. 1 (Opinion Clause). D.C. R.P.C. 2.1 & Comment [1].

The Charges repeatedly, and erroneously, assume that Senate-confirmed attorneys who exercise the authorities of the Department of Justice entrusted to them by virtue of their appointments may not ethically dissent from the "consensus view" within the Department or from the publicly expressed opinions of a former Attorney General, or with the privately expressed opinions or policy advice of others holding Senate-confirmed positions within the Department of Justice. Neither Acting Attorney General Rosen nor former Principal Associate Deputy Attorney General Donoghue, performing the duties of the Deputy Attorney General, were the ultimate decision makers. Nor did they speak in meetings with the President for some collective entity known as "The Department of Justice;" they spoke for themselves in their respective official capacities as advisors to the President of the United States, with the President at all times retaining the ultimate unitary law enforcement power under the Take Care Clause.

It is especially wrong as a legal matter to conflate the views of the Department of Justice with the views of Messrs. Rosen and Donoghue where there was the prospect (or later, for a time, the actuality) that the President would replace one or the other of them with Respondent, allowing Respondent to determine the final views of the Department of Justice prior to a decision by the President of whether to concur or overrule any such tentative determination.

By virtue of his appointment and in accordance with his obligations as a lawyer, Respondent was obligated to and entitled to express his "independent professional judgment" and to submit his "candid" advice to the President upon request.

### EIGHTH DEFENSE—JURISDICTION IS ABSENT OVER FEDERAL EXECUTIVE BRANCH DELIBERATIONS IN LIGHT OF THE SEPARATION OF POWERS AND THE SUPREMACY CLAUSE

The D.C. Bar lacks jurisdiction over the conduct of the Respondent referred to in the Charges because 28 U.S.C. § 530B(a) does not grant to local bar regulatory entities any authority to regulate the conduct of U.S. Department of Justice lawyers in the course or conduct of confidential internal policy deliberations inside the Department or at the White House. Nor does the statute, by its terms, authorize the D.C. Bar to oversee the enforcement of internal DOJ and Executive Branch policies governing the conduct of their respective internal operations. If the statute were read to do so as to the D.C. Bar or D.C. Court of Appeals, it would violate the separation of powers because both the Bar and the D.C. Court of Appeals are creatures of Article I established by Congress and Congress cannot penetrate into the internal deliberations of the Executive Branch established under Article II to try to shape how those deliberations are conducted. Additionally, because Section 530B(a) refers to state laws and rules, even if D.C. could be considered a covered analogue of a State (which it is not because Congress must speak with clarity to deem that D.C. be

treated as if it were a State), application of Section 530B(a) to internal Executive Branch deliberations would be constitutionally conflict preempted as violative of the Supremacy Clause, U.S. Const., art. VI, cl. 2. States also lack the constitutional power to intrude on the Executive Branch's deliberations.

### NINTH DEFENSE—THE BOARD HAS NO JURISDICTION TO RESOLVE AN INTERBRANCH DISPUTE

The Board may not, consistent with the separation of powers, hear a complaint filed by a member of one branch of government against a lawyer serving in another branch of government to try to call down bar discipline onto advice or policy proposals offered in such a lawyer's official capacity.  An effort by a Senator or other Member of Congress to utilize the Board's procedures and personnel as weapons in a federal interbranch dispute presents political question (*see infra*) that is not justiciable in a disciplinary proceeding brought by the D.C. Bar. At the very least, such a dispute would be a separation of powers conflict that would have to be heard and could only be resolved by an Article III (not Article I) court or its adjunct.

### TENTH DEFENSE—NO TESTIMONY VIOLATING EXECUTIVE PRIVILEGE & THE SEPARATION OF POWERS CAN BE USED AGAINST RESPONDENT

The testimony against Respondent relied upon or solicited by ODC was given in violation of executive privilege, a vital component of the separation of powers, and also in violation of the separation of powers doctrine itself because the testimony facilitated an *ultra vires* intrusion by Congress and a local government entity into

the internal deliberations of the Executive Branch, and thus constitutes unethical conduct by any lawyers who provided such testimony, not unethical conduct by Respondent.

### ELEVENTH DEFENSE—NO RESPONDENT TESTIMONY CAN BE COMPELLED IN VIOLATION OF EXECUTIVE PRIVILEGE

Respondent cannot be forced to testify in violation of executive privilege.

