# EXHIBIT A-42

# DISTRICT OF COLUMBIA COURT OF APPEALS

# BOARD ON PROFESSIONAL RESPONSIBILITY

### Under Seal

RECEIVED

Sep 12 2022 3:51pm

Board on Professional Responsibility

| | |
|---|---|
| **In the Matter of** | |
| **JEFFREY B. CLARK** | **Disciplinary Docket No.** |
| **A Member of the Bar of the District of Columbia Court of Appeals** | **2021-D193** |
| **Bar No. 455315** | |
| **Date of Admission: July 7, 1997** | |

## REPLY BRIEF IN SUPPORT OF MOTION
## TO DISMISS

Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Harry W. MacDougald*
Georgia Bar No. 453076
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

* *Motion for pro hac vice application in progress*

Robert A. Destro*
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207
202-319-5303
robert.destro@protonmail.com

*\*Motion for pro hac vice admission in progress*

# TABLE OF CONTENTS

Table of Authorities ............................................................................. iii

   I.   The Motion to Dismiss Should be Decided Before any Evidentiary
        Hearing ......................................................................................... 4

   II.  ODC Has Failed to Show Jurisdiction ........................................... 6

     1.  ODC Has Not Shown That This Case Should Proceed Before the
         DCCA Rules ............................................................................. 6

     2.  ODC Has Failed to Show Subject Matter Jurisdiction. .............. 8

     3.  ODC Ignores the Constitutional Issues ..................................... 8

     4.  ODC Has No Answer for Respondent's Statutory and Administrative
         Law Arguments. ...................................................................... 10

     5.  Other Cases of Bar Discipline Against Federal Attorneys Do Not
         Support Subject Matter Jurisdiction in This Case. .................. 15

   III.  ODC Has Re-Framed the Charges to Overcome Its Failure to State a
        Violation of the Rules. ............................................................... 17

   IV.  ODC Failed to Identify a Particular Tribunal or Proceeding with Which
        Respondent Attempted to Interfere. ........................................... 25

Conclusion ......................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Ashwander v. TVA*, 297 U.S. 288 (1936) ................................................15

*Auer v. Robbins*, 519 U.S. 452 (1997) .....................................................13

*Bond v. United States*, 572 U.S. 844, 134 S. Ct. 2077 (2014) .................15

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ........................22

*Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018 (D.C. 2007) .......12

*Chase v. Pub. Def. Serv.*, 956 A.2d 67 (D.C. 2008) ...................................8

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) .........25

*Federal Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88 (1994) .....17

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) ................................................................................................24

*General Elec. Co. v. EPA*, 53 F.3d 1324 (D.C. Cir. 1995) (as corrected June 19, 1995) .............................................................................................22

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...............................................5

*In re Abrams*, 689 A.2d 6 (D.C. 1997) (*en banc*), *cert. denied*, 521 U.S. 1121 (1997) ................................................................................ 15, 16, 17

*In re Artis*, 883 A.3d 85 (D.C. 2005) .........................................................3

*In re Berger*, 927 A.2d 1032 (D.C. 2007) ...................................... 15, 16, 17

*In re Clair*, 148 A.3d 705 (D.C. 2016) .......................................................3

*In re Dobbie and Taylor*, DCCA No. 21-BG-024 (D.C. Jan. 13, 2021) ................15

*In re Howes*, 52 A.3d 1 (D.C. 2012) ................................................. 15, 16

*In re Kline*, 113 A.3d 202 (D.C. 2015) ............................................. 15, 16

*In re Sofaer*, 728 A.2d 625 (D.C. 1999) ...................................................15

*In re Stephens*, 247 A.3d 698 (D.C. 2021) .................................................3

*In re Toppleberg*, 906 A.2d 881 (D.C. 2006) .............................................3

*King v. Kidd*, 640 A.2d 656 (D.C. 1993) ....................................................8

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ............................................. 13, 14

*Lewis v. Casey*, 518 U.S. 343 (1996) ........................................................17

*Martin v. OSHRC*, 499 U.S. 144 (1991) ...................................................22

*Matter of Nixon*, 53 A.D.2d 178, 385 N.Y.S.2d 305 (1976) ...................... 15, 16, 17

*Matter of Robertson*, 612 A.2d 1236 (D.C. 1992) .....................................3

*Neal v. Clinton*, No. CIV 2000-5677, 2001 WL 34355768 (Ark. Cir. Ct. Jan. 19, 2001) ....................................................................... 15, 16, 17

*Patel v. Garland*, 142 S. Ct. 1614 (2022) ................................................10

*Ponzi v. Fessenden*, 258 U.S. 254 (1922) ..................................................9

Rule of Professional Conduct 1.13 .................................................... 20, 23

*Stebbins v. Stebbins*, 673 A.2d 184 (D.C. 1996) ....................................6, 7

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ................................17
*United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S 33 (1952) ......................17
*West Virginia v. EPA*, 142 S. Ct. 2587 (2022)..........................................................25

## Statutes

28 U.S.C. § 530B ......................................................................................... passim
5 U.S.C. § 2902(c) ......................................................................................................12

## Other Authorities

E. Wydra and M. Farivar, *John Roberts Seen as Most Influential Chief Justice
     in Nearly a Century*, Constitutional Accountability Center ................................15

## Rules

Board Rule 4.2 ............................................................................................................17
Board Rule 7.14 .......................................................................................................3, 5
Board Rule 7.15 ............................................................................................................5
Board Rule 7.16 ............................................................................................................4
D.C. R. Civ. P. 12(b)(1) ........................................................................................5, 8
Rule of Professional Conduct 2.1 ...........................................................................20
Rule of Professional Conduct 8.4 ................................................................... passim

## Regulations

28 C.F.R. § 77.2 ........................................................................................... passim
28 C.F.R. § 77.3 ........................................................................................... passim

## DISTRICT OF COLUMBIA COURT OF APPEALS

## BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of

JEFFREY B. CLARK                                Disciplinary Docket No.

