# EXHIBIT A-43

FILED

Sep 12 2022 3:38pm

Board on Professional Responsibility

DISTRICT OF COLUMBIA COURT OF APPEALS
BOARD ON PROFESSIONAL RESPONSIBILITY
HEARING COMMITTEE NUMBER TWELVE

| | | |
|---|---|---|
| In the Matter of: | : | **<u>UNDER SEAL</u>** |
| | : | |
| JEFFREY B. CLARK, | : | |
| | : | |
| Respondent. | : | Board Docket No. 22-BD-039 |
| | : | Disciplinary Docket No. 2021-D193 |
| A Member of the Bar of the | : | |
| District of Columbia Court of Appeals | : | |
| (Bar Registration No. 455315) | : | |

## <u>REPORT AND RECOMMENDATION</u>

Mr. Clark has filed a Request for Deferral Under Board Rule 4.2 ("Request"), based on the <u>pendency of a subpoena enforcement proceeding in the D.C. Court of Appeals,</u>[1] a federal criminal investigation, the January 6 Committee investigation, and a Fulton County, Georgia Special Grand Jury investigation. Disciplinary Counsel opposes deferral.

This matter is governed by Board Rule 4.2:

> After a petition has been filed, either Disciplinary Counsel or respondent may request deferral of a disciplinary case based upon the pendency of either a related ongoing criminal investigation or related pending criminal or civil litigation. Such a request shall be filed with the Office of the Executive Attorney and shall be served on the opposing party by the party making the request. A party may file an opposition to such a request within five days of the filing of the request with the Office of the Executive Attorney. The Executive Attorney shall submit the request and any opposition thereto to the Chair of the Hearing Committee to which the case is assigned. The Chair of the

---

[1] In accordance with the Board Chair's September 2, 2022 Order, a redacted version of this Report and Recommendation, removing the underlined language identified herein, shall be publicly filed.

Hearing Committee shall transmit the request for deferral, with any opposition thereto, to the Chair of the Board with a recommendation as to the action the Chair of the Hearing Committee considers appropriate within five days of receipt of any opposition to an application for deferral or five days after the date such opposition was due. The Board Chair shall rule on the motion after evaluating the pleadings and recommendation under the standards in Rule 4.1.

Board Rule 4.1 provides that

Before a petition has been filed, a Contact Member may approve a request by Disciplinary Counsel for deferral based upon the pendency of a related ongoing criminal or disciplinary investigation or upon related pending criminal or civil litigation when there is a substantial likelihood that the resolution of the related investigation or litigation will help to resolve material issues involved in the pending disciplinary matter.

Reading Rules 4.1 and 4.2 together, the question presented by Mr. Clark's deferral request is whether there is a "substantial likelihood that the resolution of" any of the relevant pending matters identified in Mr. Clark's Request "will help to resolve material issues" in this disciplinary proceeding.[2]

After careful consideration of Mr. Clark's Request and Disciplinary Counsel's Opposition, the Hearing Committee Chair recommends that the Chair of the Board on Professional Responsibility deny Mr. Clark's Request.

---

[2] We recognize that the subpoena enforcement proceeding is a disciplinary proceeding, and Board Rule 4.2 permits a respondent to "request deferral of a disciplinary case based upon the pendency of either a related ongoing criminal investigation or related pending criminal or civil litigation." The subpoena enforcement proceeding does not appear to constitute "criminal or civil litigation." That said, we also recognize that the Board has deferred a matter pending before a hearing committee due to the pendency of another disciplinary matter. *See, e.g.*, Order, *In re Deiner*, Bar Docket No. 133-06, *et al.* (BPR Dec. 22, 2010). Thus, we assume for the purposes of making this recommendation that a disciplinary matter may be deferred pending the resolution of another disciplinary proceeding.

**Discussion**

Board practice and precedent present reasons to be cautious about granting deferrals. There are many circumstances in which an attorney facing a disciplinary charge might also be involved in other proceedings and could possibly request deferral pending their resolution. But it is often difficult to determine whether they will present identical issues. Even when they do, there may not be privity binding the relevant parties to decisions made in other forums. And even when that exists, disciplinary proceedings differ from many others in both substantive and procedural ways.

