# EXHIBIT B-11

DCCA NO. 22-BS-0059

DISTRICT OF COLUMBIA

COURT OF APPEALS

| | |
|---|---|
| In the Matter of | |
| **CONFIDENTIAL (J.B.C.), ESQ.** | Disciplinary Docket |
| **Respondent,** | No. 2021-D193 |
| **A Member of the Bar of the District of Columbia Court of Appeals** | |

## RESPONSE TO MOTION TO COMPEL AND CROSS-MOTION TO QUASH

Charles Burnham
DC Bar No. 1003464
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Harry W. MacDougald*
Georgia Bar No. 453076
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

* *Motion for pro hac vice application in progress*

Robert A. Destro*
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207
202-319-5303
robert.destro@protonmail.com

**Motion for pro hac vice admission in progress*

Exhibit E

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 1

   NATURE AND ORIGIN OF COMPLAINT FROM SENATOR DURBIN ............................ 1

   ODC'S ACTIONS TO DATE ............................................................................................ 3

ARGUMENT ...................................................................................................................... 6

   PROCEDURAL BACKGROUND ..................................................................................... 6

     A.   Enforcement of Subpoenas ................................................................................ 6

     B.   Standard of Review ........................................................................................... 7

     C.   The Subpoena Was Improperly Served and Should Be Quashed. ..................... 7

   I.    THE FIFTH AMENDMENT BARS ENFORCEMENT OF THE SUBPOENA. ........... 8

     A.   Mr. Clark Properly Invoked the Fifth Amendment. ......................................... 9

     B.   Disciplinary Counsel's Subpoena Amounts to an Improper Set of Interrogatories and Thus It Is Not Even Necessary to Reach the Act of Production Doctrine. ............ 11

     C.   Even to the Extent It Is Implicated Here, Mr. Clark Has a Strong and Valid Basis to Claim the Act of Production Privilege ........................................................ 13

   II.   THE SUBPOENA SHOULD BE QUASHED BECAUSE THE CHALLENGED CONDUCT IS NOT SUBJECT TO BAR DISCIPLINE. ........................................... 14

     A.   28 USC § 530B(a) Does Not Confer on the D.C. Bar Unfettered Authority to Investigate or Regulate the Discretionary Actions of DOJ Lawyers. ........................... 15

     B.   Under 28 U.S.C. § 530B and 28 C.F.R. § 77.2, the Bar Has No Jurisdiction Over Respondent Because It Does Not "Ordinarily Apply" Discipline to the Particular Conduct in Question. ........................................................................................ 19

     C.   There Is No Precedent for Disciplining a Lawyer Over a Never-Sent Discussion Draft of a Document Calling for State Investigation ........................................ 19

     D.   Rule 8.4(d) Does Not Apply ........................................................................... 20

   III.  THE POLITICAL PANDORA'S BOX HERE SHOULD NOT BE OPENED. ........... 21

     A.   Legislators in Georgia and Other States Called for Legislative Reexaminations of Their Electoral Votes. ..................................................................................... 22

     B.   Under Disciplinary Counsel's Unrestrained Theory, a Host of Members of Congress Who Are Lawyers Committed Ethical Violations by Questioning the Election. ........................................................................................................... 22

     C.   Leaked Media Reports of Mr. Clark's Conduct Reflect That He Held Views Generally Consistent with Those of Three Dissenting Supreme Court Justices and 18 State Attorneys General. ............................................................................. 24

     D.   The View That Unlawful Election Procedures Were Used in at Least Some States Has Been Vindicated in Several Respects. ....................................................... 25

CONCLUSION .................................................................................................................. 28

# TABLE OF AUTHORITIES

## Cases

*Bond v. United States*, 572 U.S. 844 (2014) ................................................................. 16
*Branch v. Smith*, 538 U.S. 254 (2003) ....................................................................... 16
*Brooks v. United States*, 448 A.2d 253 (D.C. 1982) .................................................... 14
*Butler v. United States*, 890 A.2d 181 (D.C. 2006) ..................................................... 10
*Carter v. United States*, 684 A.2d 331 (D.C. 1996) .................................................. 9, 11
*CF&I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494 (9th Cir. 1983) ............... 8
*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984) ........................................... 16
*District of Columbia v. Carter*, 409 U.S. 418 (1973) ................................................... 17
*Fisher v. United States*, 425 U.S. 391 (1976) ............................................................... 12
*FTC v. Compagnie De Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300 (D.C. Cir. 1980) ............. 8
*Hamer v. Eastern Credit Ass'n, Inc.*, 192 A.2d 127 (D.C. 1963) ...................................... 8
*In re Artis*, 883 A.2d 85 (D.C. 2005) ............................................................. 6, 10, 12, 14
*In re Benjamin*, 698 A.2d 434 (D.C. 1997) .................................................................. 6
*In re Burton*, 472 A.2d 831 (D.C. 1984) ..................................................................... 11
*In re Confidential*, 701 A.2d 842 (D.C. 1997) ............................................................... 7
*In re Hopkins*, 677 A.2d 55 (D.C. 1996) ...................................................................... 21
*In re Horowitz*, 482 F.2d 72 (2d. Cir. 1973) ................................................................ 14
*In re Pearson*, 228 A.3d 417 (D.C. 2020) .................................................................... 21
*In re Public Defender Serv.*, 831 A.2d 890 (D.C. 2003) ............................................ 7, 13, 14
*In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078 (E.D.N.Y. 1978) .......... 15
*In re Romansky*, 825 A.2d 311 (D.C. 2003) ................................................................. 20
*In re Sealed Case*, 116 F.3d 550 (D.C. Cir. 1997) .......................................................... 8
*In re Thorup*, 432 A.2d 1221 (D.C. 1981) .................................................................... 6
*In re Yelverton*, 105 A.3d 413 (D.C. 2014) .................................................................. 21
*In the Matter of Shorter*, 570 A.2d 760 (D.C. 1990) ...................................................... 20
*Johnson v. United States*, 746 A.2d 349 (D.C. 2000) ..................................................... 10
*Lefkowitz v. Turley*, 414 U.S. 70 (1973) ................................................................... 9, 10
*Mason v. United States*, 244 U.S. 362 (1917) ............................................................... 9
*McLinko v. Commonwealth of Pennsylvania, et al.*, No. 244 M.D. 2021, 2022 WL 257659
    (Pa. Commw. Ct. Jan. 28, 2022) ............................................................................... 26
*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ......................... 8
*Ohio v. Reiner*, 532 U.S. 17 (2001) ............................................................................ 14
*Pulley v. United States*, 532 A.2d 651 (D.C. 1987) .......................................................... 8
*Republican Party of Pennsylvania v. Degraffenreid*, 141 S. Ct. 732 (2021) ....................... 24
*Texas v. Pennsylvania*, 141 S. Ct. 1230 (2020) ............................................................ 25
*Trump v. Biden*, 394 Wis. 2d 629, 951 N.W.2d 568 *cert. denied*, 141 S. Ct. 1387 (2021) .......... 26
*United States v. John Does*, 465 U.S. 605 (1984) .......................................................... 12
*Wilson v. United States*, 558 A.2d 1135 (D.C. 1989), *overruled on other grounds*, 684 A.2d
    331 (D.C. 1996) ...................................................................................................... 9

## Statutes

5 U.S.C. § 7323 ..................................................................................................... 11

18 U.S.C § 371 ............................................................................................................... 11
18 U.S.C. § 1512 ........................................................................................................... 11
18 U.S.C. § 1962 ........................................................................................................... 11
18 U.S.C. § 2383 ........................................................................................................... 11
18 U.S.C. § 2384 ........................................................................................................... 11
26 U.S.C. § 170 ............................................................................................................. 18
28 U.S.C. § 506 ............................................................................................................. 15
28 U.S.C. § 509 ............................................................................................................. 16
28 U.S.C. § 510 ............................................................................................................. 16
28 U.S.C. § 515 ............................................................................................................. 16
28 U.S.C. § 516 ............................................................................................................. 16
28 U.S.C. § 517 ............................................................................................................. 16
28 U.S.C. § 519 ............................................................................................................. 16
28 U.S.C. § 533 ............................................................................................................. 16
28 U.S.C. § 547 ............................................................................................................. 16
28 USC § 530B ............................................................................................. 15, 16, 17, 19
28 U.S.C. § 1257 ........................................................................................................... 17
28 U.S.C. § 1927 ........................................................................................................... 17
42 U.S.C. § 1983 ........................................................................................................... 17
42 U.S.C. § 8285a ......................................................................................................... 17
52 U.S.C. § 20511 ......................................................................................................... 11
D.C. Code § 11-944 ...................................................................................................... 17
D.C. Code § 23-1330 .................................................................................................... 17
O.C.G.A. § 21-2-385 ............................................................................................... 27, 28
Pub. L. 105-277, 112 Stat. 2681 (Oct. 21, 1998) ........................................................ 17
Pub. L. 96-132, 93 Stat. 1040 (1979) .......................................................................... 17

## Other Authorities

OLC Opinion, *State Bar Disciplinary Rules as Applied to Federal Government Attorneys*
    (Aug. 2, 1985) ........................................................................................................... 15

## Rules

Board Rule 2.9 ................................................................................................................. 5
Board Rule 3.14 ............................................................................................................... 7
Board Rule 3.15 ............................................................................................................... 7
Board Rule 3.16 ............................................................................................................... 7
Board Rule 4.1 ............................................................................................................. 5, 18
D.C. Bar Rule XI, § 18 ................................................................................................... 6
D.C. Bar Rule XI, § 8 ..................................................................................................... 6
D.C. Rules of Professional Conduct 1.2(e) ................................................................... 10
D.C. Rules of Professional Conduct 8.4(c) ..................................................... 19, 20, 21
D.C. Rules of Professional Conduct 8.4(d) ................................................................... 21
Fed. R. Civ. P. Rule 45 .................................................................................................... 8
Superior Court Rule 45 ............................................................................................. 6, 7, 8
Supreme Court Rule 47 .................................................................................................. 18
United States Senate, Rule IX ......................................................................................... 2

## Regulations and Preambles

28 C.F.R. § 16.21 ................................................................................................ 6
28 C.F.R. § 77.2 ......................................................................................... 16, 19
64 Fed. Reg. 19,273 (Apr. 20, 1999) ................................................................ 16

## Constitutional Provisions

U.S. Const., art. 1, § 4, cl. 1 ............................................................................ 25
U.S. Const., art. I, § 5 ........................................................................................ 2
U.S. Const., art. I, § 8, cl. 17 ........................................................................... 17
U.S. Const., art. II, § 1, cl. 2 ........................................................................... 25
U.S. Const., art. II, § 2, cl. 1 ........................................................................... 15
U.S. Const., art. II, § 3 .................................................................................... 15
U.S. Const., amend V ................................................................................. passim

## Other References

147 Cong. Rec. H34 (Jan. 6, 2001) ................................................................. 22
151 Cong. Rec. H127 (Jan. 6, 2005) ............................................................... 22
Amanda Prestigiacomo, *Democrats Objected to Electoral Vote Certification in 2000, 2004, 2016*, DAILY WIRE (Jan. 4, 2021) ........................................................................ 23
Chairman's Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee ................................................................................... 22
Daniel Chaitin, *Jan. 6 Committee Member Floats Immunity for Trump Justice Official*, WASH. EXAMINER (Feb. 3, 2022) ................................................................... 10
DOJ Office of Inspector General Press Release, *available at* https://tinyurl.com/2p9ad5tm s
John Solomon, *Georgia Opens Investigation Into Possible Illegal Ballot Harvesting in 2020 Election* (Jan. 4, 2022) ................................................................................ 28
Li Zhou, 147 *Republican Lawmakers Still Objected to the Election Results After the Capitol Attack: Congress Has Certified President-Elect Joe Biden as the Winner of the Election— But Some Republicans Still Objected*, Vox (Jan. 7, 2021) .................................... 24
Matthew Boyle, *Exclusive—True The Vote Conducting Massive Clandestine Voter Fraud Investigation*, BREITBART (Aug. 4, 2021) ..................................................... 27
Michael Patrick Leahy, *Arizona Senate Report on the Maricopa County Election Audit Highlights 49,000 Questionable Votes, Asks AG to Investigate*, BREITBART (Sept. 25, 2021) ........................................................................................................ 27
Rep. Lofgren, YouTube, *available at* https://tinyurl.com/2n6cu36c .................. 10
*Rep. Raskin Challenges Awarding of Electors*, YOUTUBE (Jan. 8, 2017), *available at* https://tinyurl.com/wa6735ty (Jan 8, 2017) .................................................... 23
Trailer, 2000 Mules, https://tinyurl.com/2p86dznj ........................................ 28
Trump 2d Impeachment Trial, Day 2 Tr. (Feb. 10, 2021), *available at* https://tinyurl.com/ryd3ktzk ..................................................................... 23
Zach Montellaro, *Wisconsin State Supreme Court Lets Ban on Drop Boxes Go Into Effect for Spring Election*, POLITICO (Feb. 11, 2022) ................................................. 26

# INTRODUCTION

The Motion to Compel should be denied and the subpoena quashed on three grounds: (1) Respondent Mr. Clark properly invoked his Fifth Amendment rights, *see infra* Section I; (2) the Bar's disciplinary authority does not extend to the preparation of privileged Executive Branch discussion drafts of letters never sent, *see infra* Section II; and (3) investigating and potentially punishing the preparation of confidential, non-public discussion drafts pertaining to a very contentious political dispute, at the behest of a highly partisan member of the opposite party in a rival branch of government, would embroil the Bar in matters far beyond its charter, and pervert the disciplinary process to purely political ends, *see infra* Section III. Oral argument is requested.

