# EXHIBIT B-12

**UNDER SEAL**

**DCCA No. 21-BS-0059**

**DISTRICT OF COLUMBIA
COURT OF APPEAL**

| | | |
|---|---|---|
| **In the Matter of** : | | |
| : | | |
| **Confidential (J.B.C.),** : | **Disciplinary Docket No. 2021-D193** | |
| : | | |
| **Respondent** : | | |
| : | | |
| **A Member of the Bar of the District** : | | |
| **of Columbia Court of Appeals** : | | |
| : | | |

**DISCIPLINARY COUNSEL'S REPLY TO RESONDENT'S
OPPOSITION TO MOTION TO COMPEL AND
CROSS-MOTION TO QUASH SUBPOENA**

**ADDITIONAL FACTUAL STATEMENTS**

Contrary to Respondent's Response to the Motion to Compel ("Response"), Disciplinary Counsel did not inform Senator Durbin that it "would automatically furnish the Senator with any response made by Mr. Clark." *See* Exhibit A attached. Disciplinary Counsel has not disclosed to the Judiciary Committee staff or Senator Durbin any of the responses from Mr. Clark nor the fact that this motion has been filed.

For almost two years, Disciplinary Counsel has been conducting business electronically. Uniquely in this case, and in contrast to hundreds of other cases since

March 2020, this respondent failed to receive the electronic communications, even though none of the electronic communications "bounced back." A "B letter" and a subpoena was forwarded to Mr. Clark's first lawyer in October 2021. After being alerted in November that this communication had not been received and that counsel had withdrawn, Disciplinary Counsel forwarded the letter and subpoena to Mr. Clark directly. Again, there was no bounce back. Mr. Clark became ill. He also claimed that he had not received complete copies of the materials, some of which had been captured by his spam filter. Although his affidavit is vague as to when he first received the subpoena, he clearly had it as of January 6, 2022. *See* Affidavit of Jeffrey B. Clark, ¶ 6, Exh. 2 to Response.

Before January 31, 2022, neither Mr. Clark nor his counsel complained about lack of personal service. Nor did either ever express any concerns about producing the subpoenaed documents prior to January 31. This entire course of conduct seems to be designed to achieve nothing other than to delay Disciplinary Counsel's investigation. A January 31 letter (Exhibit C to the Motion) asked explicitly for Disciplinary Counsel to defer its investigation until after the January 6th House Committee's investigation, despite the fact that Mr. Clark had publicly refused to cooperate with that investigation.

## ARGUMENT

I.   **Respondent Has Failed to Meet His Burden of Showing That the Act of Producing the Subpoenaed Documents Would Incriminate Him.**

Respondent fails utterly to show—even address—how production of the subpoenaed documents would incriminate him. There is no conceivable crime that could be proven by showing Respondent was in possession of evidence of election fraud, which he wished to be investigated, or what authority he was aware of to justify the Department of Justice intervening in an election certification process. Senator Durbin's letter raised the prospect of a violation of Rule 1.2(e), prohibiting counseling a client to engage in criminal or fraudulent conduct. Senator Durbin did not explain what criminal or fraudulent conduct he was referring to, and Disciplinary Counsel has been unable to identify it, which is why it is not investigating a Rule 1.2(e) violation. If Respondent had evidence of election fraud, how would the act of producing that evidence implicate him when he sought to have his "client" investigate election fraud? It would seem to prove the exact opposite.

Nor does bloviating by various commentators in the media mean that there is an actual criminal violation that might be proven by showing Respondent possessed evidence of election fraud (committed by others; there is no suggestion Respondent engaged in election fraud) or legal authority for the Department to intervene in the certification of a state's election. Production of such evidence could in no way incriminate Respondent for the crimes his Response lists: witness tampering (18 U.S.C. 1512); conspiracy to defraud the United States (18 U.S.C. 371); voter intimidation or voter fraud (53 U.S.C. 20511); political campaigning by a

3

government employee (5 U.S.C. 7323); conducting an enterprise through a pattern of racketeering (18 U.S.C. 1962(c); or conspiring to overthrow by force the government of the United States (18 U.S.C. 2384). Respondent does not even attempt to articulate how showing he possessed the documents called for would be a link in the chain of evidence that might be used to prove any of these violations. He does not attempt to do so because it is impossible.