### TWELFTH DEFENSE— NO TESTIMONY VIOLATING LAW ENFORCEMENT PRIVILEGE CAN BE USED AGAINST RESPONDENT

The testimony against Respondent relied upon or solicited by ODC was given in violation of law enforcement privilege and thus constitutes unethical conduct by any lawyers who provided such testimony, not unethical conduct by Respondent.

### THIRTEENTH DEFENSE—NO RESPONDENT TESTIMONY CAN BE COMPELLED IN VIOLATION OF LAW ENFORCEMENT PRIVILEGE

Respondent cannot be forced to testify in violation of law enforcement privilege, especially not as selectively enforced by the current U.S. Department of Justice, which appeared at certain congressional depositions of Messrs. Rosen and Donoghue (and possibly others) to assert law enforcement privilege over ***some questions*** going to DOJ law enforcement activities related to the 2020 presidential election but not over other questions on the same topic. Waiver and assertion of law enforcement privilege cannot be used as both a sword and a shield against Respondent in any manner consistent with his constitutional rights to due process and confrontation of witnesses against him.

9

### Fourteenth Defense—No Testimony Violating Attorney-Client Privilege Can Be Used Against Respondent

The testimony against Respondent solicited by ODC was given in violation of attorney-client privilege and thus constitutes unethical conduct by any lawyers who provided such testimony, not unethical conduct by Respondent.

### Fifteenth Defense—No Respondent Testimony Can Be Compelled in Violation of Attorney-Client Privilege

Respondent cannot be forced to testify in violation of attorney-client privilege.

### Sixteenth Defense—Testimony in Violation of Applicable Privileges Would Violate Due Process

Receiving testimony against Respondent into evidence in this proceeding that was given in violation of any of executive privilege, law enforcement privilege, or attorney-client privilege would violate due process because Respondent, observing one or more of the applicable privileges, cannot counter the testimony given against him without violating one or more of the privileges, creating a procedural Catch-22 of which ODC and the D.C. Bar generally have now been put on notice.

### Seventeenth Defense—Testimony in Violation of Applicable Privileges Would Violate the Confrontation Clause

Receiving the testimony against Respondent into evidence in this proceeding that violates any of executive privilege, law enforcement privilege, or attorney-client privilege would violate the Confrontation Clause (U.S. Const., amend. VI) because Respondent, observing one or more of the applicable privileges, cannot counter and

thus confront the testimony given against him without violating one or more of the privileges, creating a second procedural Catch-22.

EIGHTEENTH DEFENSE—D.C. BAR JURISDICTION WOULD VIOLATE THE MAJOR QUESTIONS DOCTRINE

The D.C. Bar lacks jurisdiction over the conduct of the Respondent referred to in the Charges because 28 U.S.C. § 530B does not clearly delegate to the Department of Justice the power to confer on the District of Columbia authority to regulate lawyers serving in the Department of Justice, especially not those interacting with the President to deliberate and decide on questions that reach the President for resolution. *See, e.g., West Virginia v. EPA*, 142 S. Ct. 2587 (2022); *Hickman v. Train*, 426 U.S. 167 (1976); OLC Opinion.

*West Virginia* establishes a clear-statement rule known as the "major questions doctrine." Whether considered (1) as a class of questions (i.e., whether state and local bars can ever regulate internal Executive Branch deliberations on legal matters) or (2) an as-applied question of whether Respondent's legal advice and opinions on extant facts as rendered to the President and to his Department of Justice superiors concerning irregularities in the 2020 presidential election, major questions are presented. As such, any statute authorizing state, local, or D.C. regulation of such questions requires a clear statement from Congress delegating that power. These are major questions of both a political nature and implicate core features of federalism and/or the separation of powers. *Id.* at 2607-08; *id.* 2617, 2621 (Gorsuch, J.,

11

concurring) (doctrine protects both separation of powers **and** federalism).