A Member of the Bar of the District          2021-D193
of Columbia Court of Appeals

Bar No. 455315

Date of Admission: July 7, 1997

## REPLY BRIEF IN SUPPORT OF MOTION
## TO DISMISS

ODC's response to the Motion to Dismiss is notable both for what it says and for what it does not say. The points it attempts to make are without merit. More remarkable, however, is the lack of any response at all—or any response of substance—to the weighty and fundamental constitutional and subject matter jurisdiction arguments raised in the Motion to Dismiss. Indeed, Disciplinary Counsel's response bizarrely either ignores or makes light of the jurisdictional arguments in the Motion to Dismiss, suggesting instead we go straight to trial and decide only afterwards whether there is any jurisdiction to hold a trial.

In order, the full range of jurisdictional arguments are:

(1) the District of Columbia Court of Appeals ("DCCA") presently wields what is commonly referred to as "exclusive jurisdiction" over this case (actually a prudential form of that doctrine);

(2) there is no subject matter jurisdiction on fundamental constitutional grounds rooted in (a) the separation of powers (reading D.C.'s ethics authorities as established by Article I of the Constitution), (b) the Supremacy Clause (reading 28 U.S.C. § 530B to treat D.C. as if it were a "State," which it is not), (c) the President's core unreviewable Article II powers under the Take Care Clause, (d) the Opinions Clause, and (e) his powers of appointment and plenary powers of removal;

(3) 28 U.S.C. § 530B does not confer disciplinary jurisdiction over Department of Justice ("DOJ") lawyers upon the District of Columbia because it is not a "State" under straightforward principles of statutory interpretation;

(4) 28 C.F.R. §§ 77.2(h) and 77.3, which purport to extend disciplinary jurisdiction to the District of Columbia pursuant to Section 530B, exceed the statutory authority granted by that statute and are therefore invalid under *Chevron* Step One and the major questions doctrine;

(5) even if 28 U.S.C. § 530B were applicable, it only grants disciplinary authority to "the same extent and in the same manner as other attorneys in that State" and therefore cannot apply to the charged conduct in this case because such conduct has never been subject to discipline; and

(6) even if 28 C.F.R. §§ 77.2(h) and 77.3 were applicable, they similarly do not apply under § 77.2(j)(2) if the local jurisdiction "would not ***ordinarily*** apply its rules of ethical conduct to particular conduct or activity by the attorney," and, as noted, that condition cannot be met here.

ODC contends it need not respond to the substance of these arguments until after the evidentiary hearing, "except to touch lightly on three points." Resp. at 4.

This is not a sufficient response to a dispositive motion. Board Rule 7.14(a) requires that responses to motions be filed within **seven days**, not whenever the responding party feels like it or where it seeks by this ploy to grant itself an extension to come up with a better argument.

As a threshold matter, arguments not presented by that deadline are waived, for it is well established waiver occurs when respondents fail to timely make objections to Disciplinary Counsel arguments.[1] Of course, the rule for Respondents must apply equally to Disciplinary Counsel as a matter of basic due process. *See, e.g., In re Artis*, 883 A.3d 85, 97 (D.C. 2005) ("Unless Bar Counsel is held to the same requirement, respondents would be denied notice of Bar Counsel's claim and an opportunity to meet it at a meaningful time.") (also refusing to relieve Bar Counsel of waiver because "there is nothing in this record to indicate that relief from the waiver is warranted"); *see also generally In re Clair*, 148 A.3d 705, 705 n.1 (D.C. 2016); *In re Fling*, 44 A.3d 957, 958 n.3 (D.C. 2012); *In re Toppleberg*, 906 A.2d 881, 882 n.2 (D.C. 2006). Of course, subject matter jurisdiction cannot be established by waiver or consent, but Disciplinary Counsel can surely fail to submit a timely response to a challenge to **the existence of jurisdiction**, and thereby lose the ability to make additional points to try to establish jurisdiction.

---

[1] *See, e.g., In re Stephens*, 247 A.3d 698, 701 (D.C. 2021) ("We have consistently held that an attorney who fails to present a point to the Board waives that point and cannot be heard to raise it for the first time here."); *Matter of Robertson*, 612 A.2d 1236, 1242 (D.C. 1992) (similar holding re waiver).

## I.   THE MOTION TO DISMISS SHOULD BE DECIDED BEFORE ANY EVIDENTIARY HEARING.

ODC grounds its refusal to respond to the substance of the anti-jurisdiction arguments on the basis that under Board Rule 7.16(a) the Motion to Dismiss should be deferred and ruled on only after the evidentiary hearing. That rule, however, does not support ODC's aggressive claim. It governs *different kinds of motions* than Respondent's Motion to Dismiss. It covers "motions directed to the manner in which the hearing is to be conducted," and "motion[s] directed to the admissibility of evidence." It also refers to "all other motions, *except* motions to dismiss described in subparagraph (b) of this Rule," providing that the Hearing Committee include a recommendation as to such motions in its report to the Board." (Emphasis added). The rule thus expressly provides a different treatment for motions to dismiss by Disciplinary Counsel under Rule 7.16(b). This is undoubtedly because there is no reason to hold an evidentiary hearing in a case Disciplinary Counsel intends to dismiss. Though not specifically provided for in Rule 7.16(a) or (b), it is equally true that there is no reason to have an evidentiary hearing in a case that should be dismissed for legal reasons, such as lack of jurisdiction at the outset or failure to state a claim that the rules were violated. Otherwise, the evidentiary and merits hearing cart would be put before the threshold jurisdictional horse. As a result, Rule 7.16 does not compel the result urged by ODC or offer any reason to relieve ODC of its waiver of additional jurisdictional arguments.