Substantively, Disciplinary Counsel bears the "burden of proving violations of disciplinary rules by clear and convincing evidence." Board Rule 11.6. This intermediate standard differs from others in criminal and most civil cases. The "clear and convincing" standard does not require the proof "beyond a reasonable doubt" required in criminal proceedings; as a result, even if an attorney is acquitted in a criminal trial, the Board must still conduct a hearing to determine whether Disciplinary Counsel has met the lesser standard for disciplinary sanction. Conversely, because "clear and convincing" is a more stringent standard than the "preponderance" standard that usually applies to issues in civil cases, a finding against an attorney on even the identical issue will not establish the proof needed for discipline.

Procedurally, disciplinary proceedings are not the same as court proceedings. One difference is that the Board Rules do not generally contemplate that Hearing

3

Committees will put off hearings to decide motions on legal issues in advance. Instead, Board Rule 7.16(a) requires the Hearing Committee to bring the case to hearing and to "include in its report to the Board," after the hearing, "a proposed disposition [of the motion] and the reasons therefor." This generally prevents Hearing Committees from deferring hearings to decide legal issues.

The Board has recognized that, just as filing a motion on legal issues in the disciplinary proceeding does not justify deferring the hearing, so too filing such a motion in other proceedings does not justify deferral. *See* Order, *In re Klayman*, Board Docket No. 18-BD-070 at 11 (BPR Jan. 11, 2019) ("If a motion to dismiss filed with the Hearing Committee is not a sufficient basis on which to defer a disciplinary matter, a federal suit seeking analogous, theoretical relief cannot justify such an extraordinary remedy. Deferring disciplinary proceedings pending resolution of injunction actions filed by respondents would frustrate the purpose of Board Rule 4.1 and 4.2, and merely encourage future collateral attacks on disciplinary proceedings."). *See also In re Stanton*, 470 A.2d 281, 285 (D.C. 1983) (per curiam) (appended Board Report) (once a Contact Member has approved a Petition, "the underlying purposes of the Board require that we proceed directly to a hearing on the merits rather than being detoured into questions of pleading and form").

To add to that, where, as here, it is difficult to know how other matters will proceed, the request for deferring can operate, in effect, as an indefinite suspension

that can seriously impede the effort to bring cases to resolution.  Here, none of the proceedings Mr. Clark references justifies the deferral he seeks.

> A.      The Subpoena Enforcement Proceeding in the Court of Appeals.

Mr. Clark makes, what he describes as two "jurisdictional" arguments in the DCCA:

> First, that the Board does not possess jurisdiction over this case while the same issues are pending before the DCCA, and second, that under the unique circumstances of this case, and based on fundamental principles of constitutional, statutory, and administrative law, the D.C. Bar does not have jurisdiction to investigate or Charge the particular alleged conduct in question. The same arguments would be made at the same time at the Board level if the case is not deferred.

Request at 11.

Because Board Rule 7.16(a) requires that the Hearing Committee address these legal issues at the time of the recommended decision, and not in advance of the hearing, this is not the time to make a final ruling on these arguments.  However, the motion to defer does require that I consider whether it is "substantially likely" that the Court's resolution of these arguments could be expected to resolve material issues in this case.  And so, I have examined whether Mr. Clark's arguments meet this standard.  I conclude that they do not.

It is not substantially likely that the Court of Appeals would conclude that the mere filing of a subpoena enforcement proceeding dispossesses the Board of jurisdiction over allegations of misconduct unrelated to the subpoena at issue in the enforcement proceeding.  A proceeding to enforce a subpoena is not an appeal of *this* proceeding.  It is a collateral proceeding and the fact that it happens to be filed

in the District of Columbia Court of Appeals is not a reason to deprive the Board of jurisdiction.

The merits of the subpoena and the merits of the Specification of Charges are also different issues. Mr. Clark and Disciplinary Counsel agree that the Court of Appeals has "exclusive jurisdiction over the question of the enforceability" of a subpoena issued to Mr. Clark during Disciplinary Counsel's investigation. As the Court has "exclusive jurisdiction" over the subpoena issue, that issue is not before this Hearing Committee.