# STATEMENT OF FACTS

### NATURE AND ORIGIN OF COMPLAINT FROM SENATOR DURBIN

The Office of Disciplinary Counsel ("ODC") began its investigation of Respondent a week after receiving a letter from Senator Richard Durbin, Chairman of the Senate Judiciary Committee. Senator Durbin has no personal knowledge of the matters complained of. At least one other politically motivated complaint was filed by a collection of third-party detractors but was rightly rejected by ODC for lack of personal knowledge, which should similarly have been fatal to the Durbin complaint as well.

Senator Durbin, a partisan opponent of President Trump, here complains about a confidential and privileged discussion draft of a letter calling for more legislative investigation allegedly prepared by Respondent while he was a senior DOJ official about a matter of intense political controversy. The draft was reportedly the subject of vigorous internal privileged and confidential debate involving legal judgment, first among senior DOJ officials including Respondent, and later played out before the President himself and his most senior legal advisors at the White House and DOJ. After considering the letter, the President appears to have decided

against sending it, and so it was never sent. That was the end of the matter, at least until the phalanx of privileges attending the preparation and discussion of the draft—executive, law enforcement, and attorney-client—were all breached via anonymous leaks to the *New York Times*, and it became fodder for the lawfare element of the political witch hunt currently underway against Respondent.

The crux of the allegations are that Respondent made knowingly false statements of fact about possible election anomalies in the never-sent discussion draft of a letter calling for investigation. The allegations of "knowing falsity" rest on the dogged premise that there was no possible good-faith belief that there were any election irregularities sufficient to suggest a state legislature engage in further investigation. But premises do not equal truth; they are just the position of one side in an intense partisan political controversy that evenly divides Americans.

Being evenly balanced between the political parties, Senator Durbin's Senate Judiciary Committee could not issue subpoenas.[1] Senator Durbin's letter to the ODC consequently spoke only for himself, not the entire Committee. ODC has thus taken up a complaint from a single politically motivated member of one branch of government who is trying to weaponize the bar disciplinary process against a senior official (from a rival political party) at an Executive Branch department over a never-sent privileged and confidential discussion draft of a letter calling for more state legislative process. The complaint, the investigation, and any potential punishment are thus all directed not against conduct but against constitutionally protected thoughts and legal advice deemed contrary to the foundational premise upon which the allegations rest.

To proceed further, ODC would have to distinguish among (1) the true state of the facts; (2) individual perceptions of the facts; (3) opinions about the significance of the perceived facts;

---

[1] *See* Rule IX of the Rules of Procedure of the United States Senate, *available at* https://tinyurl.com/36uuee5f (last visited Feb. 15, 2022), a rule with constitutional imprimatur, U.S. Const., art. I, § 5 ("Each House may determine the Rules of its Proceedings ....").

and (4) legal, policy and prudential judgments about what ought to be done or not done in light of the perceived facts. At the time, there were intense controversies attached to each of these four tiers of inquiry. Those controversies still exist and will persist well into the future—just as they still do with respect to the *Bush v. Gore* controversy arising back in 2000.

## ODC'S ACTIONS TO DATE

After docketing Senator Durbin's complaint on October 14, 2021, ODC made immediate resort to a subpoena, bypassing less invasive or aggressive methods of trying to gather information.

ODC's aggression out of the gate stumbled on a series of procedural faults along the way. A first letter purporting to transmit the subpoena to Respondent's former counsel dated October 18, 2021, the so-called "B letter," was never received. *See* Affidavit of Robert A. Driscoll, ¶¶ 4-11 (attached as Exhibit 1). A follow-up "D letter," premised on the lack of any response to the first letter and dated November 9, 2021 and purportedly sent to Respondent's former counsel, was also never received. *See generally* Driscoll Affidavit.

On November 22, 2021, Disciplinary Counsel, Mr. Fox, left a voice mail for Respondent's former counsel saying that no response had been received to either letter and that a motion to compel would be filed that day or early the next morning. *See id*. at ¶ 6. The former counsel, Mr. Driscoll, immediately returned the call and informed Mr. Fox that he had never received anything from him and that he no longer represented Mr. Clark. *See id*. at ¶ 7. Mr. Driscoll then double-checked all incoming email systems including filters and regular mail and confirmed that nothing had been received from Mr. Fox, and so informed Mr. Fox. *See id*. at ¶ 8-9.

Importantly, Mr. Fox never mentioned or discussed a subpoena with Mr. Driscoll, and Mr. Driscoll never made any agreement to accept service of the subpoena on behalf of the Respondent. Thereafter, Mr. Fox attempted to deliver a new "B letter" dated November 22, 2021 and subpoena directly to Respondent. This letter, however, was initially not received either.

Next, Respondent got Covid, and Mr. Fox very kindly accommodated his recovery. Mr. Fox and Respondent later began exchanging emails in which Mr. Fox attempted to deliver the letter and its exhibits via email. This too was beset with delivery problems. Some of the email exchanged between Respondent and Mr. Fox and his assistants was intercepted by each side's spam filters. Mr. Clark thus did not receive the full set of documents comprising the "B letter" and its attachments until January 6, 2022. *See* Aff. of Resp., ¶¶ 4-6 (attached as Exhibit 2).

Respondent agreed to and did respond to ODC's letter and subpoena on January 31, 2022. *See id.* at ¶ 6. But he never agreed to accept service of the subpoena via email.

The subpoena called for Respondent to either produce documents or appear at the Bar offices on the return date (which was never corrected by ODC to the agreed-on January 31, 2022 date) if documents were not to be produced. On Friday January 28, 2022, new counsel for Respondent spoke to Mr. Fox by telephone to say that Respondent would invoke the Fifth Amendment and would not be producing any documents, inquiring if Respondent nevertheless needed to appear. Mr. Fox replied, "no," but that if Mr. Clark claimed the Fifth Amendment against the production of documents, "I promise you I will ratchet up the discipline" and that a motion to compel would be rapidly filed. Mr. Fox followed up with an email at 8:30 PM that Friday evening reiterating that threat. *See* Harry MacDougald Aff. at ¶¶ 5-6 (attached as Exhibit 3).

On January 31, 2022, Mr. MacDougald (one of Mr. Clark's undersigned counsel) delivered to Mr. Fox two lengthy letters responding to the unserved subpoena. The shorter letter invoked, *inter alia*, Mr. Clark's Fifth Amendment privilege against self-incrimination as well as the act of production doctrine, and laid out in detail the basis for a well-founded fear of criminal prosecution and the overlap with a document subpoena issued by the January 6 House Select Committee. The letter thus requested a deferral under Board Rule 4.1, noted the defects in the subpoena's service,

4

highlighted separation of powers issues, and reserved all other rights, defenses, and objections. The longer letter asserted a series of substantive legal objections to the ODC proceeding with the investigation and attached the full set of letters to the January 6 Committee as exhibits.

Mr. Fox filed this Motion to Compel on February 3, 2022. There was no meet and confer (*see* Board Rule 2.9(a)) or other discussion about Respondents' objections. While the Motion recites that it was served with exhibits by regular mail and email on February 3, 2022, a remarkable series of clerical problems in ODC prevented delivery of the complete motion and exhibits from being accomplished until February 14, 2022. *See* Exhibit 3 ¶¶ 7-15.  When Mr. Fox was first informed of non-deliver, he quickly sent the Motion to Compel to undersigned counsel, informed us that the exhibits were documents we already had, and agreed that the response to his Motion could be filed on February 15, 2022, and a motion to that effect was filed in this Court. *Id*. at ¶ 10.

Mr. Fox produced certain correspondence with Senator Durbin and his staff dated October 14, 2021, which informed the Senator that his complaint had been docketed as an investigation rather than a charge, that the matter was confidential, and that he would automatically furnish the Senator with any response made by Mr. Clark. In his letters to Mr. Fox of January 31, 2022 in response to the subpoena, undersigned counsel vigorously objected to furnishing Mr. Clark's response to Senator Durbin on the grounds that it would breach the confidentiality of the proceedings, as Senator Durbin was not Respondent's client, and that in the supercharged political atmosphere surrounding the underlying issues, doing so would very likely result in a media leak of the information, further fueling the partisan furor raging against Mr. Clark.

Mr. Fox also produced "*Touhy* correspondence" with DOJ (*see* 28 C.F.R. § 16.21 *et seq.*), seeking access to former DOJ officials as witnesses. DOJ replied, agreeing to Mr. Fox's request. However, DOJ failed in multiple respects to comply with its own regulations governing such

matters, as we are just setting before DOJ today and thus which we do not further address here, pending a response by DOJ. Lastly, Mr. Fox also shared two additional *Touhy*-related documents with us on February 11, 2022.

## ARGUMENT

### PROCEDURAL BACKGROUND

#### A. Enforcement of Subpoenas

When conducting an investigation, Disciplinary Counsel may propound "written inquiries" with the explicit limitation that the investigation is subject to "constitutional limitations." D.C. Bar Rule XI, § 8(a). But no subpoena may include inquiries crossing over into the impermissible territory of litigation-like interrogatories. *See In re Artis*, 883 A.2d 85 (D.C. 2005). This Court frames disciplinary proceedings as "adversary, adjudicatory proceedings" related to property rights and which therefore are attended by due process protections. *See In re Benjamin*, 698 A.2d 434, 439 (D.C. 1997) (citing *In re Thorup*, 432 A.2d 1221, 1225 (D.C. 1981)).

Disciplinary Counsel may compel the attendance of witnesses and the production of pertinent books, papers, documents, etc., but only subject to D.C. Superior Court Rule 45. *See* D.C. Bar Rule XI, § 18(a). This Court may, "on proper application," enforce a subpoena. *See id.*, § 18(d).[2] Superior Court Rule 45(b)(1) prescribes the manner for service of subpoenas, requiring delivery to the person named by anyone over the age of 18 years who is not a party to the action and the tendering of certain fees if attendance is demanded (as it originally was in the alternative here). Rule 45(b)(3) requires the one serving the subpoena to certify proof of service showing the

---

[2] However, if there is a challenge to the subpoena, Bar Rule XI, § 18(c) contemplates a Board of Professional Responsibility's Hearing Committee to hear and determine the challenge. We did not bring such a challenge because ODC did not engage in the required meet and confer after we filed the January 31, 2022 letters. ODC simply proceeded immediately to this Court. Especially given the pendency of various investigations—and the ***interim*** nature of the report that Senator Durbin's staff prepared, we are at a loss to explain why ODC considers this matter to be exigent.

date and manner of service and the name of the person served.

Board Rules 3.14 through 3.16 also control subpoenas issued during an investigation, and they allow for Disciplinary Counsel to apply directly to this Court for enforcement. On February 3, 2022, Disciplinary Counsel chose to file a motion to enforce directly with this Court.

Pursuant to Superior Court Rule 45(c)(3)(A), as transplanted here, subpoenas may be quashed on timely motion if they require disclosure of privileged or protected matter not subject to exception or waiver, is unduly burdensome or fails to provide a reasonable time to comply; and under sub-rule (c)(3)(B)(i) if the subpoena requests "confidential research." Parties may also describe their objections, if substantiated, to a subpoena as "overbroad" or amounting to a "fishing expedition." *In re Confidential*, 701 A.2d 842, 842 (D.C. 1997). If there is an assertion of a privilege, etc., then under Superior Court Rule 45(d)(2), the claim must be expressly made.

### B.  Standard of Review

Since Disciplinary Counsel chose to seek enforcement of his subpoena directly with the Court of Appeals, any issues and objections must be decided here in the first instance and not on review. Since the subpoena enforcement involves questions of law, questions of fact, and mixed questions of law and fact, the Court should act in the same vein as a trial court, deciding questions of law and finding facts. *Cf. In re Public Defender Serv.*, 831 A.2d 890, 898-99 (D.C. 2003), which discussed the various roles in the context of a grand jury subpoena. This analysis applies here by analogy as well, especially given the assertion of constitutional and other privileges.

### C.  The Subpoena Was Improperly Served and Should Be Quashed.

The applicable procedure for service of subpoenas is very clear. Superior Court Rule 45(b)(1) requires that the subpoena be served by an adult who is not party to the action, coupled with certified proof of subpoena service and tendered fees (if attendance might be required). There is no certified proof of service by an adult here (and no fees tendered) because the subpoena was

not so served. Service was not waived, no testimony has been given, and objections were timely made, preserving all rights. *See In re Sealed Case*, 116 F.3d 550, 561-62 (D.C. Cir. 1997).

Thus, the service requirement has not been met. And where subpoenas are not properly served, they must be quashed. *See Hamer v. Eastern Credit Ass'n, Inc.*, 192 A.2d 127 (D.C. 1963); *see also Pulley v. United States*, 532 A.2d 651, 653 (D.C. 1987) (citing *CF&I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494 (9th Cir. 1983) (quashing subpoena for failure to tender fees)).