It is Respondent's burden to show producing these documents would be incriminating. Citing *Carter v. United States,* 684 A.2d 331 (D.C. 1996) (*en banc*), Respondent says that he does not have to prove that a prosecution is likely. But he does have to show that the testimony would be "incriminating." *Carter* at 338, 344. He has made no showing. The absence of a criminal investigation of Respondent may not be dispositive, but it is certainly significant evidence that Respondent is in no danger of criminal prosecution. If Respondent's showing is sufficient, then any lawyer whose records are subpoenaed by Disciplinary Counsel can simply assert that the act of producing them would incriminate him, cite vaguely to a criminal statute, and refuse to comply. The ability to subpoena documents, the only formal discovery tool that Disciplinary Counsel has, would be a nullity.

The act of production doctrine is limited to evidence that is incriminating—financial records showing tax fraud (*United States v. Hubble*, 1867 F.3d 352 (D.C. Cir. 199), *aff'd* 530 U.S. 27 (2000)) or a coerced witness statement (*In re Public*

*Defender Service*, 831 A.2d 890 (D.C. 2003))—whereby the very act of production establishes an element of the crime. Hubble had to produce records that showed his tax evasion was intentional. PDS may have had a client's document that, if produced, would show a client had coerced a false witness statement. When Respondent complies with this subpoena, he will show only that he had evidence of election fraud or authority for the Department's intervention in a state certification. That does not incriminate him.

Respondent is quite open about wanting to delay and has requested Disciplinary Counsel to defer. Delay is unfortunately endemic to our disciplinary system, but it is not conducive to the development of facts about conduct that occurred more than one year ago. Disciplinary Counsel urges the Court to decide this case without the requested oral argument and to do so quickly.

**II.     Respondent's Motion to Quash is Untimely and Without Merit.**

Rule XI, § 18, permits Disciplinary Counsel to subpoena documents during an investigation and provides that it may apply to the Court to enforce a subpoena. Board Rule 3.14 also permits Disciplinary Counsel to apply directly to the Court; no proceedings before the Board are required. The rules also permit a respondent to file a motion to quash before the Board, which is to be determined by a hearing committee. Rule XI, § 18(c); Board Rule 3.15. Respondent did not avail himself of this procedure. Instead, he strung out the process, never raising any informal, much

5

less formal objection to the subpoena until the date on which production was due, and then raised his Fifth Amendment claim. Only after Disciplinary Counsel filed its motion to compel, did he file a purported motion to quash, not with the Board, as required by Rule XI, § 18(c) and Board Rule 3.15, but with this Court. In addition to filing his motion in the wrong forum, it is untimely. A motion to quash should be filed before the production date, or at least no later than that date, and not after the subpoena is overdue and a motion to compel has been filed.

It appears there are five grounds for the motion to quash. First, Respondent complains he was not personally served. He has waived this claim by not raising it promptly. Moreover, he does not dispute that he has the actual subpoena, provides no explanation for why he has been prejudiced, and offers no explanation as to how he would be in a more advantageous position if he were provided another copy by personal service. *See Hall v. Sullivan*, 229 F.R.D. 501, 504 (D. Md. 2005) (no reason to require personal service of subpoena *duces tecum* "so long as the service is in a manner that reasonably ensures actual receipt of the subpoena by the witness.") During the pandemic, most persons have accepted process electronically because they actively eschew personal contact from strangers. If Respondent wanted such service even though he was in physical receipt of the subpoena, he should have said so before the return date. *Cf. In re Clark,* 684 A.2d 1276 (D.C. 1996) (respondent

6

waives challenge to personal jurisdiction by acknowledging receipt of petition, requesting more time to respond, and submitting responsive pleading).

Second, Respondent argues that Disciplinary Counsel has served interrogatories, not a document subpoena. This is precisely the sort of argument that Respondent should have raised initially with Disciplinary Counsel, and if that had failed, in a timely motion to quash. The documents sought are identified by the date they came to Respondent's attention in order to discern what documents he had in late December 2020 and early January 2021. This not only limits the scope of the subpoena but also deals with the problem illustrated by the Response itself: the tendency to rely on information that was not in existence at the relevant time. *See* Response at 25-28 (relying on sources of information published after January 2021). The requested documents are nothing like the detailed requests in *In re Artis,* 883 A.2d 85 (D.C. 2005), which were propounded and labeled as interrogatories. *Id.* at 98, n.12. But even in *Artis*, this Court noted a respondent's Rule XI, § 8(a) obligation to respond to [Disciplinary] Counsels' written inquires . . . ." *Id*. at 93.