NINETEENTH DEFENSE—DOJ REGULATION AT 28 C.F.R. § 77.2(h),
PURPORTING TO GIVE D.C. BAR JURISDICTION VIOLATES THE *CHEVRON*
DOCTRINE BECAUSE THE REGULATION IS CONTRARY TO
28 U.S.C. § 503B

Even if the D.C. Bar could surmount the hurdle of the major questions
doctrine (which it cannot), the D.C. Bar lacks jurisdiction over the conduct of the
Respondent referred to in the Charges because 28 C.F.R. § 77.2(h), the Justice
Department regulation adopted under 28 U.S.C. § 530B, purports to grant the
District of Columbia some regulatory authority over lawyers serving in the
Department of Justice, but that is an expansion of Section 530B not authorized by
the text of the statute. To the extent the regulation purports to do so, it is invalid
under *Chevron* step one. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 n.9
(1984); *see also West Virginia*, 142 S. Ct. at 2609 ("We presume that Congress
intends to make major policy decisions itself, not leave those decisions to agencies."
(cleaned up)). *West Virginia* thus establishes a *Chevron* step zero that Section 77.2(h)
flunks because there is no indication that Congress ever wished to commit to States
or to Article I local government entities like this Bar and the D.C. Court of Appeals
the major question of how the Executive Branch and, in particular, the Justice
Department, conducts legal and factual deliberations at the core of the President's
Article II law enforcement authorities.

### Twentieth Defense—The D.C. Court of Appeals and Its Subordinate Entities Lack Supervisory Jurisdiction Over the Charged Conduct

The D.C. Bar lacks jurisdiction over the conduct of the Respondent referred to in the Charges because none of the conduct as alleged occurred in a setting over which a local Court of the District of Columbia has supervisory jurisdiction. The authority to regulate the confidential internal policy-making, legal advisory deliberative conduct of senior U.S. Justice Department lawyers such as Respondent, as alleged in the Charges, lies in the Executive Branch alone.

### Twenty-First Defense—Finding a Violation Based on the Charges Would Violate the First Amendment's Protections for Speech, Associations, and Political Affiliation

The D.C. Bar lacks jurisdiction over the conduct of the Respondent referred to in the Charges because the First Amendment provides absolute protection for political speech and legal opinion given in good faith on a matter of public importance by a senior U.S. Justice Department lawyer acting within the scope of his authority as a senior officer of the Executive Branch.  Respondent also cannot be penalized for his political affiliations, associations, or speech.

### Twenty-Second Defense—D.C. Bar Jurisdiction Would Violate 28 U.S.C. § 530B's Limited Statutory Jurisdiction

The D.C. Bar lacks **statutory** jurisdiction over the conduct of the Respondent referred to in the Charges because, even if 28 U.S.C. § 530B granted disciplinary authority in circumstances like those here to the D.C. Bar, it only does so "to the

same extent and in the same manner as other attorneys in that State," and the D.C. Bar has never charged, much less disciplined, conduct like that alleged in the Charges.

### Twenty-Third Defense—D.C. Bar Jurisdiction Would Violate 28 C.F.R. § 77.2(j)(2)'s Limited Regulatory Jurisdiction

Even if there were valid Section 530B statutory jurisdiction here (which there is not), the D.C. Bar lacks *regulatory* jurisdiction over the conduct of the Respondent referred to in the Charges because 28 C.F.R. § 77.2(j)(2) (even assuming Section 77.2 is a valid enactment consistent with both the major questions doctrine and *Chevron*, which it is not, at least as applied here) denies jurisdiction to the D.C. Bar where it would otherwise exist if the D.C. Bar "would not *ordinarily* apply its rules of ethical conduct to particular conduct or activity by the attorney." The D.C. Bar not only does not ordinarily apply its rules of ethical conduct to the charged conduct of the Respondent, it has never done so and ODC has never offered a single case for that proposition to rebut this defense, despite being challenged to do so multiple times.

### Twenty-Fourth Defense – Respondent is Entitled to Official Immunity or Qualified Immunity

The conduct referred to in the Charges is not subject to discipline by the D.C. Bar under the doctrine of official immunity. *See, e.g.*, *Nixon v. Fitzgerald,* 457 U.S. 731 (1982); *Banneker Ventures, L.L.C. v. Graham*, 798 F.3d 1119 (2015); *Clifton v.*

14

*Cox*, 549 F.2d 722, 729-30 (9th Cir. 1977). In the alternative, he is entitled to qualified immunity.

### TWENTY-FIFTH DEFENSE—FAILURE TO STATE A RULES VIOLATION

The Charges fail to state a violation of the Rules of Professional Conduct.