ODC's argument is also inconsistent with Board Rule 7.14, which ODC never mentions. This rule expressly provides for motions to be filed within 7 days of the answer date unless otherwise ordered. Board Rule 7.15 provides generally that motions shall be heard *either* at a prehearing conference *or* at the time of the hearing. Thus, deferral until after the evidentiary hearing is not required for all motions other than ODC motions to dismiss. The cause of judicial economy and substantive fairness is served by deciding dispositive motions *before trial* because, if they are granted, no trial or evidentiary hearing is necessary. ODC offers no reason why that principle should not also apply here.

Finally, when the Chair of the Hearing Committee granted Respondent an extension to file an answer or other responsive pleadings to September 1, 2022 (issued August 8, 2022), the Chair also "ORDERED that, in addition to filing his answer, Mr. Clark may file any other 'responsive pleadin*gs*' [plural in original, but not emphasis] referenced in his motion on or before 5 p.m. on September 1, 2022." Mr. Clark's Motion to Dismiss is such a responsive pleading. For reasons of judicial economy and fundamental fairness, it should be ruled on before any hearing is conducted. *Cf.* D.C. R. Civ. P. 12(b)(1) (motion to dismiss for lack of subject matter jurisdiction may be presented at the outset); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (qualified immunity defense should be decided before trial).

## II.   ODC HAS FAILED TO SHOW JURISDICTION.

### 1.   ODC HAS NOT SHOWN THAT THIS CASE SHOULD PROCEED BEFORE THE DCCA RULES.

Respondent contended that DCCA has exclusive jurisdiction of this case due to the nature of the issues before that Court, and that it would be inefficient to proceed at this level before the DCCA rules on the very same issues presented in the Motion to Dismiss. *See Stebbins v. Stebbins*, 673 A.2d 184, 189 (D.C. 1996) and Motion to Dismiss at 9-14. In response, ODC contends that "the only proceedings before the Court of Appeals is a Motion to Enforce a Subpoena," and that the only meaningful—according to ODC—argument on that issue is whether the Fifth Amendment was properly invoked. The purpose of this characterization is to escape the clear teaching of *Stebbins* that it would be wasteful and inefficient for the Hearing Committee and the Board to hear this case while multiple overlapping issues are simultaneously before the DCCA.

To evade the *Stebbins* rule, ODC mischaracterizes proceedings before the DCCA. There is more than just a motion to enforce pending there and the subpoena defenses go well beyond just the Fifth Amendment. Also pending there are a cross-motion to quash the subpoena, ODC's motion to unseal, and Respondent's cross-motion to stay proceedings at this level and seal all proceedings until the DCCA rules. These filings, which have been lodged with the Board, extensively argue many of the same jurisdictional and merits defenses presented in the Motion to Dismiss. It

is thus undeniable that the same issues are pending simultaneously before the DCCA and this Hearing Committee. Therefore, *Stebbins* applies.

ODC attempts to brush off *Stebbins* by claiming that the overlapping issues pending in the DCCA comprise merely a "make-weight argument" that Respondent "threw into his brief," and thus may be appropriately ignored. This is, of course, belied by the gravity of the arguments whose substance ODC so eagerly avoids, as well as by the fact that the applicability of *Stebbins* has been a hotly contested issue with ODC for about six months (the issue is thus clearly not a last-minute "make-weight"). ODC even suggests that we acknowledge our so-called "make-weight" arguments are insubstantial because we recognize that the *Stebbins* rule is not, strictly speaking, a jurisdictional rule but rather a judicial efficiency rule. This "acknowledgment," however, merely reflects the prudential rationale of *Stebbins* itself, which Respondent has fully and fairly presented at all times according to its own terms, and extends no further than *Stebbins* itself. It does not diminish in any way **whatsoever** the strength of either the *Stebbins* argument or the **separate and distinct** subject matter jurisdiction and failure-to-state-a-violation arguments presented to both the DCCA and the Hearing Committee the substance of which ODC strains to avoid. ODC's attempt to conflate these issues, and thereby suggest that Respondent has conceded his jurisdictional arguments are insubstantial, is disingenuous and must fail.

### 2. ODC HAS FAILED TO SHOW SUBJECT MATTER JURISDICTION.

Respondent's Motion to Dismiss makes plain that there are weighty constitutional and separation of powers arguments that the DCCA, the Board, and the Hearing Committee lack subject matter jurisdiction in this case. Subject matter jurisdiction is a fundamental threshold issue in any adjudicative process. *Cf.* D.C. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction). "Parties cannot waive subject matter jurisdiction by their conduct or confer it ... by consent, and the absence of such jurisdiction can be raised at any time." *Chase v. Pub. Def. Serv.*, 956 A.2d 67, 75 (D.C. 2008) (cleaned up). "Furthermore, as this court said long ago, '[i]t is our duty to notice a lack of jurisdiction even though the parties may desire a decision on the merits.'" *King v. Kidd*, 640 A.2d 656, 662 (D.C. 1993) (cleaned up).

Thus, even if ODC finds it expedient to try to ignore or brush away these arguments, the DCCA, the Board, and the Hearing Committee are not at liberty to do so. We suggest that all of the threshold jurisdictional issues are so significant that the Hearing Committee should schedule a separate oral argument to explore them. Respondent's counsel would appreciate the opportunity to make these points live and respond to questions. This could save a lot of time for all involved.