This Hearing Committee will consider whether Disciplinary Counsel has proven the charged Rule violations by clear and convincing evidence, an issue which is not presently before the Court. The Specification of Charges does not contain any allegations regarding Disciplinary Counsel's investigative subpoena, and thus we cannot conclude that the Court of Appeals' resolution of the enforceability of Disciplinary Counsel's subpoena is substantially likely to resolve material issues in this proceeding.

Mr. Clark's list of other "jurisdictional" arguments actually includes only one argument that seems fairly described as jurisdictional. Mr. Clark argues that a federal statute prohibits the District of Columbia's Rules of Professional Conduct from applying to Department of Justice attorneys. He argues that attorneys barred in the District of Columbia can gain a license to practice by swearing to abide by the Rules, but, if they work for the Department of Justice in the District of Columbia, they are not bound by the Rules.

Although "jurisdiction" is, by its nature a "material issue," there is no "substantial likelihood," that Mr. Clark's litigation of this issue will affect this matter in a way that justifies deferral.   The Specification of Charges alleges that Mr. Clark is a member of the D.C. Bar, having been admitted on July 7, 1997 and assigned Bar Number 455315.  Mr. Clark does not challenge this assertion, and thus, he appears to be subject to the Court's disciplinary jurisdiction pursuant to D.C. Bar R. XI, § 1(a), which provides that

> Persons subject to disciplinary jurisdiction. *All members of the District of Columbia Bar*, all persons appearing or participating pro hac vice in any proceeding in accordance with Rule 49(c)(1) of the General Rules of this Court, all persons licensed by this Court Special Legal Consultants under Rule 46(c)(4), all new and visiting clinical professors providing services pursuant to Rule 48(c)(4), and all persons who have been suspended or disbarred by this Court *are subject to the disciplinary jurisdiction of this Court and its Board on Professional Responsibility (hereinafter referred to as "the Board")*.

(emphasis added).  D.C. Bar Rule XI, § 2(b) provides that

> Acts or omissions by an attorney, individually or in concert with any other person or persons, which violate the attorney's oath of office or the rules or code of professional conduct currently in effect in the District of Columbia shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney- client relationship. . . .

Mr. Clark does not address the plain language of D.C. Bar R. XI, § 1(a). Rather, as his primary argument, he asserts that 28 U.S.C. § 530B excepts Department of Justice lawyers in the District of Columbia from the requirements of the District of Columbia Rules of Professional Conduct.  Section 530B specifies that:

(a)     An attorney for the Government[3] shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.

(b)     The Attorney General shall make and amend rules of the Department of Justice to assure compliance with this section.

Mr. Clark's theory is that (1) "State" in this provision does not include the District of Columbia, which, he maintains, is a municipality; and (2) this means that Department of Justice attorneys are not subject to the District of Columbia Rules of Professional Conduct.

This argument however does not appear convincing.  To begin with, even if Mr. Clark were correct about the argument that "State" in this provision does not include the District of Columbia, the "plain language" of the statute does not purport

---

[3] (a) The phrase ***attorney for the government*** means the Attorney General; the Deputy Attorney General; the Solicitor General; the Assistant Attorneys General for, and any attorney employed in, the Antitrust Division, Civil Division, Civil Rights Division, Criminal Division, Environment and Natural Resources Division, and Tax Division; the Chief Counsel for the DEA and any attorney employed in that office; the Chief Counsel for ATF and any attorney employed in that office; the General Counsel of the FBI and any attorney employed in that office or in the (Office of General Counsel) of the FBI; any attorney employed in, or head of, any other legal office in a Department of Justice agency; any United States Attorney; any Assistant United States Attorney; any Special Assistant to the Attorney General or Special Attorney duly appointed pursuant to 28 U.S.C. 515; any Special Assistant United States Attorney duly appointed pursuant to 28 U.S.C. 543 who is authorized to conduct criminal or civil law enforcement investigations or proceedings on behalf of the United States; and any other attorney employed by the Department of Justice who is authorized to conduct criminal or civil law enforcement proceedings on behalf of the United States. The phrase *attorney for the government* also includes any independent counsel, or employee of such counsel, appointed under chapter 40 of title 28, United States Code. The phrase *attorney for the government* does not include attorneys employed as investigators or other law enforcement agents by the Department of Justice who are not authorized to represent the United States in criminal or civil law enforcement litigation or to supervise such proceedings.