Further, since Superior Court Rule 45 is "virtually identical" to Fed. R. Civ. P. Rule 45, it is instructive to refer to the importance of maintaining the integrity of the service requirement. *See also FTC v. Compagnie De Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1312-13 (D.C. Cir. 1980), which underscored the point:

> By contrast, Federal Rule 45(c), governing subpoena service, does not permit any form of mail service, nor does it allow service of the subpoena merely by delivery to a witness' dwelling place. Thus, under the Federal Rules, compulsory process may be served upon an unwilling witness only in person. Even within the United States, and even upon a United States citizen, service by registered U.S. mail is never a valid means of delivering compulsory process ….

*See also id.* at 1307.

The Supreme Court has repeatedly emphasized the importance of service. *See, e.g., Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (even actual notice via fax of a file-stamped copy of a pleading was not valid service). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant …. Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 350-51.

## I. THE FIFTH AMENDMENT BARS ENFORCEMENT OF THE SUBPOENA.

The Fifth Amendment privilege against self-incrimination:

not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but ***also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal***, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (emphasis added).

### A. Mr. Clark Properly Invoked the Fifth Amendment.

In the District, it has long been settled that a court evaluating a Fifth Amendment claim should not speculate about whether criminal prosecution is "likely" but should instead limit its inquiry to whether criminal prosecution is "possible." *Carter v. United States*, 684 A.2d 331, 334-35, 338 (D.C. 1996) (en banc). The *Carter* decision overruled a line of cases requiring courts to assess the probability of prosecution before upholding Fifth Amendment privilege.

Moreover, the Fifth Amendment is to be "liberally construed" and thus is not limited to situations where the compelled disclosures themselves would be incriminating. It is sufficient if the disclosure could possibly supply a "link in the chain" leading to prosecution. *Wilson v. United States*, 558 A.2d 1135, 1141 (D.C. 1989), *overruled on other grounds by Carter*, 684 A.2d 331 (D.C. 1996) (en banc). In a foundational case, the United States Supreme Court described this concept as follows: "A question which might appear at first sight a very innocent one might, by affording a link in a chain of evidence, become the means of bringing home an offense to the party answering." *Mason v. United States*, 244 U.S. 362, 364-66 (1917) (citing 1861 English decision).

Although the Fifth Amendment must normally be asserted on a question-by-question basis, this Court recognizes that the combination of the "possible prosecution" standard and the "link in the chain" doctrine can easily render entire areas of testimony privileged. *See, e.g., Butler v. United States*, 890 A.2d 181, 188 (D.C. 2006) (granting a witness blanket immunity was procedurally flawed but harmless since it was "obvious that *any* testimony" would be incriminating) (italics in original); *Johnson v. United States*, 746 A.2d 349, 356 (D.C. 2000) (same).

ODC's investigation of Mr. Clark presents an obvious Fifth Amendment case. The letter from Senator Durbin that triggered this investigation itself states that "Mr. Clark appears to have violated Rule 1.2(e)'s prohibition against counseling a client to engage, or assisting a client, in conduct **the lawyer knows is criminal or fraudulent**." Exhibit 4 at 2 (internal quotations and brackets omitted) (emphasis added). This allegation of criminal conduct in the triggering complaint, standing alone, is sufficient to justify Mr. Clark's Fifth Amendment invocation. If further reinforcement is needed, Mr. Clark's letter in response to this subpoena detailed many examples of lawyers implicitly or explicitly calling for Mr. Clark's criminal prosecution based on his service in the Justice Department. *See* Exhibit C to Motion to Enforce at 6-8. Notably, the January 6 Select Committee appears to have accepted Mr. Clark's invocation of the Fifth Amendment as to the same subject matter and has publicly pivoted to the topic of whether to grant him immunity.[3]

In contesting the validity of Mr. Clark's Fifth Amendment invocation, Disciplinary Counsel first argues that the Office of Disciplinary Counsel itself cannot charge crimes. Motion at 7. As quoted above, however, the Supreme Court has long held that the Fifth Amendment applies outside of the strictly criminal context, if the disclosures "might incriminate in [] future criminal proceedings." *Lefkowitz*, 414 U.S. at 77. And most importantly, this Court has held repeatedly that Fifth Amendment protection applies in Disciplinary Counsel cases. *See, e.g., In re Artis*, 883 A.2d 85, 103 (D.C. 2005); *In re Burton*, 472 A.2d 831, 845-46 (D.C. 1984).

Disciplinary Counsel then argues that Mr. Clark has not asserted he is "even the subject, much less the target, of any criminal investigation." Motion at 7. Putting aside the obvious point

---

[3] *See, e.g.,* Daniel Chaitin, *Jan. 6 Committee Member Floats Immunity for Trump Justice Official*, WASH. EXAMINER (Feb. 3, 2022), *available at* https://tinyurl.com/bdemy976, (last visited Feb. 15, 2022); https://tinyurl.com/2n6cu36c (Rep. Lofgren, YouTube video) (last visited Feb. 15, 2022).

the criminal investigations are often confidential, no Court has ever held that Fifth Amendment protection is only available to persons known to be under active criminal investigation. Disciplinary counsel cites no cases in support of this argument.

Next, Disciplinary Counsel argues that Mr. Clark has not "specif[ied] what criminal charges [he] might realistically be subject to." *Id.* This argument is unavailing for two reasons. *First*, Mr. Clark has no burden to show that he "might realistically be subject to" criminal prosecution. This standard for Fifth Amendment protection was explicitly rejected by this Court *en banc* in *Carter*, cited above. *Second*, this Court has never required individuals seeking Fifth Amendment protection to identify specific criminal statutes. Disciplinary Counsel cites no case imposing this requirement. In any event, in his counsel's letter to Disciplinary Counsel, Mr. Clark cited an editorial by several prominent law professors that did identify several specific statutes the authors contended could serve as a basis for criminal investigation of former President Trump and "members of his inner circle." Motion, Exhibit 3 at 8 (collected list of statutes below):

> Obstruction of an Official Proceeding (18 U.S.C. § 1512); Conspiracy to Defraud the Government (18 U.S.C § 371); Voter Fraud for Pressuring State Officials Not to Certify the Election (52 U.S.C. § 20511); the Hatch Act (5 U.S.C. § 7323); the Racketeer Influenced and Corrupt Organizations Act (RICO, 18 U.S.C. § 1962(c)); Insurrection (18 U.S.C. § 2383); and Seditious Conspiracy (18 U.S.C. § 2384).

**B. Disciplinary Counsel's Subpoena Amounts to an Improper Set of Interrogatories and Thus It Is Not Even Necessary to Reach the Act of Production Doctrine.**

Disciplinary Counsel also disputes Mr. Clark's invocation of the Fifth Amendment "act of production" privilege. But Disciplinary Counsel's arguments in that vein fail because ODC's subpoena is plainly more than a simple demand for documents.

To be sure, the Fifth Amendment privilege does not ordinarily apply to "pre-existing, voluntarily prepared documents." *Fisher v. United States*, 425 U.S. 391, 408-09 (1976). However, when a given request goes in any way beyond mere production of pre-existing documents, the

Fifth Amendment bar arises. *See*, *e.g., United States v. John Does*, 465 U.S. 605, 610-15 (1984) (compelled oral or written testimony that restates the contents of documents would be privileged).

In *In re Artis*, this Court considered a case where Disciplinary Counsel had issued "interrogatory-like questions" to respondent. 888 A.2d 85 (D.C. 2005). This Court affirmed the respondent's right to assert his Fifth Amendment privilege and did not order the respondent to answer Disciplinary Counsel's "interrogatory-like questions." *Id*. at 99, 101 & n.13.

Here, Disciplinary Counsel incorrectly claims that its subpoena merely seeks "five categories of documents." Motion at 11-12. To the contrary, the subpoena seeks much more than that and is in fact directly analogous to the "interrogatory-like questions" (*i.e.*, those inherently forcing respondent admissions) at issue in *In re Artis.* The emphasized portions of the following subpoena requests make clear that more than simple production of documents is demanded:

- Produce all documents and records … ***of which you were aware*** before January 4, 2021, ***that contain evidence of irregularities in the 2020 presidential election and that may have affected the outcome in Georgia or any other state***;

- ***Identify the source*** *of any document (including contact information for any persons bringing the document to* ***your attention****, how it came to* ***your attention****, and the date it came to* ***your attention****;*

- ***Specify what information*** *of election fraud came to* ***your attention*** following the announcement of Attorney General Barr on December 1, 2020 that the Department found no evidence of fraud on a scale that could have affected the results of the presidential election;

- Produce any file or collection of materials or correspondence, written or electronic, ***relating to*** ***any efforts that you made*** *between the November 3, 2020 presidential election and January 4, 2021*, that relate in any way to any ***efforts you made*** *to persuade* officials of the United States Department of Justice to intervene in the certification by any state;

- ***Provide the results*** of any legal research ***that you conducted*, had conducted*, or received** ***before January 4, 2021*** … [t]his information should include any research that addresses the responsibility of the Assistant Attorney General of the Civil Division or the Assistant Attorney General of the Environmental [*sic*] and Natural Resources Division to investigate allegations of election fraud;

- Provide all written policies and guidelines of the Department of Justice, *of which **you were aware*** and that were in effect between November 3, 2020 and January 4, 2021, relating to the circumstances in which lawyers at the Department of Justice were permitted to be in direct contact with officials of the White House or the Executive Office of the President;

The emphasized portions of the foregoing list of demands make clear that the subpoena does not simply request "categories of documents." It requires Mr. Clark to make substantive assertions or concessions about such things as: (1) when he became aware of certain documents; (2) how and by whom the documents came to his attention; (3) the relationship between the documents and his "efforts"; (4) the "results" of his legal research and when he conducted it; and (5) which policies he was "aware [of] that were in effect" at certain times. These requests go far beyond the type of "preexisting documents" that fall outside the scope of the Fifth Amendment The requests demand substantive admissions from Mr. Clark about facts relating to his *mens rea* and that could obviously be used as a "link in the chain" of some future criminal case. And even if there are *no* responsive documents to a given request, this answer itself could be used as an admission to incriminate Mr. Clark. It is therefore not necessary even to engage in an "act of production" analysis to sustain Mr. Clark's Fifth Amendment invocation.

### C.  Even to the Extent It Is Implicated Here, Mr. Clark Has a Strong and Valid Basis to Claim the Act of Production Privilege.

However, to the extent this Court decides the Fifth Amendment act of production doctrine is implicated here, District law clearly supports Mr. Clark's ability to assert this privilege in response to the subpoena. In *In re Public Defender Service*, this Court held as follows:

> A government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect. That is, by producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic.
>
> ***
>
> Even where the contents of a subpoenaed document may be incriminating, the act of production privilege is not automatic. The act of production privilege does not apply if the existence and authenticity of a document is a foregone conclusion as

13

> would be the case if the act of production adds little or nothing to the sum total of the Government's information.

831 A.2d 890, 912 (D.C. 2003) (internal quotations and citations omitted).

Instead of attempting to meet *In re Public Defender Service's* "foregone conclusion" standard, Disciplinary Counsel argues that Mr. Clark has not shown that responding to the subpoena will conclusively prove him guilty of a crime:

> This is far removed from the situation in *Hubble*, where a criminal defendant was required to produce to the grand jury personal financial records **which established his income tax evasion**, or in Public Defender Service, where a grand jury subpoena, if complied with, **might have linked the defendant to a coerced witness statement**.

Motion at 13 (emphasis added). However, there is no requirement that Mr. Clark demonstrate that responding to the subpoena will conclusively prove him guilty of a criminal act. *Ohio v. Reiner*, 532 U.S. 17, 18 (2001) (Fifth Amendment "protects the innocent as well as the guilty"); *see also In re Artis*, 883 A.2d at 99 (noting Board's conclusion, which was affirmed in relevant part, that respondents "should not be obligated to respond to vague and overly broad questions that require him or her to make Bar Counsel's case"). It is sufficient if the subpoena response could furnish a "link in the chain" of possible prosecution, even if meritless. Mr. Clark has met that standard.

## II.   THE SUBPOENA SHOULD BE QUASHED BECAUSE THE CHALLENGED CONDUCT IS NOT SUBJECT TO BAR DISCIPLINE.

In the grand jury context, this Court has held that a subpoena must have a "legitimate purpose." *Brooks v. United States*, 448 A.2d 253, 261 (D.C. 1982). *See also In re Horowitz*, 482 F.2d 72, 80 (2d. Cir. 1973) (documents that have "no conceivable relevance" to legitimate object of grand jury investigation need not be produced); *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1084 (E.D.N.Y. 1978) ("The documents requested must be shown to have some general relevance to the subject matter of a legitimate grand jury investigation.").

The same rationale of these grand jury cases applies in the bar discipline context.  As

explained below, ODC's subpoena should be quashed because it has no reasonable relation to a legitimate area of bar discipline enforcement.

### A. 28 USC § 530B(a) Does Not Confer on the D.C. Bar Unfettered Authority to Investigate or Regulate the Discretionary Actions of DOJ Lawyers.

Under the U.S. Constitution, the President of the United States, not the Attorney General is its chief law enforcement officer. *See* U.S. Const., art. II, § 3 (the President "shall take Care that the Laws be faithfully executed …."). It is therefore far from obvious that state and local bar authorities can always wield disciplinary jurisdiction over lawyers authorized by virtue of their appointments pursuant to Article II, to exercise executive authority and advise the President, as that could hamper the President's ability to obtain legal advice.