Third, he claims that, despite the existence of a statute, 28 U.S.C. § 530B, and Department of Justice regulations, 28 C.F.R. § 77.1 *et seq.*, both of which subject Department of Justice lawyers to state codes of professional conduct, the District of Columbia has no general disciplinary authority over Department lawyers because it is not a "state." The Department's regulations specifically include the District of

7

Columbia. 28 C.F.R. §§ 77.2; 77.3. Furthermore, it is well settled that local jurisdictions, including the District of Columbia, can regulate federal attorneys admitted to their bars. *Leis v. Flynt*, 439 U.S. 438, 442 (1972). This is so even if 28 U.S.C. § 530B did not explicitly say as much. *See Mendoza Toro v. Gil*, 110 F.Supp.2d 28, 37 n. 3 (D.P.R. 2000) (DOJ attorneys subject to local ethics rules even though territory is not a state). This Court has disciplined members of its bar who work for the Department of Justice for years. *See In re Kent,* 467 A.2d 982 (D.C. 1983)*; In re Howes*, 52 A.3d 1 (D.C. 2012)*; In re Kline*, 113 A.3d 202 (D.C. 2015)*.* There has never been a suggestion that the D.C. Rules of Professional Conduct do not apply to Department of Justice lawyers because D.C. is not a state. In *Kline* and in a case now pending before this Court, *In re Dobbie and Taylor,* DCCA No. 21-BG-024, the Department has filed amici briefs in support of its respondent lawyers. Neither brief argued that Department lawyers were not subject to this Court's disciplinary authority.

Fourth, in a vague separation-of-powers, federal-supremacy argument, Respondent claims the disciplinary rules do not apply to lawyers who are senior federal officials. This argument was raised only for the purpose of preserving it, but this Court has disciplined members of its Bar serving as senior federal officials in the past. *See In re Allen*, 27 A.3d 1178 (D.C. 2011) (Assistant to the President for

8

Domestic Policy); *In re Abrams*, 689 A.2d 6 (D.C. 1997) (*en banc*), *cert. denied*, 521 U.S. 1121 (1997) (Assistant Secretary of State).

Fifth, Respondent argues that his conduct could not possibly constitute a violation of Rules 8.4(a), (c), or (d). This cart is way before the horse. The "B letter" and the accompanying subpoena were the initial step in this investigation. The investigation is not complete, no charges are brought, and none may ever be. Disciplinary Counsel knows a little more about the facts than in the normal case because of the Senate Report, however. It appears that Respondent may have repeatedly attempted to persuade and then coerce the Acting Attorney General to send a letter that had false claims about the status of the Department's investigations. The letter also sought to convene the Georgia legislature to take certain action for which there may have been no basis. In at least one other case, this Court has applied Rule 8.4(d) to a legislative proceeding. *In re White*, 11 A.3d 1226 (D.C. 2011). Moreover, had Respondent achieved his result, undoubtedly much unnecessary litigation would have followed. But the question of whether there are actual violations here cannot be resolved until the investigation is completed.

**III. Respondent's "Pandora's Box" Arguments Are Not a Basis to Deny Enforcement of the Subpoena.**

It is difficult to discern the relevancy of these arguments, which are an amalgam of claims that any allegations against Respondent are purely partisan and that there were valid claims of election fraud. At best, they are policy reasons why

9

charges should not be brought, which are premature at the investigative stage when the facts have not been determined.  Moreover, the charging decision is one the Court has delegated to Disciplinary Counsel, subject to the contact member process.  Rule XI, § 6(a).  But just because a lawyer's conduct occurred in a politicized environment does not insulate him from scrutiny for violations of the Rules of Professional Conduct.

WHEREFORE, the Motion to Compel should be granted, and the Motion to Quash should be denied.

Respectfully submitted,

*Hamilton P. Fox, III*

_____
Hamilton P. Fox, III
Disciplinary Counsel
Bar Registration No. 113050

/s/ Jason R. Horrell
Jason R. Horrell
Assistant Disciplinary Counsel
Bar Registration No. 1033885

OFFICE OF DISCIPLINARY COUNSEL
515 Fifth Street, N.W.
Building A, Room 117
Washington, D.C.  20001
(202) 638-1501

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of February, 2022, I caused a copy of the foregoing *Disciplinary Counsel's Response to Respondent's Opposition to Motion to Compel and Cross Motion to Quash Subpoena* to be served to Respondent's counsels via email to Harry W. MacDougald, Esquire hmacdougald@CCEDlaw.com, to Charles Burnham, Esquire, charles@burnhamgorokhov.com, and Robert A. Destro, Esquire, Robert.destro@protonmail.com.

*Hamilton P. Fox, III*
_____
Hamilton P. Fox, III