### TWENTY-SIXTH DEFENSE—LACK OF DUE PROCESS FAIR NOTICE

Respondent lacks fair notice that the conduct alleged in the Charges constituted a violation of the D.C. Bar Rules. There is no case like this one in the annals of ethical decisions in the District or in any State in the Nation. No Senate-confirmed lawyer at the Justice Department in December 2020 to January 3, 2021 could possibly have rationally expected that the local ethics rules would either apply or that they would be claimed to have been violated by taking a position in an internal Executive Branch dispute. As such, the Charges violate due process.

### TWENTY-SEVENTH DEFENSE—NO VIOLATION OF RULE 8.4(A) FOR CONFIDENTIAL, INTERNAL, PRE-DECISIONAL DISCUSSION DRAFT DOCUMENTS PROPOSING A CHANGE IN POLICY FOR DISCUSSION

The Charges fail to state a violation of Rules of Professional Conduct 8.4(a) and 8.4(d) because it is logically and legally impossible to make an "attempted" false statement of fact concerning Department of Justice findings, determinations, or policy in a confidential, internal, pre-decisional DOJ discussion draft when the draft self-evidently proposed a change in the findings, determinations, and policy that on their face could not be operative without the approval of Respondent's superiors,

including the President. The draft letter the Charges focus on presents a colorable view of relevant sworn facts presented in a Georgia state legislative process.

### Twenty-Eighth Defense—Rules 8.4(a) and 8.4(d) Cannot Be Violated Where Rule 2.1 Conduct Designed to Make a Proposal to Superior Lawyers and to the Ultimate Decisionmaker Is Involved

The Charges fail to state a violation of Rules of Professional Conduct 8.4(a) and 8.4(d) because it is logically and legally impossible for any lawyer, including Respondent, to "attempt" a "serious interference with the administration of justice" while proposing, in conformity with D.C. Rule of Professional Conduct 2.1, a position in confidential internal pre-decisional policy deliberations on contested issues of fact, law, and policy that was subject to approval by Respondent's superiors, including by the President of the United States as the ultimate authority.

### Twenty-Ninth Defense—No Violation of Rule 8.4(c) When Superior Lawyers Would Not Allow Access to Investigative Files

Respondent cannot have engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Rule 8.4(c) as to the draft letter the Charges focus on, since the draft letter facially relies on sworn evidence presented to a Georgia state legislative body, where Messrs. Rosen and Donoghue would not share any DOJ investigative information with Respondent and instead presented the President of the United States and Respondent with an *ipse dixit* based only on their

personal assurances that whatever they had opted to investigate meant that there was no more investigation that should be done.[4]

### Thirtieth Defense—No Violation of Rule 8.4(d) Where Respondent's Conduct was Not Improper, Wrongful, or Otherwise Invalid

The Charges fail to state a violation of the Rule 8.4(d) of the Rules of Professional Conduct because Respondent's conduct as alleged was not improper, independently wrongful, or otherwise unlawful.

### Thirty-First Defense—Rule 8.4(d) Is Not Violated Where the Final Decisionmaker Resolves Conflicting Advice And Never Complains About the Debate Raised to Him by His Lawyers

The Charges fail to state a violation of the Rule 8.4(d) of the Rules of Professional Conduct because they allege that Respondent engaged in a debate with other senior Department of Justice Officials over contested questions of fact, law, policy and what course of action the best administration of justice required, that these officials collectively submitted that dispute to the President for resolution, and the President decided the matter with finality, without complaining that the debate had been brought to him for resolution.

---

[4] This defense is not and cannot be construed as Respondent making statements in violation of the applicable privileges (*see supra*) but is instead based on information and belief about Messrs. Rosen and Donoghue's statements to ODC (which Respondent has not yet been provided), assuming that testimony is consistent with their testimony to the Senate Judiciary Committee and their thus far known testimony to the House Select Committee on January 6.