### 3. ODC IGNORES THE CONSTITUTIONAL ISSUES.

Given the importance and strength of the constitutional, statutory, and administrative law objections to subject matter jurisdiction, it is remarkable that

ODC deigns only to "touch lightly" on them. So lightly as to entirely ignore how the Charges intrude on the President's core Article II authorities, his responsibilities under the Take Care Clause, his powers of removal and appointment, his entitlements under the Opinions Clause, Respondent's correlative obligations under the Opinions Clause, and the unthinkable breach of the separation of powers and the Supremacy Clause inherent in a bar disciplinary process purporting to intrude upon and regulate the manner in which the President and his closest legal advisors—his "hands" for purposes of these Article II powers[2]—discharge these authorities.

The most that ODC says about the constitutional arguments is to "lightly: assert that they have no merit, and that the evidence will show that Respondent was engaged in an attempt to interfere improperly in state election proceedings. Resp. at 4. But this assumes two points that are directly challenged by the Motion to Dismiss: whether there is any impropriety in the draft letter as a matter of law *and* whether Respondent's conduct "bears directly on the judicial process with respect to an *identifiable* case or tribunal." *In re Yelverton*, 105 A.3d 413, 426 (D.C. 2014) (emphasis added). More than parenthetical arm-waving is required to overcome Respondent's arguments on these two points.

Indeed, ODC appears to inadvertently reinforce the Respondent's separation of powers arguments by contending at pages 4-5 that the DCCA is a creature of

---

[2] See *Ponzi v. Fessenden*, 258 U.S. 254, 262 (1922).

Congress' Article I powers. ***We agree***. This confirms, rather than rebuts, the separation of powers violation in this case. A derivative but merely local Article I body, ODC, is attempting here to intrude into Article II deliberations by the President with his officers. This is backwards. As a creature of an Article I court created by Congress pursuant to its powers under the Seat of Government Clause, U.S. Const. art. I §17, ODC "resides" within the legislative branch, and is subject to the same separation of powers constraints as Congress when, as here, the claim is to sit in judgment over the manner in which officers of the Executive Branch discharge their duties to the President.

### 4.    ODC HAS NO ANSWER FOR RESPONDENT'S STATUTORY AND ADMINISTRATIVE LAW ARGUMENTS.

ODC offers no rebuttal whatsoever to the statutory argument that 28 U.S.C. § 530B, ***by its textual terms***, applies only to States, and thus not to the District of Columbia. Instead, ODC says only that the argument is "complex," and that Respondent offers no ***policy reason*** for his position. For starters, policy reasons cannot overcome statutory text. *See Patel v. Garland*, 142 S. Ct. 1614, 1627 (2022) ("Yet we inevitably swerve out of our lane when we put policy considerations in the driver's seat. As we have emphasized many times before, policy concerns cannot trump the best interpretation of the statutory text."). As we have previously pointed out, Congress knows how to (when it wants to) clearly delegate powers to the District and it has simply ***not*** done so here, so ODC's implicit argument that some kind of

regulatory ethics vacuum would be created if Section 530B is read textually must be rejected.

Moreover, Respondent offered compelling policy reasons, that, under the Supremacy Clause and separation of powers, the President and his most senior Senate-confirmed DOJ legal advisors cannot be hamstrung in the execution of the President's core Article II authorities by the parochial aims and politicized grievances of a non-state municipal bar disciplinary prosecutor acting at the urging of a single member of Congress. Otherwise, there is practically no limit to the mischief that might ensue. For example, a Democrat President and his/her senior legal advisors could equally be subject to harassment by partisan warriors in disciplinary garb in jurisdictions controlled by a hostile or aggressive opposition party—which in our ever-more polarized political climate is certainly foreseeable. The shoe may one day be on the other foot, and by then it will be too late to invoke the rules of restraint that ODC would now trample. This is a slippery slope that should be avoided.

ODC then offers as a back-up argument the unsupported speculation that DOJ might conceivably have required its lawyers to be subject to professional discipline by the DCCA and its agencies as a term of employment. Resp. at 6-7. But there is nothing to support ODC's stab in the dark. If it were true, it would be ODC's ***burden*** to plead and prove such a contention, and it has not even bothered to plead facts on

the topic.

While it may not be necessary to go any further, ODC's improvised speculation about a contract must fail on first principles. A Senate-confirmed appointment under Article II is not a "contract of employment;" it is a presidential appointment that leads to a "commission." *See* 5 U.S.C. § 2902(c) (the statute under which Mr. Clark held his commission at the Justice Department, signed by the President and countersigned by the Attorney General, until his resignation on January 14, 2021). No implicit additional qualifications can be imposed by the DCCA or by an imaginary implied contract modifying the President's powers of appointment and removal or the Senate's power to confirm. The charged conduct here did not occur in any case being litigated before a court or, indeed, before a court at all. It is limited to Respondent's conduct as an advisor to the President with respect to his core Article II authorities. ODC's contractual argument must therefore be deemed insufficient to state a claim that Rule of Professional Conduct 8.4 was violated. *See Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1023 (D.C. 2007) (on 12(b)(6) motion in a civil case, "[f]actual allegations must be enough to raise a right to relief above the speculative level....")

Perhaps ODC means to argue that some interpretation of DOJ's regulations means that all D.C.-barred attorneys who work for DOJ (or in Respondent's case, accept a presidential commission at the Justice Department), subject themselves to

the rules of the D.C. Bar *in all instances*, including those alleged in the Charges, though ODC does not point to any such DOJ regulatory interpretations. This alone is fatal to any ODC argument from the DOJ regulations.