28 U.S.C. § 530B(c) (adopting the definition of "attorney for the Government" set forth in 28 CFR § 77.2).

to limit any attorney's ethical responsibilities in any way.  To the contrary, the statute reaffirms the broad ethical responsibility that Department of Justice attorneys have by making it clear that an attorney, when on government service, must follow not only the rules of the jurisdiction in which the attorney is admitted to practice but all the rules of all the jurisdictions in which the attorney practices.  No word in the provision purports to exclude Department of Justice lawyers from any requirements, or to exempt lawyers who *are* members of the District of Columbia bar from following the requirements of the District of Columbia Rules of Professional Conduct.

Nor is there any word that purports to limit the jurisdiction of the District of Columbia (or any other) Board of Professional Responsibility in any way.  Thus, even accepting Mr. Clark's argument that the District of Columbia is not a "State" would not deprive the Board of jurisdiction.

In addition to being insufficient to justify dismissal, Mr. Clark's construction of Section 530B is also extremely strained.  To begin with, Mr. Clark recognizes (Request at 20) that Department of Justice regulations issued under 28 U.S.C. §530B(b), interpret this provision to require Department of Justice attorneys to follow District of Columbia Rules when they practice in this jurisdiction, rather than excluding them from the Rules.  *See* 28 C.F.R. §77.2(h).  As Mr. Clark acknowledges (Request at 17-18) this places an even greater burden on his construction.  Under

*Chevron, U.S.C., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984), unless a statute

is "clear" on its face, courts are not permitted to second guess interpretations of

statutes by the agency authorized to implement them.  Rather they must defer even

to agency interpretations with which they would disagree, so long as those

interpretations are "reasonable."  This means that to succeed on his argument, it

would not be enough for Mr. Clark to urge that the better reading of Section 530B(a)

is that it operates to exempt those lawyers from obligations to follow the District of

Columbia's disciplinary rules.  He would need to establish that there is not even an

ambiguity:  that this exception is "clear" from the face of a provision that, as noted

above, does not even purport to exempt anyone.

Yet the authority Mr. Clark relies upon belies his contention that the language

is "clear."  Mr. Clark cites *District of Columbia v. Carter*, 409 U.S. 418 (1973), a

case that concluded that the District of Columbia was not a "state or territory" for

purposes of the Civil Rights Act of 1866, 42 U.S.C. §1983, as if the case declared it

to be self-evident that the District of Columbia could never be treated as a state.  But

*Carter* actually said the opposite – that the question of how to treat the District of

Columbia under a statute varies depending on the circumstances of the statute:

> Whether the District of Columbia constitutes a "State or Territory"
> within the meaning of any particular statutory or constitutional
> provision depends upon the character and aim of the specific provision
> involved.  Indeed, such 'words generally have different shades of
> meaning, and are to be construed if reasonably possible to effectuate
> the intent of the lawmakers; and this meaning in particular instances is

10

to be arrived at, not only by a consideration of the words themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed.

409 U.S. at 420 (citations omitted).  In fact, the case then went on to analyze the

particular circumstances of the Civil Rights Act of 1866 to reach the conclusion that

although "the District of Columbia is included within the phrase 'every State and

Territory'" as employed in 42 U.S.C. §1982, the *identical* language did not include

the District of Columbia for purposes of 42 U.S.C. §1983.  409 U.S. at 421.  This

means the words cannot be "clear" on their face.

Moreover, to the extent *Carter*'s analysis bears on the relevant language in

Section 530B, it further belies Mr. Clark's argument.  Mr. Clark argues that Section

530B "clearly" cannot apply to the District of Columbia because the District is

"clearly" a municipality, rather than a "State."  But *Carter* found that 42 U.S.C.