In keeping with the President's authority and right to receive full and frank advice and information, senior federal officers have a reciprocal duty to provide it upon request. *See* U.S. Const., art. II, § 2, cl. 1 (Opinion Clause); 28 U.S.C. § 506 (Assistant Attorney Generals, like Mr. Clark, to be appointed by President with advice and consent of Senate); OLC Opinion, *State Bar Disciplinary Rules as Applied to Federal Government Attorneys* (Aug. 2, 1985) ("Rules promulgated by state courts or bar associations that are inconsistent with the requirements or exigencies of federal service may violate the Supremacy Clause."), *available at* https://tinyurl.com/56bft7sb, *last visited* (Feb. 15, 2022) (hereafter "OLC Opinion").

Where, as here, the face of Disciplinary Counsel's interrogatories show that they seek access to information that ODC has no authority to seek or review, the Court need not reach the constitutional arguments in order to quash the subpoena. We nevertheless reserve them.[4]

---

[4] *See Bond v. United States*, 572 U.S. 844, 855 (2014) ("well-established principle governing the prudent exercise of this Court's jurisdiction [is] that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.").

That is because even beyond the Fifth Amendment as applied here, there is a more than sufficient basis on which to deny enforcement of the subpoena. For the statute Congress passed purporting to subject Justice Department lawyers to state and local bar rules, 28 U.S.C. § 530B(a), does not authorize *any inquiry* into the internal policy deliberations of the Department of Justice or of any other agency of the federal government that employs lawyers. Nor does the statute, by its terms, authorize the D.C. Bar to oversee the enforcement of internal DOJ and Executive Branch policies governing the conduct of their respective internal operations. *See* 28 U.S.C. § 530B(a) ("An attorney for the Government shall be subject to *State* laws and rules, and local Federal court rules, governing attorneys in each *State* where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that *State*.") (emphasis added). Relatedly, in 1999 DOJ improperly purported *to extend* the reach of Section 530B(a), by regulation issued under Section 530(B)(b), to the District of Columbia. *See* 28 C.F.R. § 77.2(h).[5]

_____

[5] The relevant preamble (hastily assembled via an *interim* final rule) does not even address how the Justice Department could try, via its subordinated rulemaking powers, to extend the statute to the District of Columbia when the statute does not mention the District. The preamble cites to 28 U.S.C. §§ 509, 510, 515(a), 516, 517, 519, 533, and 547. *See* 64 Fed. Reg. 19,273, 19274 (Apr. 20, 1999). But none of these statutes even reference the District of Columbia specifically. And these provisions say nothing about the power of D.C. Bar authorities to sit in oversight of the discretionary actions of Justice Department lawyers. The 1999 rule is thus invalid under step one of the *Chevron* test, which voids regulatory interpretations of any statute that conflict with the statute's plain text, interpreted using "traditional tools of statutory construction." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 n.9 (1984). And the canon of interpreting statutes as part of the *corpus juris* (the whole body of the law) is no doubt such a traditional tool of statutory interpretation. *See, e.g., Branch v. Smith*, 538 U.S. 254, 282 (2003) ("courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes."). The plain text is violated here because D.C. is not a "State," *see infra*.

The preamble also mentions (1) Pub. L. 96-132, 93 Stat. 1040, 1044 (1979); and (2) Pub. L. 105-277 (1998), section 102 of the Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act. But both of these provisions are appropriations law limited to one-off fiscal years; they lack general effect. Moreover, the former provision predates Section 530B(a) and the latter provision is silent on 530B(a) and thus cannot be read to amend it. Finally,

All lawyers who practice before this Court and in the federal courts of the District of Columbia are, by statute, subject to the authority of each court to control the conduct of the attorneys who appear there. Significantly, there is an established, but limited, procedure for doing so. *See, e.g.*, D.C. Code § 11-944(a) (contempt for "disobedience of an order or for contempt committed in the presence of the court"); 28 U.S.C. § 1927 (counsel's liability for excessive costs); *see also generally* D.C. Code § 23-1330 (preserving contempt power). The D.C. Bar, by contrast, has no general investigatory authority over the ethics of Department of Justice lawyers. The Constitution reserves that power to the Executive Branch.

Section 530B(a) reflects this division of authority. The District of Columbia is not a "State." All law in the District is federal law and Congress alone defines the nature, scope, and means of enforcement of all federal powers exercised here, including that of the D.C. Bar. U.S. Const., art. I, § 8, cl. 17 ("Seat of the Government"). Specific language is ordinarily required to treat the District as if it were a State. *See, e.g., District of Columbia v. Carter*, 409 U.S. 418, 432-33 (1973) (D.C. not a State for purposes of 42 U.S.C. § 1983). The United States Code is replete with examples where Congress has **specifically defined** D.C. to fall within the meaning of the term "State," but only for purposes of that particular statute.[6] Indeed, by contrast, Chapter 31 of part II of title 28 of the United States Code lacks any specialized definition section. Congress thus knows

---

the fact that the statutes DOJ cited to extend Section 530B(a) to District of Columbia Bar rules point to two specific appropriations statutes mentioning the District shows that not even the DOJ of 1999 thought that it would be plausible to argue that D.C. Bar's rules were "local Federal court rules" within the meaning of Section 530B(a) or the preamble would have made that argument.

[6] *See, e.g.*, 28 U.S.C. § 1257(b) ("For the purposes of this section, the term 'highest court of a State' includes the District of Columbia Court of Appeals."); 42 U.S.C. § 8285a(2) ("the term 'State' means any of the several States, the District of Columbia …"); *see also, e.g.*, 26 U.S.C. § 170(c)(1) (applying term "charitable contribution" for tax purposes to include gifts for the use of "States, a possession of the United States … or the United States or the District of Columbia");. And Supreme Court Rule 47 states that "[t]he term "state court," when used in these Rules, includes the District of Columbia Court of Appeals."

how to confer power on District authorities when it wants to. And it expressly withheld it here.

And for good reason. The conduct that Disciplinary Counsel seeks to investigate is not behavior committed in the presence of a court and found by it to have violated its rules of conduct. Mr. Clark was a senior Executive Branch official who served as the head of two of Main Justice's seven litigating divisions, each with nationwide jurisdiction. His client was the Executive Branch, and the power to define the nature and scope of his duties to that client and its member departments and agencies, and to investigate alleged violations of DOJ and other federal rules of lawyer conduct, rest in the first instance with the Executive Branch alone. The same holds true for allegations that an attorney employed by the federal government has violated federal law.

To be clear, this does not mean that Mr. Clark is free of all ethical obligations here. DOJ houses both an Office of Professional Responsibility and an Office of Inspector General ("OIG"). The OIG is investigating the matters Senator Durbin's complaint involves. *See* DOJ Office of Inspector General, *available at* https://tinyurl.com/2p9ad5tm (Jan 25, 2021) (last visited Feb. 15, 2022). That ODC seeks, through this subpoena, to jump ahead of that investigation and, in effect, preempt it (rather than *vice versa*) is clear from ODC's refusal to defer under Board Rule 4.1 until federal authorities with authority over DOJ officials complete their respective investigations.

ODC's rush to assert disciplinary jurisdiction in this case is a clear indication that its investigation is intended to thrust itself into the administration of the federal Executive Branch and to use its subpoena power for partisan purposes. Senator Durbin has no direct knowledge of the facts, and only the Department of Justice knows what information it holds concerning how and to what extent it investigated the 2020 election. It is undisputed that DOJ has denied the Senate Judiciary Committee access to DOJ's investigative records. *See* Exhibit 5 (Letter, ADAG Weinsheimer to Mr. Clark (July 26, 2021)). It is also likely that it will object if Mr. Clark seeks

these records to defend against the allegations of misconduct made by Senator Durbin.

Senator Durbin thus turned to ODC, in the hope that it would lend its subpoena power to the effort to advance the political narrative of his investigation. This Court should reject that end run around the limits on the Senate Judiciary Committee's party balance and quash the subpoena.

### B. Under 28 U.S.C. § 530B and 28 C.F.R. § 77.2, the Bar Has No Jurisdiction Over Respondent Because It Does Not "Ordinarily Apply" Discipline to the Particular Conduct in Question.

Even if the foregoing jurisdictional hurdle were overcome, 28 U.S.C. § 530B extends state bar disciplinary jurisdiction over federal government lawyers only "to the same extent and in the same manner as other attorneys in that State." Similarly, the regulation subjecting lawyers working for the federal government to local bar disciplinary processes, 28 C.F.R. § 77.2(j)(2) (emphasis added), contains an important exception: it does not apply if the local jurisdiction "would not ***ordinarily*** apply its rules of ethical conduct to particular conduct or activity by the attorney."

Neither the D.C. Bar, nor any bar in America, "ordinarily" disciplines lawyers over never-sent confidential internal discussions of letters drafted for assessment and consideration. It is unheard of. And neither Mr. Fox nor undersigned counsel have been able to identify any such case anywhere. This alone should be fatal to the Bar's jurisdiction in this case.

### C. There Is No Precedent for Disciplining a Lawyer Over a Never-Sent Discussion Draft of a Document Calling for State Investigation.

D.C. Rules of Professional Conduct (hereafter "RPC") 8.4(c) prohibits "conduct involving dishonesty, fraud, deceit, or misrepresentation." The people to whom the draft letter was allegedly delivered, and whose signature would be required thereon, were the Acting Attorney General Jeff Rosen and the Principal Associate Deputy Attorney General Richard Donoghue. They are not minors or seniors with diminished capacity who might easily be misled. They are instead seasoned lawyers who make no claim of having been deceived and no doubt understood the draft letter to

be a proposal contingent on facts they were in superior possession of. Instead, they are reported to have vehemently rejected the draft letter, and to have persuaded the President to reject it as well.

Of the species of misconduct prohibited by RPC 8.4(c), dishonesty sometimes appears the most broadly construed. *In the Matter of Shorter*, 570 A.2d 760, 767–68 (D.C. 1990), the lawyer answered questions posed by the IRS honestly, but only answered the questions asked and did not volunteer information not asked for that he knew they would want to know. Though not "legally … characterized as an act of fraud, deceit or misrepresentation," the conduct showed "a lack of honesty, probity or integrity in principle; a lack of fairness and straightforwardness." And in *In re Romansky*, 825 A.2d 311, 315–17 (D.C. 2003)*,* the lawyer instructed an associate to record time to a client other than the one for whom the work was actually done. Though it was an internal accounting matter that did not operate to the financial detriment of either client, it was held to be dishonest because it simply was not true. But the conduct challenged in this case falls far short of even the highwater marks of RPC 8.4(c)'s reach as reflected in *Shorter* and *Romansky*.

In this case, a privileged and confidential draft of a letter appears to have been discussed amongst strong-willed senior officials who had diverging access to facts, diverging views of the facts, diverging views of the facts' significance, and diverging views of what ought to be done. There appears to have been a frank exchange of views on each of these areas of disagreement—as the rules of privilege and confidentiality are meant to protect and indeed foster. The matter was presented to the ultimate decision maker, President Trump, and after hearing differing views, he decided against the letter, and that was the end of the matter. RPC 8.4(c) thus has no application, and, to the knowledge of the undersigned, has never applied to anything like this situation.

### D.  Rule 8.4(d) Does Not Apply.

In *In re Yelverton*, 105 A.3d 413, 426 (D.C. 2014), this Court held that "[c]onduct violates RPC 8.4(d) when it is (1) improper, (2) bears directly on the judicial process with respect to an

identifiable case or tribunal, **and** (3) harms the judicial process in a more than a de minimis way." (emphasis added). And *In re Pearson* is to the same effect, stating the third element in slightly different verbiage to require the conduct to "taint[s] the judicial process in more than a *de minimis* way'" 228 A.3d 417,426 (D.C. 2020), *citing In re Hopkins,* 677 A.2d 55, 59–61 (D.C. 1996)*.*

Not one of these three essential elements is remotely established by what is alleged here. *First*, confidential and privileged internal deliberations and debates over legal theories and arguments are not improper. *Second*, there is no identifiable case or tribunal because the entire discussion appears to have been internal and confidential, and no document was ever filed in any court or tribunal anywhere. *Third*, no judicial process was harmed because nothing was ever filed in any court or tribunal anywhere. RPC 8.4(d) simply does not apply to the conduct in question.

The application of Bar discipline, at the behest of a bitter political adversary of the former President, to a confidential discussion draft of a letter never sent, which simply called for more state legislative investigation, is unprecedented, unfounded, and improper. One must ask why this docket was opened and whether political influence was at play.

## III.   THE POLITICAL PANDORA'S BOX HERE SHOULD NOT BE OPENED.

It should be self-evident that a bar disciplinary process may not be appropriately used as an instrumentality of partisan political warfare. The country is sharply divided over the propriety of the 2020 election. Investigations into and litigation over the conduct of the election rage across many States around the country, with notable decisions finding irregularities and illegality. Absent affirmative misconduct in a particular case or before a particular tribunal, the Bar should not join the victors on the battlefield in the grisly business of dispatching the wounded, especially in a case such as this. Among the many evils that would ensue, the Bar's neutrality would suffer gravely. Presidential Administrations change hands and weeding out frivolous complaints protects the Bar.