### THIRTY-SECOND DEFENSE—NO VIOLATION OF RULE 8.4(D) WHERE NO IMPACT ON ANY LEGAL PROCEEDING WAS CAUSED BY THE ALLEGED CONDUCT AND THERE WAS NO IMPACT ON THE EVENTS OF JANUARY 6, 2021

The Charges fail to state a violation of Rule 8.4(d) of the Rules of Professional Conduct because they fail to allege that the confidential, pre-decisional discussion draft at issue had any impact whatsoever on any proceeding anywhere or that Respondent himself attempted to interfere in any proceeding anywhere either before or after his policy proposals were rejected. Nor did the alleged confidential, pre-decisional discussion draft have any impact on the events of January 6, 2021 because press stories based on anonymous leaks from a January 3, 2021 meeting said to have involved the President and only a group of lawyers including Respondent did not emerge until weeks *after* January 6, 2021. Put differently and for example, no one could have marched on the Capitol in reliance on confidential advice given to the President based on publicly unknown policy deliberations not revealed until weeks after January 6.

### THIRTY-THIRD DEFENSE—NO VIOLATION OF RULES 8.4(a), (c), OR (d) IN COUNSELING THE NEED FOR ADDITIONAL 2020 ELECTION INVESTIGATIONS, IF THE INVESTIGATIONS THAT WERE PERFORMED WERE NONEXISTENT OR EXAGGERATED

Respondent cannot be found to have violated any aspect of Rule 8.4(a), (c), or (d) if former Attorney General Barr and Messrs. Rosen and Donoghue did not perform thorough multi-state investigations of election irregularities in 2020 as one witness has averred (former U.S. Attorney William McSwain) and as another has sworn to in testimony (Heidi Stirrup). Failing to conduct a federal investigation of irregularities that did or may have affected the outcome of the 2020 presidential election is a serious federal responsibility, not just a responsibility of state and local authorities or one that can be sloughed off onto the Trump campaign. Additionally, the U.S. Justice Department possesses not just criminal tools but civil enforcement tools. Respondent is entitled to show, as a defense to the allegations in the Charges, that his superiors at the Justice Department engaged in a dereliction of duty in how they approached the election irregularities involved in the 2020 election.

### THIRTY-FOURTH DEFENSE—SIGNIFICANT BODIES OF INFORMATION EXISTING PRIOR TO JANUARY 3, 2021 AND CONFIRMED THEREAFTER JUSTIFIED ADDITIONAL ELECTION INVESTIGATIONS BY DOJ

Significant bodies of information about election irregularities available ***before*** January 3, 2021 justified Respondent's actions. A reasonable lawyer at the Justice Department could have formed a good-faith belief that the level of investigation by Messrs. Barr, Rosen, and Donoghue as they testified to Congress concerning the

election was insufficient. Additionally, significant new bodies of information developed *after* January 3, 2021 reinforce the reasonableness of Respondent's alleged actions prior to and including on January 3, 2021.

### THIRTY-FIFTH DEFENSE—NO RULE OF PROFESSIONAL CONDUCT WAS VIOLATED AND ESPECIALLY NONE WAS VIOLATED WITH SCIENTER

Respondent denies that he has violated any Rule of Professional Conduct as alleged in the Charges and the Charges do not aver (or sufficiently aver) that Respondent harbored any scienter to act in a dishonest fashion for self-gain or to achieve an illicit objective for former President Trump.

### THIRTY-SIXTH DEFENSE—ODC'S PROSECUTION HERE IS POLITICAL IN NATURE

The Charges should be dismissed because they are brought for political reasons rather than any concern for enforcement of the Rules of Professional Responsibility. Consider that ODC appears not to have opened any investigation, despite the passage of about 19 months, into the anonymous leaks concerning the January 3, 2021 Oval Office meeting to the *New York Times* in late January 2021, and despite other questionable conduct of Messrs. Barr, Rosen, and Donoghue as referenced in this Answer.

### THIRTY-SEVENTH DEFENSE—POLITICAL QUESTION DOCTRINE

The Charges present political questions that the D.C. Court of Appeals is unable to reach and thus any administrative quasi-judicial adjunct of that Court operating under the rubric of the D.C. Bar similarly lacks such power.

### THIRTY-EIGHTH DEFENSE—VIOLATION OF EQUAL PROTECTION

The Office of Disciplinary Counsel wields its disciplinary authority here in a politically biased manner, prosecuting Republicans and especially supporters of former President Trump with excessive and improper zeal, while turning a blind eye to or only belatedly and grudgingly stirring itself to administer reluctant slaps on the wrist for egregiously dishonest or felonious conduct by Democrats and opponents of President Trump such as Kevin Clinesmith and Michael Sussman. This selective prosecution/disparate treatment of alleged violations of the Rules of Professional Conduct violates the equal protection component of the Fifth Amendment of the United States Constitution. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 214–18 (1995).