At the most fundamental level, of course, any such disciplinary authority purportedly rooted in a DOJ regulation would run contrary to the plain text of 28 U.S.C. § 530B, and is thus unsupportable. Indeed, going deeper, even under *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), where the Supreme Court modified the doctrine of *Auer* deference articulated in *Auer v. Robbins*, 519 U.S. 452 (1997), ODC can find no refuge. Under *Kisor*, a court must defer to an agency's interpretation of its own regulation only after a court has determined that (1) the regulation is genuinely ambiguous; (2) the agency's interpretation is reasonable; and (3) the agency's interpretation meets certain minimum thresholds to warrant *Auer* deference. *Kisor* Step One incorporates *Chevron* Step One's approach of construing statutory text using the "traditional tools" of construction (such as canons and legislative history). *See Kisor*, 139 S. Ct. at 2415.

Here, as a matter of garden-variety textual interpretation, the regulations plainly apply only to authorize the application of "rules of ethical conduct governing attorneys in the same manner as such rules apply to non-Department attorneys." 28 C.F.R. § 77.2(k). Similarly, the regulations also *exclude* the application of ethics rules from "any jurisdiction [that] would not *ordinarily* apply its rules of ethical

conduct to particular conduct or activity by the attorney." 28 C.F.R. § 77.2(j)(2) (emphasis added). Neither of these regulatory hurdles can be leapt over here and neither are "genuinely ambiguous" within the meaning of *Kisor*. Nor has ODC argued that they are ambiguous, waiving any argument to the contrary it might try to make later. The *Kisor* analysis therefore terminates at this point—***against deference***. *Kisor* Steps Two and Three need not be reached because there is no remaining ambiguity after *Kisor* Step One. In any event, in order to satisfy *Kisor's* Steps Two and Three, ODC would have to point to some extant DOJ interpretation of the Department's regulations under Section 530B and ODC has not even attempted to do so, so those two *Kisor* steps are also flunked and waived by ODC.

Accordingly, Sections 77.2(h) and 77.3 grant no disciplinary authority to the District of Columbia here, full stop, whether one consults the governing statute or the governing regulations. Specifically, there is no precedent for applying Rule 8.4(c) or (d) to the "particular conduct or activity" of the Respondent. And ODC has repeatedly and dispositively failed and refused to identify any "ordinary" body of precedent that would authorize the charges in this case under this statute and regulations.[3]

---

[3] The inapplicability of DOJ regulations to this situation, given Section 77.2(j)(2), is the simplest jurisdictional argument on which to grant the Motion to Dismiss: in other words, the Hearing Committee could hold that charging disciplinary misconduct in this situation is without precedent and thus cannot surmount Section 77.2(j)(2)'s denial of disciplinary power to "any jurisdiction that would ***not ordinarily apply*** its rules of ethical conduct to particular conduct or activity by the attorney." (Emphasis added).

ODC is just throwing spaghetti at the wall and hoping some of it sticks—*or can buy it sufficient time to get to the evidentiary hearing it desperately seeks*. But the deep level of penetration into the Executive Branch's internal operations ODC's approach entails would cause untold damage to the federal constitutional structure. The Board and Hearing Committee should not countenance any such intrusions.

5.    OTHER CASES OF BAR DISCIPLINE AGAINST FEDERAL ATTORNEYS DO NOT SUPPORT SUBJECT MATTER JURISDICTION IN THIS CASE.

On page 6 of the Response, ODC offers his lone attempted rebuttal to the absence of subject matter jurisdiction in this particular case—a string cite to a series of disciplinary cases against attorneys employed by the federal government, all collected in the margin below.[4]

*None* of these cases even discuss subject matter jurisdiction, much less establish that it is present in this case. Indeed, none of them analyze any of the

---

This would allow the Board and the Hearing Committee to leave for another day whether it has *any* power over DOJ attorneys barred in D.C. under Section 530B and Sections 77.2(h) and 77.3. The narrower, Section 77.2(j)(2) ground for dismissal would thus, in the jurisprudential philosophy of Chief Justice Roberts, constitute an exercise of "judicial minimalism." E. Wydra and M. Farivar, *John Roberts Seen as Most Influential Chief Justice in Nearly a Century*, Constitutional Accountability Center, (Jul. 15, 2020) *available at* https://tinyurl.com/bdchhchb (last visited Sept. 9, 2022) (note that the Constitutional Accountability Center is a progressive organization by its own admission). This approach would also be consistent with the canon of constitutional avoidance. *See, e.g., Ashwander v. TVA*, 297 U.S. 288, 345-348 (1936) (Brandeis, J. concurring); *Bond v. United States*, 572 U.S. 844, 855, 134 S. Ct. 2077, 2087 (2014).

To be clear, we believe our arguments against the applicability of Sections 530B and Sections 77.2(h) and 77.3 are also entirely correct; we merely submit here that those arguments can be avoided as a prudential matter if Section 77.2(j)(2) is held to apply on the ground that ODC cannot meet the test that it "ordinarily" applies D.C. ethics rules to the type of purported misconduct (which is not misconduct at all) at issue in this case.

[4] *See* Response at 5, *citing In re Dobbie and Taylor*, DCCA No. 21-BG-024 (D.C. Jan. 13, 2021); *In re Kline*, 113 A.3d 202 (D.C. 2015); *In re Howes*, 52 A.3d 1 (D.C. 2012); *In re Berger*, 927 A.2d 1032 (D.C. 2007); *In re Sofaer*, 728 A.2d 625 (D.C. 1999); *In re Abrams*, 689 A.2d 6 (D.C. 1997) (*en banc*), *cert. denied*, 521 U.S. 1121 (1997); *see also Neal v. Clinton*, No. CIV 2000-5677, 2001 WL 34355768 (Ark. Cir. Ct. Jan. 19, 2001); *Matter of Nixon*, 53 A.D.2d 178, 385 N.Y.S.2d 305 (1976).

arguments made here by Respondent. Thus, for example, none of them even cite *Chevron,* let alone 28 C.F.R. § 77.2(h), § 77.2(j)(2), § 77.2(k), or § 77.3.