§1983 did not apply to the District of Columbia because, in the context of that statute,

the District was a "mere instrumentality of [the Federal] Government," not a

municipality.  409 U.S. at 422.   So, to the extent the result of that case bears on the

meaning of the phrase "State laws and rules, *and local Federal court rules*," in

Section 530B(a) (emphasis added), it would mean that the rules of the District of

Columbia Court of Appeals, *would* apply to Justice Department lawyers.

In any event, as *Carter* explained, the District has a "unique status" that is

"truly *sui generis* in our governmental structure." *Carter*, 409 U.S. at 432.  Although

11

organized as a municipality, the "government of the District is not just another municipal corporation." *Feaster v. Vance*, 832 A.2d 1277, 1287 (D.C. 2003). *See, also e.g., Firemen's Ins. Co. of Washington, D.C. v. Washington*, 483 F.2d 1323, 1328 (D.C. Cir. 1973) ("In many respects the District is more akin to a state than to a municipality."); *Ruffin v. United States*, 76 A.3d 845, 857 (D.C. 2013) ("Although the District of Columbia has been constituted 'as a body corporate for municipal purposes' . . . [it] has been variously compared to or described as a state, territory, or municipality, and sometimes it has simply been called 'unique.'"(citation omitted)). This makes it anything but self-evident whether the District is to be treated as a "state" depending on the context. *See United States ex rel. Lott v. Not-For-Profit Hosp. Corp.*, 296 F. Supp. 3d 143, 150 (D.D.C. 2017); *Parker v. District of Columbia*, 478 F.3d 370, 406 (D.C. Cir. 2007) (observing that courts "have consistently held that several constitutional provisions explicitly referring to citizens of 'States' do not apply to citizens of the District," but that "the District can parallel a 'State' within the meaning of [other] constitutional provisions") (Henderson, J., dissenting).

Where a provision is directed to a function performed by the District of Columbia in the same way that it is performed by States, with no apparent reason for distinction, it is especially reasonable to think that the statute intends "State" to include the District of Columbia. *See, e.g., Kerpen v. Metro. Washington Airports*

*Auth.*, 260 F. Supp. 3d 567, 578 (E.D. Va. 2017) (citing *Carter* in support of the conclusion that the District of Columbia is a "State" for purposes of the Compact Clause of the Constitution), *aff'd* 907 F.3d 152, 159 (4th Cir. 2019) (noting that the Act that created the Washington Area Airports Authority recognized that power "originated with Virginia and the District of Columbia…" and was "therefore, a textbook example of an interstate compact," and "plainly" "not a creature of the federal government"), *cert. denied*, 140 S. Ct. 132 (2019).

In the context of 28 U.S.C. § 530B(a), it is not only permissible for the Justice Department to understand that "State laws and rules, and local Federal court rules," include District of Columbia court rules, it seems incredible to imagine that Congress really intended by negative inference to create a safe harbor so that every Department of Justice attorney can practice in the District of Columbia without being subject to the D.C. Rules of Professional Conduct.  Mr. Clark's argument would mean that, for example, every Assistant United States Attorney who prosecutes a felony case in the District of Columbia Superior Court does so untethered by any ethical obligation to the District of Columbia ethical rules.

However, our Court of Appeals has not only applied the District of Columbia Rules of Professional Conduct to Department of Justice lawyers in that situation, it also noted in disbarring a former AUSA that prosecutorial dishonesty is especially egregious because it "undermined public faith in prosecutors and the larger justice

system." *In re Howes*, 52 A.3d 1, 15 (D.C. 2012).  *See also, e.g., In re Dobbie &*

*Taylor*, Board Docket No. 19-BD-018 (BPR Jan. 13, 2021) (pending before DCCA).

Mr. Clark also describes as "jurisdictional" a number of other "constitutional,

statutory, and administrative law principles" that he asserts apply to the charges

made in this matter.  But that description is not really accurate.  Mr. Clark urges that

Disciplinary Counsel's allegations run afoul of various principles that apply to the

setting of a Justice Department attorney.  He claims that the case will involve the

assertion of improper authority "over internal confidential deliberations of senior

DOJ lawyers, including directly with the President, [and] would violate the

separation of powers by intruding upon and attempting to regulate the President's

exercise of his core Article II authorities to remove and appoint senior officers of the

DOJ, to supervise federal law enforcement and investigations, unconstitutionally

interfering with the President's authority under Take Care Clause and the Opinion

Clause."  Resp. Motion to Dismiss at 9.