### A. Legislators in Georgia and Other States Called for Legislative Reexaminations of Their Electoral Votes.

In Georgia, a Committee of the State Senate held hearings on election irregularities and found that "[t]he oral testimonies of witnesses on December 3, 2020, and subsequently, the written testimonies submitted by many others, provide ample evidence that the 2020 Georgia General Election was so compromised by systemic irregularities and voter fraud that it should not be certified."[7] The Report recommended, *inter alia*, calling a special session of the legislature to consider whether to rescind the certification of Georgia' electors and determine the "proper Electors" for the State of Georgia. *Id*. at p. 15. Other States acted similarly.

### B. Under Disciplinary Counsel's Unrestrained Theory, a Host of Members of Congress Who Are Lawyers Committed Ethical Violations by Questioning the Election.

Numerous members of Congress over the years, especially on one side of the political divide, have questioned presidential election results. Indeed, the Chair of the House January 6 Select Committee, Bennie Thompson, objected to the certification of the 2000 and 2004 presidential elections.[8] And his fellow January 6 Committee member, Jaime Raskin—both a lawyer and constitutional law professor—objected to certification during the 2016 presidential election. *See Rep. Raskin Challenges Awarding of Electors*, YOUTUBE, *available at* https://tinyurl.com/wa6735ty (Jan 8, 2017) (last visited Feb. 15, 2022). Indeed, Senator Durbin, the sole complainant here, defended Senator Boxer's right to object to certification of the 2004

---

[7] Chairman's Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee, *available at* https://tinyurl.com/3dzkfmxf (Dec. 17, 2020) (last visited Feb. 15, 2022).

[8] The Congressional Black Caucus objected to the certification of Florida's electoral votes. *See* 147 Cong. Rec. H34 (Jan. 6, 2001). Representative Thompson is a member of that caucus *See also* 151 Cong. Rec. H127 (Jan. 6, 2005).

election, assuming her good faith, even though he opted not to object himself.[9] No leaked, purported facts show Mr. Clark to have done anything other than raise questions inside DOJ and at the White House about the 2020 presidential election's regularity in particular States and counties. *See, e.g.* Trump 2d Impeachment Trial, Day 2 Tr. (Feb. 10, 2021), *available at* https://tinyurl.com/ryd3ktzk (last visited Feb. 15, 2022) (impeachment manager stating that President Trump "turned to Jeffrey Clark, another Department lawyer, who had allegedly expressed support for using the Department of Justice to investigate the election results," going on to say Acting Attorney General Rosen "refuse[d] to reopen investigations"). That is a debatable, internal DOJ decision as to how much or little to investigate, not a disciplinary matter.

Indeed, just as Senator Durbin did with Senator Boxer, Mr. Clark's good faith should be presumed, even if his DOJ superiors and colleagues disagreed with him on the merits, just as every other Senator in 2004 disagreed with Senator Boxer, who stood as the sole Senator challenging the Bush v. Kerry election. Objections and a desire to further investigate the results of presidential elections are simply not the stuff of proper bar complaints, especially not by politically motivated complainants like Senator Durbin, who have no personal knowledge of the underlying conduct.

In this past presidential election, 147 members of the House and Senate (***including 8 Senators*** (*i.e.,* 7 more than in the 2004 election where Senator Durbin defended Senator Boxer's right to object) plus 139 House members) objected to certifying Arizona's or Pennsylvania's

---

[9] *See* Amanda Prestigiacomo, *Democrats Objected to Electoral Vote Certification in 2000, 2004, 2016*, DAILY WIRE (Jan. 4, 2021) ("'Some may criticize our colleague from California for bringing us here for this brief debate,' Durbin said on the Senate floor following Boxer's objection, while noting that he would vote to certify the Ohio electoral votes for Bush. 'I thank her for doing that because it gives members an opportunity once again on a bipartisan basis to look at a challenge that we face not just in the last election in one State but in many States.'"), *available at* https://tinyurl.com/yjyw7x83 (last visited Feb. 15, 2022).

electoral votes.[10] And 35 of those members are lawyers (two of whom are former Supreme Court clerks, Senators Cruz and Hawley, who once were Texas Solicitor General and Missouri Attorney General, respectively). Are those nearly three dozen lawyer-legislators to be subjected to bar discipline in their respective States or in D.C., where they typically made media statements, on the theory that they were lying when they appeared on TV to demand more investigation or make factual claims? That is unthinkable and would plunge this or any state or local bar deep into purely political waters, taking it far afield from its traditional compass. No bar, including this one, is equipped to retry the presidential election and the privileged options debated inside the Executive Branch or with the President himself in the wake of a truly unique election where standard voting rules were jettisoned or changed in the wake of the COVID pandemic. *See* Letter, H. MacDougald to Chair Thompson (Nov. 5, 2021) (attached as Exhibit 6) (by attaching this letter, the executive privilege, deliberative process privilege, and attorney-client privilege arguments are incorporated).

### C. Leaked Media Reports of Mr. Clark's Conduct Reflect That He Held Views Generally Consistent with Those of Three Dissenting Supreme Court Justices and 18 State Attorneys General.

The Court should terminate this matter and preclude the Bar from re-litigating the 2020 election by holding there is no colorable discipline case where three Supreme Court Justices and 18 State Attorneys General raised similar questions about the 2020 election's regularity.

Most important in that regard is *Republican Party of Pennsylvania v. Degraffenreid*, 141 S. Ct. 732 (2021). There, Justice Thomas dissented from the denial of certiorari because non-legislative state officials had changed the statutory rules for federal elections and the appointment of presidential electors in violation of the Electors and Elections Clauses of the Constitution. *See* U.S. Const., art. 1, § 4, cl. 1; art. II, § 1, cl. 2. Justice Alito wrote a separate dissent joined by

---

[10] See Li Zhou, *147 Republican Lawmakers Still Objected to the Election Results After the Capitol Attack*, Vox (Jan. 7, 2021), *available as* https://tinyurl.com/4v6w229c (last visited Feb. 15, 2022).

Justice Gorsuch to flag the same infirmity. Both dissents noted the public importance of resolving the questions presented. If three Justices of the Supreme Court took this view and Mr. Clark is alleged to have advanced similar views, bar discipline should be out of the question.

Also relevant, Justices Thomas and Alito dissented in *Texas v. Pennsylvania*, 141 S. Ct. 1230 (2020), a 2020 election challenge filed by Texas (and later joined by 17 other States) that complained about similar unconstitutional election-rule changes made in the so-called battleground States. They would have allowed Texas's bill of complaint to be filed, potentially putting the merits of the election challenge before the Supreme Court. And those two Justices, whatever the Court's view of their jurisprudence, surely did not act unethically in the *Texas* case. Mr. Clark was also entitled to presume, if that is what he did, that 18 State Attorneys General were presenting good-faith objections and for that reason to press for the President and DOJ to agree with the position of the State Attorneys General as well. In other words, this Court should not start down Disciplinary Counsel's slippery slope lest it find itself necessarily implying that three Supreme Court Justices and 18 State Attorneys General were all acting beyond the pale of legitimate legal debate, the judicial canons, and the Model Code of Professional Responsibility.

This Court should deny enforcement of the subpoena and act now to register its disapproval of this witch hunt. Doing so would send a strong signal that this Court will not allow the bar discipline process to be perverted for political ends, or to become a tool of persecution, inflicting significant legal costs on a former official like Mr. Clark and chilling the public service of those on either side of the aisle who must come to D.C. to serve varying presidential administrations.

### D. The View That Unlawful Election Procedures Were Used in at Least Some States Has Been Vindicated in Several Respects.

The dogmatic premise of Senator Durbin's complaint that there were no significant irregularities in the 2020 election, accepted by ODC as sufficient to docket this case, has been

refuted by subsequent judicial decisions. In *McLinko v. Commonwealth of Pennsylvania*, *et al.*, No. 244 M.D. 2021, 2022 WL 257659 (Pa. Commw. Ct. Jan. 28, 2022), the Commonwealth Court of Pennsylvania held that Pennsylvania's Act 77, allowance of universal mail-in balloting in Pennsylvania in the 2020 election, was unconstitutional under the Pennsylvania Constitution's strict limitations on absentee balloting. Approximately 2.6 million absentee ballots were thus cast by means held unconstitutional by a Pennsylvania court, well in excess of the margin of Biden victory.[11] *McLinko* thus bears out the views of Justices Thomas, Alito, and Gorsuch.

The Wisconsin Supreme Court, in a 4-3 ruling in *Trump v. Biden*, 394 Wis. 2d 629, 951 N.W.2d 568 *cert. denied*, 141 S. Ct. 1387 (2021), declined to consider whether drop boxes were illegal under Wisconsin law. The three dissenters, all writing separately but all joining the other dissents, concluded in exceptionally strong terms that the drop box procedures in the 2020 election, used by "hundreds of thousands of voters," were clearly illegal, also exceeding the margin of victory. And on January 14, 2022, a Wisconsin trial court ruled that drop boxes ***were illegal*** under Wisconsin law, in apparent accord with the views of the dissenters in *Trump v. Biden*.[12] Of course, the Judges taking ***either position*** were not acting unethically. Being on the losing side in a controversy, internal or external (but especially internal), does not equate to unethical conduct.

Additionally, a post-election audit of the 2020 election in Maricopa County, Arizona conducted by the Arizona Senate found, *inter alia*. substantial defects in signature verification, including the presence of 17,322 duplicates (alone exceeding the margin of victory), and

---

[11] *See* https://tinyurl.com/2p8u55cn (last visited Feb. 15, 2022)

[12] Moreover, on Friday, February 11, 2022, the Wisconsin Supreme Court reportedly voted 4-3 the other way to allow a trial court order banning drop boxes to remain in effect for an April 2022 local election. *See* Zach Montellaro, *Wisconsin State Supreme Court Lets Ban on Drop Boxes Go Into Effect for Spring Election*, POLITICO (Feb. 11, 2022), *available at* https://tinyurl.com/y32cy8xc (last visited Feb. 15, 2022).

intentional and substantial spoliation of digital records on the voting equipment shortly before it was delivered for forensic examination.[13]

While not yet the subject of a judicial decision on the merits, evidence has emerged of a vast scheme to violate Georgia's law against ballot harvesting, O.C.G.A. § 21-2-385(a), which was in effect for the 2020 election. That statute permits only near relatives or cohabitants to mail or deliver absentee ballots. Strong evidence has emerged since 2020 proving this limitation was violated on a large-scale basis in Georgia and other battleground States with similar laws.

An election integrity group, "True the Vote," has collected cell phone location data in key election hotspots around the country including Georgia, Arizona, Wisconsin, Pennsylvania, and Michigan. *See* Matthew Boyle, *Exclusive—True The Vote Conducting Massive Clandestine Voter Fraud Investigation*, BREITBART, *available at* https://tinyurl.com/3bwujuxv (Aug. 4, 2021) (last visited Feb. 15, 2022). "[True the Vote's] document says that [it] has spent the last several months since late last year collecting more than 27 terabytes of geospatial and temporal data—a total of 10 trillion cell phone pings—between Oct. 1 and Nov. 6 in targeted areas in Georgia, Arizona, Michigan, Wisconsin, Pennsylvania, and Texas. The data includes geofenced points of interest like ballot dropbox locations, as well as UPS stores and select government, commercial, and non-governmental organization (NGO) facilities." *Id.*

As a result of a complaint by True the Vote, the Georgia Secretary of State's Office is now investigating the ballot harvesting scheme in Georgia. *See* John Solomon, *Georgia Opens Investigation Into Possible Illegal Ballot Harvesting in 2020 Election* (Jan. 4, 2022), *available at*

---

[13] *See* Michael Patrick Leahy, *Arizona Senate Report on the Maricopa County Election Audit Highlights 49,000 Questionable Votes, Asks AG to Investigate*, BREITBART (Sept. 25, 2021), *available at* https://tinyurl.com/4kh45tup (last visited Feb. 15, 2022). This is the same investigation that the Biden DOJ's Civil Rights Division threatened to derail *in a letter **actually sent** to the State of Arizona*. *See* https://tinyurl.com/2437rmb6 (last visited Feb. 15, 2022).

https://tinyurl.com/yprpt44m (last visited Feb. 15, 2022). True the Vote has identified a confidential whistleblower who claims he was paid $10 per ballot he put into dropboxes.

The expert affidavit of Gregg Phillips, filed April 8, 2021 in *Schmitz v. Barron*, *et al.*, Fulton Super. Ct, Civ. A. No. 2020CV342969, describes his geotracking analysis of 1.2 trillion mobile device signals showing 240 unique devices making multiple runs to and from drop boxes. Mr. Phillips concludes that "[a]round 7% of the total votes in Fulton County, GA (or 36,000 of the total votes in Fulton) were influenced by this ballot harvesting scheme after taking into consideration the amount of targeted devices and the frequency of drop box visits." Exhibit 7 at ¶ 46. If correct, this was a systematic violation of O.C.G.A. § 21-2-385(a) and exceeded the margin of victory. *See id*. This pattern of conduct is further documented in dropbox surveillance video collected by local governments and obtained by True the Vote. Filmmaker and conservative commentator Dinesh D'Souza has announced a movie called "2,000 Mules". While information on the film is currently quite limited, the trailer claims to show "never before seen security footage" of ballot harvesters. The video shows these alleged harvesters (termed "mules" by the filmmakers) stuffing what appear to be multiple ballots or even sets of ballots into ballot boxes, with some then "snapping photos [on their phones] to get paid." https://tinyurl.com/2p86dznj (last visited Feb. 15, 2022).