### THIRTY-NINTH DEFENSE—SELECTIVE PROSECUTION IN VIOLATION OF THE CONSTITUTION AND D.C. RULE OF PROFESSIONAL CONDUCT 3.8(a)

The Charges constitute a selective prosecution that violates equal protection, due process, and D.C. Rule of Professional Conduct 3.8(a). Many Democrat members of Congress and Democrat lawyers have questioned electoral victories by Republican Presidents Elect and none of them appear to have ever faced ethics

charges as a result.

### Fortieth Defense—ODC, on Information and Belief, Is Violating Due Process by Communicating with and Colluding with Congress

On information and belief, including the suspicious chronology of certain actions by ODC as they relate to actions by the January 6 Select Committee and the refusal of ODC to release to Respondent communications with members of Congress or their staff (including on the Senate side), ODC has been working as an adjunct to Congress rather than as an independent local prosecutor confined to looking to local rule considerations (and defenses under any applicable source of law). Such improper collusion, if proven, would constitute a violation of Respondent's due process rights under the Fifth Amendment.

### Forty-First Defense—ODC Collusion with Congress Violates the Separation of Powers

Incorporating the Thirty-Ninth Defense by reference, ODC's coordination with Congress has deprived Respondent of the benefits of the separation of powers, since the D.C. Bar is acting in an executive-like prosecutorial capacity, whereas Congress cannot act in such a capacity and evidence it solicited was gathered in an unconstitutional and otherwise unlawful fashion. The House Select Committee on January 6 is not affording due process rights, the analogue of Confrontation Clause rights, or complying with the evidentiary rule of completeness in its hearings. These defects are quasi-judicially noticeable and known to ODC.

### FORTY-SECOND DEFENSE—INVALID ODC COOPERATION WITH THE JANUARY 6 COMMITTEE COMPOUNDS THAT COMMITTEE'S LEGAL INFIRMITIES

Incorporating the Thirty-Ninth and Fortieth Defenses by reference, ODC abets a violation of the law governing congressional committees by cooperating with the January 6 Select Committee because the Committee is malformed in violation of law, the Committee is violating the governing rules controlling its conduct, and because it is conducting its proceedings in a Star Chamber-like fashion.

### FORTY-THIRD DEFENSE—IF ODC HAS BEEN COLLUDING WITH CONGRESS, THE CHARGES CONSTITUTE A BILL OF ATTAINDER DESIGNED TO TARGET RESPONDENT

If it is correct that ODC worked with one or more congressional Committees, their members or staff, then the Charges violate the constitutional prohibition on Bills of Attainder. *See* U.S. Const., art. I, § 9, cl. 3. Congress cannot evade the prohibition on Bills of Attainder by marrying its powers with the powers of local prosecutors to create local law offenses tailor-made to specific individuals.

### FORTY-FOURTH DEFENSE—ODC MAY NOT VIOLATE THE CONFIDENTIALITY OF THE INVESTIGATIVE STAGE OF THE DISCIPLINARY PROCESS OR TRY ITS CASE IN THE PRESS

On information and belief, ODC has been unlawfully coordinating with one or more members of the media to release information that feeds news stories attacking Respondent. This is unlawful and/or unethical conduct for Disciplinary Counsel and ODC more generally in several respects: (a) it violated the confidentiality of the investigative stage, D.C. Bar Rule XI, Section 17; and (b) it

23

had the effect of beginning to try this ethical matter in the press in violation of D.C. Bar Legal Ethics Opinion No. 358. *See also* Rules of Professional Conduct 3.6(c) and 3.8(f).