   *In re Abrams* was decided ***pre-***28 U.S.C. § 530B and ***pre-***28 C.F.R. § 77.2(h), etc. and thus sheds no light on their interpretation. *In re Abrams* also involved a pardoned conviction of perjury before Congress. Next, *In re Howes*, *In re Kline*, and *In re Dobbie-Taylor* involved AUSAs ***practicing before D.C. or Puerto Rico courts***, which we concede subjects them to local discipline. Nothing in the Charges was before a D.C. court or within the scope of the supervisory jurisdiction of any D.C. Court. *In re Howes* involved an AUSA who ***admitted to*** six ethics rule violations before the Bar. *In re Berger* involved a former National Security Advisor who pleaded guilty to theft and destruction of federal records and ***voluntarily surrendered his license***. In *Matter of Nixon*, there was overwhelming documentary and testimonial evidence gathered through lengthy congressional and criminal investigations of whether President Nixon had obstructed justice in the various Watergate investigations. More importantly, ***President Nixon did not respond to the charges, and they were taken as proven.*** Finally, in *Neal v. Clinton*, President Clinton was found by a U.S. District Judge to have committed perjury, ***in the presence of that same Judge***, in a deposition in a civil case against him in his personal capacity, and he ***voluntarily accepted a five-year suspension***. Additionally, the cases involving Presidents Nixon and Clinton were ***brought by their respective***

***state bars***, not by the D.C. Bar, which is not an arm of a State within the meaning of Section 530B.[5]

In short, while the cases did involve lawyers working for the federal government, none of them have any precedential value for the jurisdictional issues we press in this case because they simply did not discuss any of them. The U.S. Supreme Court has referred to these kinds of cases as "drive-by jurisdictional rulings" that have no precedential jurisdictional effect whatsoever:

> The short of the matter is that the jurisdictional character of the elements of the cause of action in *Gwaltney* . . . ***had been assumed by the parties, and was assumed without discussion by the Court***. We have often said that ***drive-by jurisdictional rulings of this sort*** (if *Gwaltney* can even be called a ruling on the point rather than a dictum) have no precedential effect. *See Lewis v. Casey*, 518 U.S. 343, 352, n.2 (1996) ["we have repeatedly held that ***the existence of unaddressed jurisdictional defects has no precedential effect***."]; *Federal Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 97 (1994); *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S 33, 38 (1952).

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) (emphasis added).

ODC's string cite does nothing to cure the jurisdictional defects in this case.

### III.    ODC HAS RE-FRAMED THE CHARGES TO OVERCOME ITS FAILURE TO STATE A VIOLATION OF THE RULES.

ODC has also reframed its case in an effort to sidestep Respondent's arguments that no violation of the rules is alleged to such an extent that it should be

---

[5] Notably, and bearing on the pending request to defer under Board Rule 4.2, in ***all*** of the senior public official cases cited by ODC (*Abrams*, *Berger*, *Nixon* and *Clinton*), the disciplinary authorities did not act until the pending related civil and criminal matters ***had first been concluded***. Here, ODC seeks to reverse that order and go first—an approach that has nothing to commend it and, we submit, seems driven only by political objectives given the impending midterm congressional elections. *See* Conclusion, *infra*.

held to have argued itself out of court. ODC contends at page 2 that "[h]ad Respondent merely suggested sending the so-called 'Proof of Concept' letter to various Georgia officials, this case would not have been brought." ***Disciplinary Counsel has thus conceded an essential point—that a mere proposal that was never operative because it was not adopted, and was never sent does not violate Rule 8.4(a), (b) or (d).*** This concession recognizes that no violation can arise because the draft letter on its face could never become operative absent approval by superiors, which was never given. Conversely, even assuming *arguendo* DOJ is a monolith that never sees internal dissent, as ODC wrongly assumes, if the letter had been approved by then-Acting AG Rosen (or by the President) and the statements thereby made operative, then the allegedly false statements about DOJ's positions would be correct statements of DOJ's position and, in that case, the statements would again not violate Rule 8.4.

Having made this concession, Disciplinary Counsel now shifts to arguing that Rule 8.4 was violated, not because of Respondent's claimed suggestion, but because Respondent ***persisted*** in the suggestion until it was rejected by the President, even after being told by his immediate superiors that ***in their view*** there was no evidence to support the claims proposed in the draft letter. This newly fashioned charge is significantly different from the original Charges, which allege that the preparation and internal transmission of the draft letter in and of itself violated Rule 8.4 because

18

it falsely characterized the position of the Department of Justice at the time. *See* Charges, ¶¶ 15-19 (specifying the alleged falsity by comparing the proposed positions to the publicly stated positions of other DOJ officials at the time). Building thereon, paragraph 31 alleges "Respondent attempted to engage in conduct involving dishonesty, by sending the Proof of Concept letter containing false statements."

The radically new framing in response to the Motion to Dismiss thus seeks to cure the *non sequitur* at the very heart of the original Charges by positing a distinction between permissibly suggesting DOJ adopt different positions versus impermissibly persisting in doing so. The original framing of the Charges was itself entirely unprecedented, and therefore clearly fell outside of both Section 530B (the statute) ***and*** Sections 77.2(h) & 77.3. But this entirely new, backfilling distinction upon which ODC now hangs its case shifts to an even more wildly novel theory— ***one pumped up on steroids***—that the D.C. Bar has never pursued before, reinforcing how far outside the ambit of the claimed statutory and derivative delegated authority under Justice Department regulations this case really is.