These arguments do not justify deferring this action.  They are not really

"jurisdictional," in the sense that they prevent the Board from even considering the

charges.  They are more accurately described as potential defenses that might or

might not apply depending upon the evidence adduced and the arguments made at

the hearing about whether the conduct violates the Rules.  It is not, for example,

clear that the District of Columbia Court of Appeals will address these arguments in

ruling on the subpoena enforcement.  As these assertions fall in the category of legal

14

arguments that would not justify deferring the hearing if filed in this action that should not justify deferral to the extent they are raised in the subpoena action.

   B.    The Pending Criminal Investigation.

Mr. Clark asserts that "[o]n June 20, 2022, approximately a dozen armed agents of the Department of Justice's Office of Inspector General executed a criminal search warrant at [Mr. Clark's] home at around 7 a.m. and seized his electronic devices," in connection with an investigation into violations of "18 U.S.C. § 1001, which relates to false statements, 18 U.S.C. § 371, which relates to conspiracy, and 18 U.S.C § 1512, which relates to obstruction of justice." Mr. Clark argues that "the federal criminal investigation and the [Specification of] Charges [in] this case arise from or relate to the same alleged underlying conduct, [and thus t]he resolution of the criminal investigation will almost certainly help resolve material issues in this matter." Request at 22. Disciplinary Counsel opposes deferral, arguing that Mr. Clark has not asserted that he is the target of a Grand Jury, much less that he has been indicted.

We agree with Disciplinary Counsel. Rule 4.2 permits deferral when there is a "substantial likelihood" that an "ongoing criminal investigation or related pending criminal . . . litigation" "will help to resolve material issues involved in the pending disciplinary matter." As noted above, Mr. Clark does not assert that he has been

indicted, and thus, "pending criminal litigation" cannot serve as a predicate for deferral.[4]

We agree with Mr. Clark that the June 20, 2022 execution of a search warrant suggests that there is an investigation into alleged violations of the three criminal statutes noted above. However, the search warrant execution means only that the Department of Justice believed that Mr. Clark had evidence relating to the criminal investigation. Moreover, the mere existence of a criminal investigation is not enough to support deferral. Mr. Clark must explain how there is a substantial likelihood that the resolution of that investigation would help to resolve material issues here. He does not even attempt to do that.[5] We will not speculate that there

---

[4] We do not suggest that deferral would be appropriate whenever a respondent is indicted. Instead, we conclude only that Mr. Clark is not involved in "pending criminal litigation" and thus, there is no basis to even consider deferral on the ground.

[5] Mr. Clark suggests that he should not be required to defend himself in this disciplinary proceeding while he might be the subject of a criminal investigation: "Compelling Respondent to defend the Charges at this time could force him to choose between asserting his Fifth Amendment privilege against self-incrimination and mounting a full factual defense of his license to practice law." Request at 22. Mr. Clark cites no disciplinary cases to support this contention, and the undersigned Chair is aware of none. The Fifth Amendment privilege against self-incrimination indeed applies in disciplinary proceedings. *In re Artis*, 883 A.2d 85, 103 (D.C. 2005). However, a respondent's invocation of the Fifth Amendment does not curtail a disciplinary prosecution. *See, e.g., In re Barber*, 128 A.3d 637, 640 (D.C. 2015) ("Unlike in a criminal trial, however, Mr. Barber did not have a Fifth Amendment right to decline to take the witness stand. He instead was free to invoke his Fifth Amendment right on a question-by-question basis if, in responding to a question, Mr. Barber would be providing evidence that could be used to convict him of a crime."); *In re Burton*, 472 A.2d 831, 844 (D.C. 1984) ("When Bar Counsel attempted to call Respondent as a witness in Bar Counsel's case, Respondent invoked his Fifth Amendment privilege against self-incrimination.").