There was ample evidence before January 4, 2021 that could cause a reasonable attorney to be skeptical of some parts of the 2020 election. Further evidence has emerged since then, and in some States it has even ripened into trial and appellate court decisions revealing that the elections in Wisconsin and Pennsylvania were conducted unlawfully, at least in part.

## CONCLUSION

ODC has no proper role investigating Respondent here and, at the very least, it should await the conclusion of federal and state investigations before trying to do so. For the foregoing reasons, ODC's motion should be denied and the cross-motion to quash should be granted.

Respectfully submitted this 15th day of February 2022.

/s/ *Charles Burnham*                                Robert A. Destro*
                                                     Ohio Bar #0024315
Charles Burnham                                      4532 Langston Blvd, #520
DC Bar No. 1003464                                   Arlington, VA 22207
1424 K Street, NW                                    202-319-5303
Suite 500                                            robert.destro@protonmail.com
Washington DC 20005
(202) 386-6920                                       *Motion for pro hac vice admission in*
charles@burnhamgorokhov.com                          *progress*


Harry W. MacDougald*
Georgia Bar No. 453076
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

* *Motion for pro hac vice admission in*
*progress*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this *Response to Motion to Compel and Cross-Motion to Quash* by U.S. First Class Mail with sufficient postage thereon to insure delivery, and by email addressed to:

Hamilton P. Fox
D.C. Bar
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org

This 15th day of February 2022.

/s/ Charles Burnham

Charles Burnham
DC Bar No. 1003464

1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

# Exh. 1

# Affidavit of Robert N. Driscoll

**DCCA NO. _____**

## DISTRICT OF COLUMBIA

## COURT OF APPEALS

| | |
|---|---|
| **In the Matter of** | |
| **CONFIDENTIAL (J.B.C.), ESQ.** | **Disciplinary Docket** |
| **Respondent,** | **No. 2021-D193** |
| **A member of the Bar of the District of Columbia Court of Appeals** | |

## AFFIDAVIT OF ROBERT N. DRISCOLL

Personally appeared before the undersigned officer, duly authorized to administer oaths, Robert N. Driscoll, who, after being duly sworn, testified and stated as follows:

1.

My name is Robert N. Driscoll. I am over the age of 18, suffer no mental imparities, and have personal knowledge of the following:

2.

I am an attorney licensed to practice law in the District of Columbia since 2004 and the Commonwealth of Massachusetts since 1994. I am admitted to the bars of the U.S. Supreme Court, the U.S. Courts of Appeals for the First, Seventh, Tenth and D.C. Circuits, various U.S. District Courts, and the District of Columbia

Court of Appeals. I am a member of the law firm McGlinchey Stafford PLLC, a national firm with approximately 155 lawyers in offices in 15 cities, including Washington, D.C.

3.

I represented Respondent in connection with investigations by various congressional committees, including the January 6 Select Committee, and briefly in connection with the above-referenced disciplinary matter. All of my representation of Respondent ended on October 25, 2021.

4.

My first contact with any member of the DC Bar Office of Disciplinary Counsel regarding any potential disciplinary issue related to Respondent came on October 14, 2021, at 4:57 PM. At that time, I received a voice mail from Hamilton P. Fox, Disciplinary Counsel for the District of Columbia Bar, which stated as follows: "Mr. Driscoll, my name is Hamilton Fox. I am the disciplinary counsel for the District of Columbia. I am calling you on the assumption that you represent [Respondent]. Uh, would you give me a call please? Uh, my direct dial telephone number is [redacted]."

5.

The next day, on October 15, 2021, at 11:29 AM, I called Mr. Fox. We spoke for a few minutes. He indicated that the D.C. Bar had received a complaint from a

2

third party about Respondent, and that Mr. Fox would forward it to me and that

Respondent could respond if we wished to. No mention was made of a subpoena,

or of accepting service of a subpoena. No agreement was made between me and

Mr. Fox regarding service of any process or subpoena nor any deadline for

responding.

6.

On November 22, 2021, at 10:37 AM, I received a voicemail from Mr. Fox

which said as follows: "Uh Bob this is Phil Fox over at the Office of Disciplinary

Counsel. Uh, it has not escaped my attention that I've had no response whatsoever

to either what we call the B-letter that I sent to you, uh to [Respondent] care of

you, or the subpoena. Uh, nor have we had a response to what we call the D-letter,

which is our procedure for the follow-up, which was due on Friday. So, we are

preparing motions to compel. Um, if you don't want to go that route uh give me a

call, [redacted]. I suspect we'll have the motions uh certainly by tomorrow – filed

by tomorrow morning, if not today. Thanks."

7.

I called Mr. Fox at 10:40 AM on November 22, 2021, immediately after

listening to his voice mail. I told him that I had not received anything from the

Office of Disciplinary Counsel at all, that I no longer represented Respondent, and

that Respondent was now represented by Harry MacDougald.

3

8.

I then made immediate and urgent efforts to check all incoming mail and email to confirm I had not received anything from Mr. Fox – I had not. Indeed, I have never received any written correspondence of any kind, (mail, email or electronic message) from the Office of Disciplinary Counsel.

9.

Once I had doubled-checked for mail and searched my email system (including filters) to confirm I had not received any correspondence of any kind regarding Respondent, I called Mr. Fox again at 11:19 AM on November 22, 2021, and confirmed to him that I had searched all electronic records and regular mail, and that I had received no letter or any other document from the Office of Disciplinary Counsel regarding Respondent by email, regular mail, or other means.

10.

The totality of my communications with Mr. Fox before withdrawing from representing Respondent were the voice mail described in paragraph 4 above and the telephone conversation described in paragraph 5 above.

11.

At no point did I ever agree on behalf of Respondent to accept service of a subpoena from Mr. Fox, nor agree on any due dates for responses to any such subpoena. Indeed, I was unaware of the existence of any subpoena related to

4

Respondent until contacted by his successor counsel regarding this matter, and I certainly did not agree to accept service of a subpoena or agree to a deadline for any response.

Robert N. Driscoll

Sworn to and subscribed before me, this 11 day of February, 2022.

_____ (seal)
Notary Public
My commission expires: 11-30-2023

5

# Exh. 2

# Affidavit of Jeffrey B. Clark

DCCA NO. 22-BS-0059

### DISTRICT OF COLUMBIA

### COURT OF APPEALS

In the Matter of

**CONFIDENTIAL (J.B.C.), ESQ.**

    **Respondent,**

A member of the Bar of the District of
Columbia Court of Appeals

Disciplinary Docket

No. 2021-D193

## AFFIDAVIT OF JEFFREY B. CLARK

Personally appeared before the undersigned officer, duly authorized to administer oaths, Jeffrey B. Clark, who, after being duly sworn, testified and stated as follows:

1.

My name is Jeffrey B. Clark. I am over the age of 18, suffer no mental imparities, and have personal knowledge of the following:

2.

I am an attorney licensed to practice law in the District of Columbia since 1997. I am admitted to the bars of the U.S. Supreme Court, the U.S. Courts of Appeal for all Circuits, the U.S. District Court for Southern District of Alabama, the District of Columbia, District of Nebraska, and Eastern District of Texas, as well as the Court of Federal Claims. I am the Respondent in the above-referenced matter.

3.

I was previously represented in this matter by Robert N. Driscoll. However, that engagement terminated on October 25, 2021. Between October 25, 2021 and mid-January 2022, I was seeking counsel to represent me in this matter.

4.

I began corresponding directly with Hamilton Fox, the D.C. Bar Disciplinary Counsel in late November 2021 into early December 2022, especially after discovering that emails notifying me of documents from the DC Bar being available on a file sharing service had been caught in my spam filter. As a result, I had not received or been able to retrieve the material Mr. Fox's assistant had been trying to send me. I emailed Mr. Fox about this problem on December 2, 2021, and he replied the same day. *See* Exh. 1.

5.

On December 3, 2021, I tested positive for Covid, and let Mr. Fox know about that via email shortly thereafter. He very graciously gave me time to recover, which took the month of December and required a hospital trip to receive monoclonal antibodies.

6.

When I had recovered from Covid, I had an email dialog with Mr. Fox and one of his assistants. Delivery problems persisted such that I did not receive a complete copy of Mr. Fox's letter transmitting the subpoena and its attachments until January 6, 2022. Mr. Fox and I agreed that I would respond to the subpoena on January 31, 2022.

7.

At no point did I agree to accept legal service of the subpoena by email.

Jeffrey B. Clark

Sworn to and subscribed before me, this 15 day of February, 2022.

Notary Public
My commission expires: 04/30/2023

KIRAN R. SHRESTHA
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
REGISTRATION #7130618
MY COMMISSION EXPIRES APRIL 30, 2023

# Clark Affidavit

# Exh. 1

Subject: RE: [EXT]DC Bar Correspondence

From: Jeffrey Clark - To: Phil Fox - Cc: Harry MacDougald - Date: December 2, 2021 at 11:29 AM

Thank you Mr. Fox and I wish you are at your professional best in the argument.

Jeff Clark

**From:** Phil Fox <████████dcodc.org>
**Sent:** Thursday, December 2, 2021 11:24 AM
**To:** Jeffrey Clark <███████████████████>
**Cc:** Harry MacDougald <hmacdougald@ccedlaw.com>
**Subject:** RE: [EXT]DC Bar Correspondence

I am preparing for an argument at 2:00 today.  I have asked my secretary to resend the material, but I am confident that you have most of it since it is the public record stuff from the Judiciary Committee.  I'll get back to you after the argument.  For future reference, my direct dial number is  202/454-1728.

**From:** Jeffrey Clark <█████████████████>
**Sent:** Thursday, December 2, 2021 11:12 AM
**To:** Phil Fox <███████dcodc.org>
**Cc:** Harry MacDougald <hmacdougald@ccedlaw.com>
**Subject:** [EXT]DC Bar Correspondence
**Importance:** High

Mr. Fox,

Apologies.  After I discovered a few days ago that materials from some kind of dropbox-like site were sitting in my spam folder and emailing with Ms. Thornton, I was hoping to give you a call yesterday, but the January 6 Committee is setting unrealistic deadlines.  Despite the fact that my lawyer has a hearing in Atlanta on Friday, they are insisting on a second deposition on Saturday, and I need to use the time between now and then to get ready.

Juggling a lot on my end and so don't have the to-spam emails in front of me but my understanding is that they indicated the dropbox-type access expired on 11/29.  So it would be best if you re-sent them to me, if that is not too much to ask.  Given the spam problem, I authorize you to send anything you need to, to me to this email address as direct attachments, but maybe with a CONFIDENTIAL header on it, assuming the file size is not too large that they will go through as ordinary attachments.  If there is a file-size issue, please re-ripen the dropbox-type access but send me an email here, since your test on that (when the sending email address was yours and not the more general email address) worked, to let me know to check my spam box.  When I can free up some time, I'll figure out how to put that general address you use to keep confidentiality into my trusted senders or whatever the Outlook term is for that in the program.

Also, I will need to get separate counsel for this and to contact my malpractice carrier to inquire re how that works as no claim has ever been filed against me in my 25-year career, so I am not familiar with any of these processes. My lawyer for the Committee interaction may be able to help me for a bit but I think I should retain someone who regularly practices ethics law to assist me and that will take some time to find and get retention/insurance arrangements worked out with, particularly given that the political issues involved impact the pool of lawyers that I can attract.  I've copied my lawyer for Committee matters, Mr. Harry MacDougald here, for the limited temporary purpose of helping me as I search for ethics counsel.

I hope you will bear with me. The legal issues here are far from ordinary.

Thank you very much Mr. Fox.

Respectfully submitted,

Jeff Clark

# Exh. 3

# Affidavit of Harry W. MacDougald

DCCA NO. 22-BS-0059

DISTRICT OF COLUMBIA

COURT OF APPEALS

| | |
|---|---|
| In the Matter of | |
| CONFIDENTIAL (J.B.C.), ESQ. | Disciplinary Docket |
| Respondent, | No. 2021-D193 |
| A member of the Bar of the District of Columbia Court of Appeals | |

## AFFIDAVIT OF HARRY W. MACDOUGALD

Personally appeared before the undersigned officer, duly authorized to administer oaths, Harry W. MacDougald, who, after being duly sworn, testified and stated as follows:

1.

My name is Harry W. MacDougald.  I am over the age of 18, suffer no mental imparities, and have personal knowledge of the following:

2.

I am an attorney licensed to practice law in the State of Georgia since 1985. I am admitted to the bars of the U.S. Supreme Court, the U.S. Courts of Appeal for the 11th and D.C. Circuits, and the Northern and Southern U.S. District Courts in Georgia, and all Georgia trial and appellate courts. I am a partner in Caldwell, Carlson, Elliott & DeLoach, LLP in Atlanta, Georgia.

3.

I represent the Respondent in connection with the January 6 Select Committee and in connection with the above-referenced disciplinary matter. I did not begin representing

Respondent in the above-referenced matter until January, 2022, though I was copied on some emails between the Respondent and Disciplinary Counsel beginning December 2, 2021 while Respondent was looking for other counsel to represent him in this matter.

4.

At no point did I ever agree on behalf of the Respondent to accept service of a subpoena from Mr. Fox, nor agree on any due dates for responses to any such subpoena.

5.