FORTY-FIFTH DEFENSE—BY BREACHING THE CONFIDENTIALITY OF THE INVESTIGATIVE STAGE, ODC GAVE COVER TO THOSE IT INTERVIEWED TO ALSO VIOLATE INVESTIGATIVE CONFIDENTIALITY

On information and belief, ODC breached the confidentiality of the investigative stage by informing, explicitly or implicitly, witnesses about the investigation of Respondent. Since the witnesses were informed in violation of the confidentiality rules, Disciplinary Counsel and/or others at ODC may have created opportunities for such witnesses to illegitimately leak to the media and thereby harm Respondent's reputation, his ability to mount a defense based on privilege and/or on the merits, and Respondent's ability to serve as a faithful Executive Branch agent protecting the separation of powers, executive, law enforcement, and attorney-client privileges.

FORTY-SIXTH DEFENSE—ODC'S FILING OF CHARGES OCCURRED AT LEAST IN PART TO PENALIZE RESPONDENT FOR EXERCISING HIS CONSTITUTIONAL RIGHTS, A COURSE OF CONDUCT THAT VIOLATES DUE PROCESS AND THE FIRST AMENDMENT

The filing of charges before any adjudication has been made by any federal, state, or local tribunal of any wrongdoing by Respondent is an attempt to penalize Respondent for refusing to comply with ODC's subpoenas (in different forms) in light of his Fifth Amendment rights not to be forced to testify against himself. Such

penalization/retaliation is a violation of the Due Process Clause of the Fifth Amendment. *See generally Ex Parte Young*, U.S. 193 (1908). This violation of due process was worsened because Respondent was specifically threatened with having to later fend off heightened sanctions for invoking his Fifth Amendment rights at the investigative stage, which is a form of conduct by Disciplinary Counsel that also constitutes unethical conduct.

### FORTY-SEVENTH DEFENSE—ODC MAY NOT FILE CHARGES IN A FASHION THAT VIOLATES THE UNCONSTITUTIONAL CONDITIONS DOCTRINE

The filing of Charges at this time is an attempt to put Respondent to a Hobson's choice in exercising his Fifth Amendment non-testimonial rights vs. accepting as a risk the loss of his bar license—an action that violates the unconstitutional conditions doctrine. Granting the pending Motion to Defer that Respondent has filed would solve some of the legal problems giving rise to this Forty-Sixth Defense.

### FORTY-EIGHTH DEFENSE—ODC TIMED THE FILING OF CHARGES TO TRIGGER DEADLINES THAT WOULD ARGUABLY HAVE TO BE MET WHILE RESPONDENT LACKED ACCESS TO HIS LEGAL RESEARCH FILES, THEREBY VIOLATING DUE PROCESS

The Charges were filed when ODC knew that Respondent, who has been closely involved in his own legal defense including to ODC's investigations, would be without access to the computer equipment on which he stored his legal research going all the way back to January 2022. The U.S. Department of Justice Office of

Inspector General raid on Respondent's home removing all of his electronic devices was widely and publicly reported. Only within the last few business days has the Department of Justice broached with undersigned counsel arranging for return of some, but not all of the devices. Those devices were returned on September 1, 2022, just before this Answer became due under protest. Filing charges when the subject lawyer is known to be placed in a difficult and artificially handicapped situation is a violation of Fifth Amendment due process. ODC could have contacted undersigned counsel to at least hold off the filing of charges until Respondent had access to his legal research files once more.

### Forty-Ninth Defense—Due Process Is Violated If Respondent Continues Not to Be Allowed to Access and Deploy National Security Information in His Defense

The Justice Department has repeatedly refused to allow unrestricted access to the intelligence community report on foreign election interference, so that Respondent can use it in his defense. As a result, proceeding with this action would violate due process. Additionally (and amplifying the due process defects), during the relevant timeframe, the Justice Department (a participant in the "intelligence community") blew hot and cold on whether there was foreign election interference in 2020, as has recently come to the fore in an acknowledgment by Facebook's Mark

Zuckerberg that the FBI urged him to censor the Hunter Biden laptop story by using algorithmic throttling techniques.[5]

### FIFTIETH DEFENSE—ODC'S INABILITY TO SHOW THAT ITS INVESTIGATION BEGAN WITH A COMPLAINT FILED BY SOMEONE WITH PERSONAL KNOWLEDGE REINFORCES THE LACK OF REGULATORY JURISDICTION UNDER SECTION 77.2

No client for the relevant legal advice, analysis, or investigative actions of Respondent has complained of his conduct. This matter began in violation of the D.C. Bar's longstanding policy to not process complaints lacking in personal knowledge. Senator Durbin filed the relevant complaint to ODC and he has no personal knowledge of any the facts or charges alleged in the Specification. This defense also reinforces the Nineteenth Defense, above, which denies state and local bars jurisdiction under Section 77.2's requirement that bars cannot proceed where it "would not ***ordinarily*** apply its rules of ethical conduct to particular conduct or activity by the attorney."