ODC's concession is fatal to the viability of the posited distinction because it attempts to draw a line between a permissible suggestion and forbidden persistence. The proposed distinction is arbitrary, illusory and impossible to either define with precision or to administer in practice. Worse, it is contrary to any commonsense understanding of the role of ***any*** attorney engaged in a dispute over the advice and

recommendations to be offered to a client. *See* Rule of Professional Conduct 2.1. No matter how much Respondent may have persisted, the draft letter never lost its contingent, non-operative, tentative, and non-false advisory nature **at any point**, because the President never approved it, as the Charges themselves recognize.

Moreover, this newly contrived distinction is impossible to apply to confidential and contested policy deliberations at the highest levels of the Justice Department and with the President himself over the discharge of the President's core Article II powers and authorities. Where on the continuum of disagreements over proposed policy changes could a workable line be drawn for the imposition of quasi-criminal penalties that could possibly be consistent with due process and fair notice of what is forbidden? We know for certain that no D.C. Bar rule explicitly prohibits "impermissible persistence" in such a setting, and that Rule 2.1 and 1.13 explicitly contemplate that attorneys will be persistent whenever in their judgment the best interests of the client require it. Nor does any DOJ regulation or DOJ regulatory interpretation prohibit "impermissible persistence" in this setting.

Hence, we are in uncharted waters: Does impermissible persistence occur when the disagreement among political subordinates is taken to the President? When the parties to the discussion interrupt one another or speak out of turn? When voices are raised? When there are professional insults being traded? When foul language is used? When one is outnumbered and threatened, but holds his ground until the

20

President decides? Does ODC propose to enforce the decorum of a courtroom in the Oval Office if any of the participants happen to be barred in D.C.? What if rules on such niceties differ from those governing in D.C. as compared to the state bars of other lawyer participants in Oval Office meetings? Does the President even require the assistance of ODC, acting at the suggestion of a member of Congress, to keep such order as may be satisfactory to him, especially where, as here, each of the attorneys serves at his unreviewable pleasure and he has never filed his own complaint to ODC?

If none of the foregoing describes the distinction between permissible suggestion and impermissible persistence, where exactly does ODC propose that this brand new line be drawn?[6] And doesn't the fact that such a line would need to be drawn retroactively prove that attempting to apply any such line, even once created, to Respondent *in this case* would violate due process and be hopelessly and unlawfully retroactive? Neither the statute (Section 530B), nor DOJ's regulations in 28 C.F.R., nor the various categories of D.C. Bar Rules authorize new ethics standards to be created and retroactively applied by ODC. *See Bowen v. Georgetown*

---

[6] ODC may try to disingenuously suggest at an oral argument on the Motion to Dismiss, should one be held, that this paragraph and related arguments exceed the bounds of a Motion to Dismiss by resting on disputed facts. But that is not the nature of these points. They are policy arguments in the form of rhetorical questions designed to spur careful consideration of the legal implications of the constitutionally dangerous authority that ODC is now claiming. Such arguments are a completely proper because one set of policy arguments (ODC's) can be met with another (ours), even as we fully recognize that constitutional arguments, along with arguments from statutory and regulatory text, firmly outrank policy arguments standing alone. And we submit *no* constitutional or textual arguments run in ODC's favor.

*Univ. Hosp.*, 488 U.S. 204, 208-09 (1988) (regulations and regulatory interpretations cannot have retroactive effect unless expressly authorized by Congress and Section 530B(b)'s delegated rulemaking power to DOJ does not authorize retroactive rulemaking). "In some cases, however, the agency will provide no pre-enforcement warning, effectively deciding 'to use a citation [or other punishment] as the initial means for announcing a particular interpretation'—or for making its interpretation clear. *E.g. Martin v. OSHRC*, 499 U.S. 144, 158 (1991) …." *General Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995) (as corrected June 19, 1995).

ODC's ever-evolving theory of the case also rests upon the notion that the publicly and privately expressed opinions of senior DOJ political appointees that allegedly belie the proposed positions in the draft letter are the absolute, binding, and irrefutable cosmic truth of the matter, such that it was impossible for Mr. Clark to ***persist*** in proposing further investigation without violating Rule 8.4. But the ultimate authority to formulate the positions of the Department rests not with Messrs. Rosen and Donoghue, but with the President. Since they did not hold the ultimate authority, their *ipse dixit* opinions on contested questions of fact, law, and policy did not carry the binding preclusive effect that ODC presumes.

It is not "dishonesty" for an attorney to persist in a disagreement with his or her colleagues. Here the lawyers south of the President, according to the Charges, did not agree, and to resolve the disagreement they took the matter to their client,

the ultimate decisionmaker. This is specifically contemplated by Rule of Professional Conduct 1.13(b) for attorneys representing organizations, yet here ODC claims Respondent dishonestly "persisted" in violation of Rule 8.4(a), (c), and (d).[7] Wrong. Mr. Clark, in fact, had a professional responsibility to exercise his own independent professional judgment on questions and arguments put to him by Rosen and Donoghue, and by the President of the United States. Once the President made his decision, the matter was truly and entirely closed. The Charges plead no insubordinate, contumacious, or "attempted dishonest" "persisting" after the President made his final decision.