Respondent's reliance on *Ex Parte Young,* 209 U.S. 123 (1908) and *Griffin v. California,* 380 U.S. 609, 614 (1965) is misplaced. Under *Ex Parte Young* and its progeny, "a statutory scheme violates due process if 'the penalties for disobedience are by fines so enormous . . . as to intimidate the [affected party] from resorting to the courts to test the validity of the legislation [because] the result is the same as if the law in terms prohibited the [party] from seeking judicial [review]' at all." *General Elec. Co. v. Jackson*, 610 F.3d 110 (D.C. Cir. 2010) (quoting *Ex parte Young*, 209 U.S. at 147) (alteration in original); *accord Wagner Seed Co. v. Daggett*, 800 F.2d 310, 315 (2d Cir. 1986). "In *Griffin,* the Supreme Court held that a comment to the jury about the defendant's refusal

Footnote continued on next page

16

is a substantial likelihood that the investigation will be resolved in a manner that would help to resolve material issues here.

C.      The Proceedings before the January 6th Committee.

Mr. Clark does not argue that there is a substantial likelihood that the resolution of proceedings before the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol (the "January 6 Committee") will help to resolve material issues here.[6]   Instead, he speculates that the January 6 Committee has information that will be helpful to his defense that will not be released until some future date.   This speculation is not a ground for deferral.[7]

The January 6 Committee will "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures . . . as it may deem necessary." *See* H. Res. 503, § 4, ¶ 3 (June 21, 2021).   We do not know whether that report will address the facts alleged in the Specification of Charges, nor do we know what burden of proof the January 6th Committee will use in making its findings.   As discussed above, findings made using a less than "clear and convincing" burden of proof are unlikely to be helpful in resolving material issues

---

to testify at trial violated the defendant's constitutional rights."   *Simpson v. United States*, 1045 A.2d 1050, 1054 n.4 (D.C. 2005).   Neither case addresses any issue presently before the Hearing Committee.

[6] We disagree with Mr. Clark that the January 6 Committee proceedings are a "civil" proceeding. The January 6 Committee is conducting a Congressional investigation.   *See* H. Res. 503, § 3 (June 21, 2021) (describing the investigative purpose of the Committee).   Nonetheless, we consider the merits of Mr. Clark's deferral argument.

[7] Chapter Three of the Board Rules addresses discovery in disciplinary proceedings.   Any future issues regarding Mr. Clark's access to evidence can be addressed pursuant to the procedures in Chapter Three.

here, where Disciplinary Counsel must prove the charges by "clear and convincing" evidence. *See In re Kennedy*, 605 A.2d 600, 601 n.2 (D.C. 1992) (noting, without comment, the Board's determination that the respondent was not collaterally estopped from challenging findings made by a preponderance of the evidence in a Maryland disciplinary proceeding). Thus, we have no basis, other than speculation, to conclude that the January 6th Committee's report is substantially likely to resolve material issues here.

> D.      The Fulton County Special Grand Jury.

Mr. Clark argues that "[a] special grand jury has been empaneled in Fulton County Georgia to investigate what the District Attorney refers to as attempts to influence the November 2020 Presidential election." Request at 25. He asserts that the Special Grand Jury has not contacted him, but that there is likely an "overlap" between the issues here and the issues under investigation by the Special Grand Jury. But the presence of potentially "overlapping issues" is not a sufficient basis to recommend deferral here. Instead, like the criminal investigation discussed in § B, Mr. Clark has failed to show that there is a substantial likelihood that the resolution of the Special Grand Jury investigation will "help to resolve material issues" here.

**Conclusion**

For the reasons discussed above, the undersigned Chair recommends that Mr.

Clark's Request for Deferral Under Board Rule 4.2 be denied.


HEARING COMMITTEE NUMBER TWELVE

By: _____*Merril Hirsh*_____

             Merril Hirsh
             Chair

cc:

Jeffrey Clark, Esquire
c/o Charles Burnham, Esquire
Robert A. Destro, Esquire
Harry W. MacDougald, Esquire
charles@burnhamgorokhov.com
robert.destro@protonmail.com
hmacdougald@ccedlaw.com

Hamilton P. Fox, III, Esquire
Jason R. Horrell, Esquire
Office of Disciplinary Counsel
foxp@dcodc.org
horrellj@dcodc.org