On the afternoon of January 28, 2022, I had a telephone conversation with Phil Fox, D.C. Bar Disciplinary Counsel. I told Mr. Fox we would not be producing any documents in response to the subpoena and whether, in light of that, asked if the Respondent needed to appear at the Bar offices in response to the subpoena. Mr. Fox replied that Respondent was not required to appear but that we "would be in court very quickly" on a motion to compel. He indicated that asserting the act of production privilege would be frivolous and that doing so would not stand Respondent in good stead when it came time for imposing disciplinary sanctions. He added "I promise you I will ratchet up" the sanction to be imposed if we asserted the Fifth.

6.

At 8:30 PM Friday evening, January 28, 2022, Mr. Fox sent me an email, attached hereto as Exh. 1, in which he reiterated this threat as follows:

> Just to be clear, because our proceedings are not criminal, if we bring charges, we will contend that any assertion of the privilege against self-incrimination can be construed against Mr. Clark on the merits and may be considered in aggravation of any sanction. We have not yet decided whether to bring charges, but a frivolous assertion of the privilege may lead to an additional charge or may the basis of an independent specification of charges in the event that we conclude not to bring charges on the underlying matters.

7.

On the morning of Saturday February 5, 2022, I received an email from Mr. Fox's

assistant, Angela Thornton, which attached a letter from Mr. Fox dated February 3, 3022

purporting to transmit his motion to compel and the exhibits thereto. However, Ms. Thornton's

email included only the letter, and not the motion or any of its exhibits. See Exh. 2.

8.

I promptly replied to Ms. Thornton and said that I didn't see the motion. Ms. Thornton

replied "Motion? No motion with this email, just the letter addressed to you from Mr. Fox." I

replied as follows:

> The first sentence of the letter says: "Accompanying this letter is a Motion to
> Compel that we filed with the Court of Appeals today."

> That is the motion after which I am inquiring.

> Thanks for any help you can provide on that.

*Id*.

9.

After about an hour with no response from Ms. Thornton, I emailed her again at 11:05

AM, saying the following:

> Ms. Thornton:

> The letter you sent me this morning from Mr. Fox is dated 2/3, and states it is being
> transmitted to me on 2/3 via email.  However, I do not have an email from 2/3 from
> Mr. Fox, or a letter from Mr. Fox sent to me that day, much less a copy of the motion
> it says is enclosed.

> And today, your email transmitting the letter did not include the motion either.

> I did receive some document production via a file share type of thing, but there was
> no motion in there, either.

It's possible I have missed something as I was in court all day Thursday and had outpatient surgery yesterday, but searching my emails I don't have anything from Mr. Fox on 2/3. Perhaps someone else in your office sent it?

In any event, we would appreciate your sending us the motion at your earliest convenience and letting me know one way or the other whether I have overlooked its prior transmittal from your office.

Thanks in advance.

*Id*.

10.

Ms. Thornton never responded to three emails to her asking for a copy of the motion. Therefore, at 5:20 PM I emailed this conversation to Mr. Fox, informed him I still did not have the motion, and asking if he could please email it to me. Mr. Fox responded promptly, and we exchanged numerous emails on the topic. *See* Exh. 3. The upshot of those emails was that I received an email with the motion attached, but never received an email with the exhibits. Mr. Fox was clearly exerting himself to deliver the documents to me, and indicated he had emailed the exhibits, but I never got them. He identified the exhibits, which were documents that I already had. He added that he would send the motion and exhibits via FedEx on Monday. *Id*. at p. 2.

11.

By mid-afternoon Friday February 11, 2022, I still had not received the motion by regular mail, nor had I received any of the exhibits via email, nor had I received a FedEx delivery as Mr. Fox had indicated the previous Saturday would be forthcoming. I therefore emailed Mr. Fox to let him know I still had not received the exhibits and would he mind putting the material on a file sharing site for download. Mr. Fox replied that he would look into it but "I am pretty sure that we sent the complete package by FedEx last Monday and that we have the receipt." *See* Exh. 4.

12.

In response to that information, two assistants and I looked in every office in our firm and queried everyone in the office but we could not find any such FedEx package. We also had someone check on the 16th floor of the two other buildings in our office park to seek if perhaps the package had been misdelivered, but we could not find it that way either. *Id*.

13.

I kept Mr. Fox apprised of these efforts as they unfolded and asked him if he could identify who had signed for the package, or perhaps give me the tracking number and we would check that ourselves. *Id*. At first he indicated that would have to wait until Monday, but among several emails passing between us that afternoon, Mr. Fox forwarded me the FedEx airbill for the delivery. *See* Exh. 5. This email was actually received before my last reply to Mr. Fox asking for the tracking number in Exh. 4, but I did not see it until after I sent that reply because I was looking around the office trying to find the package. Once I saw the airbill, which has the tracking number on it, I entered that tracking number into the FedEx package tracking webpage. The result was that there was no such tracking number in the FedEx system. I then had two assistants search for the tracking number on the FedEx website with the same result. I relayed that information to Mr. Fox. *See* Exh. 6. For reasons unknown to me, it appears this package tracking number never made it into the FedEx system.

14.

On February 14, 2022, Mr. Fox's assistant. Ms. Thornton sent me a DropBox link from which I was able to download Mr. Fox's letter of February 3, 2022 (which I had first received February 5, 2022), and the motion with all of its exhibits. This was the first time I had received the complete package of the motion and all of its exhibits.

15.

On February 15, 2022, I received delivery of a FedEx package bearing the same airbill number as the one Mr. Fox emailed me on February 11 that is attached to Exh. 6. The airbill was filled out on February 7, but the FedEx tracking history shows that it first entered the FedEx system on February 14, 2022. Exh. 7.

Harry W. MacDougald

Sworn to and subscribed before me, this 15 day of February, 2022.

_____
Notary Public
My commission expires: _____

YVETTE ANN RIX
Notary Public, State of Georgia
Fulton County
My Comm. Expires June 4, 2024

# MacDougald Affidavit

# Exh. 1

**Subject: Re: [EXT]Jeffrey Clark**

From: Phil Fox - To: hmacdougald@ccedlaw.com - Cc:  - Date: January 28, 2022 at 8:30 PM

Just to be clear, because our proceedings are not criminal, if we bring charges, we will contend that any assertion of the privilege against self-incrimination can be construed against Mr. Clark on the merits and may be considered in aggravation of any sanction. We have not yet decided whether to bring charges, but a frivolous assertion of the privilege may lead to an additional charge or may the basis of an independent specification of charges in the event that we conclude not to bring charges on the underlying matters.

Get Outlook for iOS

**From:** Harry MacDougald <hmacdougald@ccedlaw.com>
**Sent:** Friday, January 28, 2022 3:34 PM
**To:** Phil Fox
**Subject:** RE: [EXT]Jeffrey Clark

Any time is fine including tonight or this weekend. My direct rings over to my cell, which is 404-388-8622.

Best,

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956
Direct: 404-843-4109

From: Phil Fox <████dcodc.org>
Date: January 28, 2022 at 3:32:32 PM
To: Harry MacDougald <hmacdougald@ccedlaw.com>
Subject:  RE: [EXT]Jeffrey Clark


I am in the middle of a meeting.  How long will you be available?


_____

**From:** Harry MacDougald <hmacdougald@ccedlaw.com>
**Sent:** Friday, January 28, 2022 3:32 PM
**To:** Phil Fox <████dcodc.org>
**Subject:** [EXT]Jeffrey Clark


Mr. Fox:


Can you give me a call at the number below regarding Mr. Clarke's response to your subpoena? Maybe 5 min.

Thanks.

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956

Direct: 404-843-4109

# MacDougald Affidavit

# Exh. 2

**Subject: RE: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary**

From: hmacdougald@ccedlaw.com - To: Angela Thornton - Cc:  - Date: February 5, 2022 at 11:05 AM

Ms. Thornton:

The letter you sent me this morning from Mr. Fox is dated 2/3, and states it is being transmitted to me on 2/3 via email.  However, I do not have an email from 2/3 from Mr. Fox, or a letter from Mr. Fox sent to me that day, much less a copy of the motion it says is enclosed.

And today, your email transmitting the letter did not include the motion either.

I did receive some document production via a file share type of thing, but there was no motion in there, either.

It's possible I have missed something as I was in court all day Thursday and had outpatient surgery yesterday, but searching my emails I don't have anything from Mr. Fox on 2/3. Perhaps someone else in your office sent it?

In any event, we would appreciate your sending us the motion at your earliest convenience and letting me know one way or the other whether I have overlooked its prior transmittal from your office.

Thanks in advance.

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956
Direct:  404-843-4109

From: hmacdougald@ccedlaw.com <hmacdougald@ccedlaw.com>
Date: February 5, 2022 at 10:09:17 AM
To: Angela Thornton ████████████
Subject:  RE: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary Docket No. 2021-D193

> The first sentence of the letter says "Accompanying this letter is a Motion to Compel that we filed
> with the Court of Appeals today."
>
> That is the motion after which I am inquiring.
>
> Thanks for any help you can provide on that.
>
> -----
> Harry W. MacDougald
> Caldwell, Carlson, Elliott & DeLoach, LLP
> Two Ravinia Drive
> Suite 1600
> Atlanta, Georgia 30346
> 404-843-1956
> Direct:  404-843-4109
>
> From: Angela Thornton <█████████████████
> Date: February 5, 2022 at 10:07:03 AM
> To: Harry MacDougald <hmacdougald@ccedlaw.com>
> Subject:  RE: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary Docket No. 2021-D193

Motion? No motion with this email, just the letter addressed to you from

From: Harry MacDougald <hmacdougald@ccedlaw.com>
Sent: Saturday, February 5, 2022 10:06 AM
To: Angela Thornton <█████████████>
Subject: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary Docket No. 2021-D193

I don't see the motion

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956

Direct: 404-843-4109

From: Angela Thornton <█████████████>
Date: February 5, 2022 at 9:11:50 AM
To: Harry MacDougald <hmacdougald@ccedlaw.com>
Subject:  in re Clark/Disciplinary Counsel - Disciplinary Docket No. 2021-D193

Dear Mr. MacDougald, please see letter attached from Mr. Fox, Disciplinary Counsel.  If there are questions or concerns, please don't hesitate to let us know.  Thank you.

Regards,

Angela

# MacDougald Affidavit

# Exh. 3

**Subject: Re: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary Docket**

From: Phil Fox - To: hmacdougald@ccedlaw.com - Cc:  - Date: February 5, 2022 at 6:12 PM

The attachments, actually exhibits, are all things you have: the November letter and subpoena to Clark; the email chain, which is also attached to one of your January 31 letters, about the difficulty we had then in getting all the materials to Clark; and your letter asserting the Fifth. I will make sure a hard copy of everything is sent to you on Monday. I don't understand why we are having such difficulty transmitting this stuff. We have been doing virtually everything electronically for two years, and I am unaware of any other case where we have had these problems.

Get Outlook for iOS

---

**From:** Harry MacDougald <hmacdougald@ccedlaw.com>
**Sent:** Saturday, February 5, 2022 6:01:41 PM
**To:** Phil Fox <████dcodc.org>
**Subject:** RE: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary Docket No. 2021-D193

I got the email transmitting the motion and saying the attachments would come separately, but haven't seen those yet.

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956
Direct: 404-843-4109

From: Phil Fox <████dcodc.org>
Date: February 5, 2022 at 5:59:48 PM
To: Harry MacDougald <hmacdougald@ccedlaw.com>
Cc: Azadeh Matinpour <████████████ Angela Thornton <████████████ Jason Horrell <████
Subject:  RE: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary Docket No. 2021-D193

I just resent everything—first the motion and then the motion with the attachments.  Nothing bounced back.  Did you get them?

---

From: Harry MacDougald <hmacdougald@ccedlaw.com>
Sent: Saturday, February 5, 2022 5:39 PM
To: Phil Fox <████dcodc.org>
Subject: RE: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary Docket No. 2021-D193

Thanks - much appreciated.

Have a good rest of your weekend.

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600

Atlanta, Georgia 30346
404-843-1956

Direct: 404-843-4109


From: Phil Fox <██████dcodc.org>
Date: February 5, 2022 at 5:36:28 PM
To: Harry MacDougald <hmacdougald@ccedlaw.com>
Subject:  RE: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary Docket No. 2021-D193


I don't know without looking, but I am not going to take advantage of your failure to receive it.

---

From: Harry MacDougald <hmacdougald@ccedlaw.com>
Sent: Saturday, February 5, 2022 5:35 PM
To: Phil Fox <██████dcodc.org>
Subject: Re: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary Docket No. 2021-D193


I received the letter this morning but no motion.


I know it's not your job to help me read the rules, but I'll go ahead and ask - is it correct that we have a 7 calendar day response time for responding to motions?


-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956

Direct: 404-843-4109


From: Phil Fox <██████dcodc.org>
Date: February 5, 2022 at 5:32:30 PM
To: Harry MacDougald <hmacdougald@ccedlaw.com>
Subject:  Re: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary Docket No. 2021-D193



It is just the letter and the motion. If I can't get it to you, we will FedEx it Monday. I will try again.