### FIFTY-FIRST DEFENSE—*RES JUDICATA*/PRECLUSION

The second impeachment trial of President Trump resulted in acquittal and during the trial in the Senate, Respondent's conduct as attacked in the Charges was explicitly questioned and argued to be improper at this impeachment trial. The lack

---

[5] *See* Thomas Barrabi, *Mark Zuckerberg Tells Joe Rogan Facebook Was Wrong to Ban the Post's Hunter Biden Laptop Story*, NEW YORK POST (Aug. 25, 2022), https://tinyurl.com/bdeysxck, *last visited* Sep. 1, 2022 ("[Zuckerberg] said the platform opted to limit sharing on the story—but not halt it entirely—***after the FBI told Meta employees to be wary of Russian propaganda ahead of the election***") (emphasis added).

of a finding of guilt is *res judicata* benefitting President Trump and any of his subordinates who may have agreed with him that the 2020 election was a proper subject to be questioned and investigated more thoroughly by the federal government. Alternatively, issue preclusion (collateral estoppel) bars the Charges.

### FIFTY-SECOND DEFENSE—ODC CANNOT BE ALLOWED TO ARTFULLY PLEAD AROUND RULE 8.4(b) IN ORDER TO RUSH RESOLUTION OF THIS CASE

ODC cannot avoid actual or potential overlap between this proceeding and any possible future criminal matter by artfully pleading around asserting a violation of Rule 8.4(b). ODC is motivated to engage in such a pleading trick in order to try to avoid increasing the likelihood that the Board would grant deferral relief as to the Charges. In many respects, ODC is imprudently trying to rush its Charges, even if they could otherwise run the gauntlet of all jurisdictional and merits defenses, which it cannot.

### FIFTY-THIRD DEFENSE—THE CHARGES VIOLATE THE D.C. HUMAN RIGHTS ACT BECAUSE THEY DISCRIMINATE AGAINST RESPONDENT'S POLITICAL AFFILIATIONS AND BELIEFS

Respondent is being discriminated against in violation of D.C. Human Rights Act, § 2-1401.01, on account of his political affiliation and beliefs.

### FIFTY-FOURTH DEFENSE - RESPONSE TO ENUMERATED CHARGES/GENERAL DENIAL

Answering specially and subject to and without waiving any of the foregoing defenses, particularly the jurisdictional defenses, Respondent answers the enumerated paragraphs of the Charges as follows:

1.

Admitted. Respondent admits that at the time of the conduct alleged in the Charges he was the Senate-confirmed Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice as well the Acting Assistant Attorney General for the Civil Division, making him the only Assistant Attorney General supervising two of the Justice Department's seven litigating Divisions.

2. through 31.

In response to enumerated paragraphs 2 through 31, Respondent declines to answer and asserts his rights under the Fifth Amendment privilege against self-incrimination To the extent any answer is required, and preserving his Fifth Amendment rights against self-incrimination, Respondent generally denies all allegations of professional misconduct in paragraphs 2-31. *See In re Artis*, 883 A.2d 85, 93 (D.C. 2005).

To the extent any further answer is required, and preserving his Fifth Amendment rights against self-incrimination, any allegations not otherwise generally denied are hereby generally denied.

Respectfully submitted this 1st day of September, 2022.

/s/ Charles Burnham
Charles Burnham
Burnham and Gorokhov, PLLC
DC Bar No. 1003464
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Harry W. MacDougald*
Georgia Bar No. 453076
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

* Motion for pro hac vice admission in progress

Robert A. Destro*
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207
202-319-5303
robert.destro@protonmail.com

*Motion for pro hac vice admission in progress

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this *Answer of Respondent* by U.S. First Class Mail with sufficient postage thereon to insure delivery, and by email addressed to:

Hamilton P. Fox
Jason R. Horrell
D.C. Bar
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org

This this 1st day of September, 2022.

*/s/ Charles Burnham*
Charles Burnham
DC Bar No. 1003464

Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com