Disciplinary Counsel also contends that Respondent's impermissible persistence included seeking appointment as Acting Attorney General in order to send the letter with the allegedly false statements. This argument (even if true and not lacking other critical factual context), as well as ODC's whole case, cannot be reconciled with the President's constitutional authority under Article II, the separation of powers, or the Supremacy Clause. The final decision on the letter, and on any possible removal or appointment in connection therewith, belonged exclusively and unreviewably to the President as part of his core Article II authorities. The Charges thus inevitably intrude on the President's unreviewable

---

[7] *See* D.C. Rule of Professional Conduct 1.13 cmt. [4] ("Even in circumstances where a lawyer is not obligated by Rule 1.13 to proceed, a lawyer may bring to the attention of an organizational client, including its highest authority, matters that the lawyer reasonably believes to be of sufficient importance to warrant doing so in the best interest of the organization.").

power to choose to remove one official and appoint a different Senate-confirmed official in an "acting" capacity to run the Department. Policy is not made by "the Department" as some disembodied abstraction; it is made by Senate-confirmed officers who consult with the President and others engaged with the President during the consultative process. The President has unreviewable and exclusive authority to dismiss and replace any Senate-confirmed officer, and to similarly replace non-Senate-confirmed officials like Mr. Donoghue and lawyers from the White House Counsel's Office, and Presidents have always wielded this power in the course of making and implementing their own decisions. *See Free Enterprise Fund v. Public Co. Accounting Oversight Bd*., 561 U.S. 477, 492 (2010) ("The view that 'prevailed, as most consonant to the text of the Constitution' and 'to the requisite responsibility and harmony in the Executive Department,' was that the executive power included a power to oversee executive officers through removal; because that traditional executive power was not 'expressly taken away, it remained with the President.'"(citations omitted)). Like the appointment power of which it is a part, the power to remove or replace is ***complete in itself***. There is simply no constitutional basis for a quasi-judicial official appointed by an Article I court to intrude on either the supervisory powers of the President, or the advisory responsibilities of his Senate-confirmed subordinates.

All of this attempted intrusion and constraint is unconstitutional because these

core executive powers are—and by constitutional design must remain—unreviewable by other branches of government, unreviewable under the separation of powers by an Article I, quasi-municipal bar disciplinary authority, and under the Supremacy Clause, unreviewable by even the disciplinary authority of any State in the Union. The President's discretion in the removal and appointment of senior DOJ officials cannot be held hostage to the officious intermeddling of another branch, or, in this case, by the bar disciplinary machinery of the District of Columbia. For the Board and ODC are creatures of Article I, lacking a clear statutory delegation over matters like this one, especially in light of the major questions doctrine unpacked in the motion to dismiss—a key interpretive principle ODC tries to duck only by saying it is "specious" (without offering any support or logic) or "newly minted." Whether newly-minted or tracing back two decades to *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–60 (2000), as the Supreme Court itself held in *West Virginia v. EPA*, 142 S. Ct. 2587, 2608 (2022), it is still binding Supreme Court law and must be followed here.

IV.  **ODC FAILED TO IDENTIFY A PARTICULAR TRIBUNAL OR PROCEEDING WITH WHICH RESPONDENT ATTEMPTED TO INTERFERE.**

One of the essential elements of a violation of Rule 8.4(d) is that the conduct which is alleged to substantially interfere with the administration of justice must "bear[] directly on the judicial process with respect to an ***identifiable*** case or

tribunal." *In re Yelverton*, 105 A.3d 413, 426 (D.C. 2014) (emphasis added). ODC has failed to identify any such case or tribunal. That is because there was no such case or tribunal. In its Response, ODC refers only vaguely to "state election proceedings." Resp. at 3. ODC does not even identify the State, much less the particular election proceeding in any State. ODC has thus failed to state a violation of Rule 8.4(d), and failed to correct this defect in response to the Motion to Dismiss.

## CONCLUSION

In the Request for Deferral, Respondent noted the serendipitous timing of the Charges relative to the prime-time television schedule of the January 6 Committee and argued "[t]he exigencies of the political calendar should have no effect on these proceedings. No politically motivated rush to judgment should be allowed to prejudice Respondent's constitutional rights." Despite this, ODC proposes in its Response to the Motion to Dismiss that the evidentiary hearing go forward in ***the second half of October***. Rep. p. 9. Is it merely a coincidence that this happens to fall just before the November mid-term elections and that Democrats hope to make that election revolve around President Trump? We don't think so. And the Hearing Committee should avoid scheduling that even ***appears*** improper.

More importantly, ODC has failed utterly to respond to the substance of multiple fatal constitutional defects and multiple fatal defects in subject matter jurisdiction, forfeiting its ability to oppose our positions. It responded only

incompletely and disingenuously to the preexisting and pending assumption of jurisdiction over this case by the DCCA. It mischaracterized the rules for deciding dispositive motions. It has posited an improvised, jury-rigged, and untenable distinction between permissible suggestions and impermissible persistence that is even more illogical than the original Charges' allegation that a mere proposal, which on its face is not operative unless and until approved—and which was never approved and so never left the office—could constitute an ***attempted*** false statement.

For a host of reasons ODC does not trouble itself to rebut, this case should be dismissed with prejudice.

Respectfully submitted this 12th day of September, 2022.

/s/ *Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Robert A. Destro*
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207
202-319-5303
robert.destro@protonmail.com

*\*Motion for pro hac vice admission in progress*

Harry W. MacDougald*
Georgia Bar No. 453076
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

*\* Motion for pro hac vice admission in*

27

*progress*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this filing is prepared in Times New Roman 14, and that the word count in the relevant sections of this filing, as measured by Microsoft Word, including footnotes is 6,989.

/s/ Charles Burnham
Charles Burnham
DC Bar No. 1003464

Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

# CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this *Reply Brief in Support of Motion to Dismiss* by email addressed to:

Hamilton P. Fox
Jason R. Horrell
D.C. Bar
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org

This this 12 day of September, 2022.

*/s/ Charles Burnham*
Charles Burnham
DC Bar No. 1003464

1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com