Get Outlook for iOS

---

From: Harry MacDougald <hmacdougald@ccedlaw.com>

Sent: Saturday, February 5, 2022 5:28:53 PM
To: Phil Fox <████dcodc.org>
Subject: Re: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary
Docket No. 2021-D193

No sir, I have not seen it yet. I got this one, but I haven't seen the other
one with the motion. I checked my online spam folder as well. Not sure
what's going on with that. Is it a particularly large attachment?

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956

Direct: 404-843-4109

From: Phil Fox <████dcodc.org>
Date: February 5, 2022 at 5:25:43 PM
To: Harry MacDougald <hmacdougald@ccedlaw.com>
Subject: Re: [EXT]Re: in re Clark/Disciplinary Counsel - Disciplinary
Docket No. 2021-D193

Did you get the email with the motion that I just sent you?

Get Outlook for iOS

From: Harry MacDougald <hmacdougald@ccedlaw.com>
Sent: Saturday, February 5, 2022 5:20:02 PM
To: Phil Fox <████dcodc.org>
Subject: Fwd: RE: [EXT]Re: in re Clark/Disciplinary Counsel
- Disciplinary Docket No. 2021-D193

Mr. Fox:

Please see the correspondence below. No response to three
emails to Ms. Thornton asking for the motion. I still do not
have the motion referred to in your letter of 2/3, which I
just received this morning.

If you could please send me the motion at your earliest
convenience, I'd appreciate it.

Thanks in advance.

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956

Direct: 404-843-4109


From: hmacdougald@ccedlaw.com
<hmacdougald@ccedlaw.com>
Date: February 5, 2022 at 11:05:33 AM
To: Angela Thornton <███████████████
Subject:  RE: [EXT]Re: in re Clark/Disciplinary Counsel -
Disciplinary Docket No. 2021-D193




Ms. Thornton:


The letter you sent me this morning from Mr.
Fox is dated 2/3, and states it is being
transmitted to me on 2/3 via email.  However, I
do not have an email from 2/3 from Mr. Fox, or
a letter from Mr. Fox sent to me that day, much
less a copy of the motion it says is enclosed.


And today, your email transmitting the letter did
not include the motion either.


I did receive some document production via a
file share type of thing, but there was no motion
in there, either.


It's possible I have missed something as I was
in court all day Thursday and had outpatient
surgery yesterday, but searching my emails I
don't have anything from Mr. Fox on 2/3.
Perhaps someone else in your office sent it?


In any event, we would appreciate your sending
us the motion at your earliest convenience and
letting me know one way or the other whether I
have overlooked its prior transmittal from your
office.


Thanks in advance.

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956

Direct: 404-843-4109


From: hmacdougald@ccedlaw.com
<hmacdougald@ccedlaw.com>
Date: February 5, 2022 at 10:09:17 AM
To: Angela Thornton <█████████████████>
Subject:  RE: [EXT]Re: in re Clark/Disciplinary
Counsel - Disciplinary Docket No. 2021-D193



The first sentence of the letter says
"Accompanying this letter is a
Motion to Compel that we filed with
the Court of Appeals today."


That is the motion after which I am
inquiring.


Thanks for any help you can provide
on that.


-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach,
LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956

Direct: 404-843-4109


From: Angela Thornton
<█████████████████>
Date: February 5, 2022 at 10:07:03
AM
To: Harry MacDougald
<hmacdougald@ccedlaw.com>
Subject:  RE: [EXT]Re: in re
Clark/Disciplinary Counsel -
Disciplinary Docket No. 2021-D193

Motion? No motion
with this email, just
the letter addressed
to you from Mr.
Fox.

---

From: Harry
MacDougald
<hmacdougald@ccedla
w.com>
Sent: Saturday,
February 5, 2022 10:06
AM
To: Angela Thornton
<███████████████>
Subject: [EXT]Re: in re
Clark/Disciplinary
Counsel - Disciplinary
Docket No. 2021-D193

I don't see the motion

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott
& DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956

Direct: 404-843-4109

From: Angela Thornton
<███████████████
>
Date: February 5, 2022
at 9:11:50 AM
To: Harry MacDougald
<hmacdougald@ccedla
w.com>
Subject:  in re
Clark/Disciplinary
Counsel - Disciplinary
Docket No. 2021-D193

Dear Mr.
MacDoug
ald,

please see

letter attached from Mr. Fox, Disciplinary Counsel. If there are questions or concerns, please don't hesitate to let us know. Thank you.

Regards,

Angela

# MacDougald Affidavit

# Exh. 4

**Subject: RE: [EXT]Service Copy of Motion**

From: Phil Fox - To: hmacdougald@ccedlaw.com - Cc: Angela Thornton - Date: February 11, 2022 at 5:14 PM

That will have to wait until next week.

**From:** Harry MacDougald <hmacdougald@ccedlaw.com>
**Sent:** Friday, February 11, 2022 5:13 PM
**To:** Phil Fox <███████dcodc.org>
**Subject:** RE: [EXT]Service Copy of Motion

I received an email from Ms. Thornton sent at 11 AM transmitting your letter of today's date and attachments consisting of correspondence between you and Mr. Weinsheimer dated Feb 7 and 8 respectively, for which you have my thanks.

If you or Ms. Thornton can give us the tracking number for the FedEx package we can look up who signed for it.

Both me and my assistant checked all the offices in our suite and asked everyone who is still here and no sign of it. Our office manager has not seen it either. We also checked the 16th floor of the other two buildings in our office park and nothing there either - one of them is vacant anyway. There's no one at home in the other suites on our floor so we don't know if it might have gone to one of them by mistake. So the next available step is to let us know who signed for it or give us the tracking number so we can check ourselves.

Thank you in advance.

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956
Direct:  404-843-4109

From:  Phil Fox <███████dcodc.org>
Date: February 11, 2022 at 4:59:31 PM
To:  Harry MacDougald <hmacdougald@ccedlaw.com>
Subject:   RE:  [EXT]Service Copy of Motion

I don't.  Angela might next week.  Did you receive the email and attachments that we sent you this morning?

From: Harry MacDougald <hmacdougald@ccedlaw.com>
Sent: Friday, February 11, 2022 4:58 PM
To: Phil Fox <███████dcodc.org>

Subject: RE: [EXT]Service Copy of Motion

Do you have a name of who signed for it?

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956
Direct: 404-843-4109

From: Phil Fox <████dcodc.org>
Date: February 11, 2022 at 4:41:38 PM
To:
Subject:  RE: [EXT]Service Copy of Motion


We'll look into that, but I am pretty sure that we sent the complete
package by FedEx last Monday and that we have the receipt.

From: Harry MacDougald <hmacdougald@ccedlaw.com>
Sent: Friday, February 11, 2022 4:31 PM
To: Phil Fox <████dcodc.org>
Subject: [EXT]Service Copy of Motion

Mr. Fox:

While our building's mail has not yet arrived today (even though it's a 17 story
building), I still have not received the mail service copy of your motion to compel,
and never did receive the emails transmitting the exhibits.

Would you mind perhaps using a file sharing service like DropBox or the like to get
the full set to me electronically?

Thanks in advance.

-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956
Direct: 404-843-4109

# MacDougald Affidavit

# Exh. 5

**Subject:** FW: In re Clark - DDNo. 2021-D193

From: Phil Fox - To: hmacdougald@ccedlaw.com - Cc:  - Date: February 11, 2022 at 4:48 PM, Attachments: 2021-D193 fedex shipping bill 02072022.pdf

Here is the information about the FedEx shipment.  We will still look at an alternative way to transmit documents.

**From:** Angela Thornton <███████████████████
**Sent:** Monday, February 7, 2022 1:47 PM
**To:** Phil Fox <██████dcodc.org>; Jason Horrell <███████████████ Azadeh Matinpour
<███████████
**Subject:** In re Clark - DDNo. 2021-D193

David sent the letter and the motions with all attachments to Resp's Counsel, via fedex.  Fedex shipping label is attached.  It will be delivered tomorrow morning

Angela

MUR 1

**FedEx Express** Package US Airbill

Sender's FedEx Tracking Number **8148 8013 6300**

Sender's FedEx Account Number

**1 From** *Please print and press hard.*

Date **2/7/2022**

Sender's Name **Hamilton P. Fox, III** Phone **202.638-1501**

Company **OFFICE OF DISCIPLINARY COUNSEL**

Address **515 5TH ST NW**

Dept/Floor/Suite/Room

City **WASHINGTON** State **DC** ZIP **20001-2710**

**2 Your Internal Billing Reference** **2021-D1003**
*First 24 characters will appear on invoice.*

**3 To**

Recipient's Name **Harry W. MacDougald** Phone **404,843-4109**

Company **Caldwell, Carlson, Elliott, DeLoach, LLP**

Address **Two Ravinia Drive Suite 1600**

Dept/Floor/Suite/Room

Address
*Use this line for the HOLD location address or for continuation of your physical address.*

City **Atlanta** State **GA** ZIP **30346**

01338216 17

**6** Ship it. Track it. Pay for it. All online.
Go to fedex.com

fedex.com 1.800.GoFedEx 1.800.463.3339

From FedEx ID no. **0215**

Sender's Copy

**4 Express Package Service** *To most locations.*

**Packages up to 150 lbs.**

☐ FedEx First Overnight
☑ FedEx Priority Overnight
☐ FedEx Standard Overnight
☐ FedEx 2Day A.M.
☐ FedEx 2Day
☐ FedEx Express Saver

**5 Packaging**

☑ FedEx Envelope* ☐ FedEx Pak* ☐ FedEx Box ☐ FedEx Tube ☐ Other

**6 Special Handling and Delivery Signature Options**

☐ Saturday Delivery

Does this shipment contain dangerous goods?

☑ No ☐ Yes

**7 Payment** *Bill to:*

☑ Sender ☐ Recipient ☐ Third Party ☐ Credit Card ☐ Cash/Check

Total Packages   Total Weight **0.1502**   Total Declared Value $

Rev. Date 5/15 • Part #158164 • ©1994–2015 FedEx • PRINTED IN U.S.A. SRM

00066
00200

611

# MacDougald Affidavit

# Exh. 6

**Subject: Re: FW: In re Clark - DDNo. 2021-D193**

From: hmacdougald@ccedlaw.com - To: Phil Fox - Cc:  - Date: February 11, 2022 at 5:30 PM

Phil:

Thank you for sending the FedEx Airbill.

Three people in my office including me and two assistants have put the tracking number from the airbill into the FedEx tracking number search box and we get this response:  "No record of this tracking number can be found at this time, please check the number and try again later. For further assistance, please contact Customer Service."

The airbill is filled out to not require a signature for delivery.


-----
Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
404-843-1956
Direct:  404-843-4109

From:  Phil Fox <██████dcodc.org>
Date: February 11, 2022 at 4:48:29 PM
To: Harry MacDougald <hmacdougald@ccedlaw.com>
Subject:  FW: In re Clark - DDNo. 2021-D193

Here is the information about the FedEx shipment.  We will still look at an alternative way to transmit documents.


From: Angela Thornton <████████████████>
Sent: Monday, February 7, 2022 1:47 PM
To: Phil Fox <██████dcodc.org>; Jason Horrell <████████████ Azadeh Matinpour <████████████>
Subject: In re Clark - DDNo. 2021-D193


David sent the letter and the motions with all attachments to Resp's Counsel, via fedex.  Fedex shipping label is attached.  It will be delivered tomorrow morning


Angela

# MacDougald Affidavit

# Exh. 7



FedEx Tracking                                    Track Another Shipment        Help

814880136300

**ADD NICKNAME**

( ON TIME )

# Delivered
# Tuesday, February 15, 2022 at 8:06 am



**DELIVERED**

Signature release on file

**GET STATUS UPDATES**

**OBTAIN PROOF OF DELIVERY**

| **FROM** | **TO** |
|---|---|
| WASHINGTON, DC US | GA US |

**MANAGE DELIVERY** ⌄

Travel History | Shipment Facts

# Travel History

**TIME ZONE**
Local Scan Time ⌄

**Tuesday, February 15, 2022**

| 8:06 AM | GA | Delivered |
| | | Package delivered to recipient address - release authorized |
| 6:15 AM | MARIETTA, GA | On FedEx vehicle for delivery |
| 5:39 AM | ATLANTA, GA | At destination sort facility |
| 3:48 AM | MEMPHIS, TN | Departed FedEx hub |
| 12:17 AM | MEMPHIS, TN | Shipment arriving On-Time |
| 12:05 AM | MEMPHIS, TN | Arrived at FedEx hub |

Monday, February 14, 2022

| | | |
|---|---|---|
| 9:21 PM | WASHINGTON, DC | Left FedEx origin facility |
| 4:13 PM | WASHINGTON, DC | Picked up |

Expand History ⌄

## Shipment Facts

**TRACKING NUMBER**
814880136300

**SERVICE**
FedEx First Overnight

**WEIGHT**
0.5 lbs / 0.23 kgs

**TOTAL PIECES**
1

**TOTAL SHIPMENT WEIGHT**
0.5 lbs / 0.23 kgs

**TERMS**
Shipper

**SHIPPER REFERENCE**
2621 D193

**PACKAGING**
FedEx Envelope

**SPECIAL HANDLING SECTION**
Deliver Weekday

**SHIP DATE**
2/14/22 ⑦

**SHIPMENT-FACTS.COD-DETAIL**
$0.00

**STANDARD TRANSIT**
2/15/22 before 8:30 am ⑦

**ACTUAL DELIVERY**
2/15/22 at 8:06 am