# EXHIBIT B-19

DCCA NO. 22-BS-0059

DISTRICT OF COLUMBIA

COURT OF APPEALS

Under Seal

| | |
|---|---|
| **In the Matter of**<br><br>**CONFIDENTIAL (J.B.C.), ESQ.**<br><br>Respondent,<br><br>**A Member of the Bar of the District of Columbia Court of Appeals** | Disciplinary Docket<br><br>No. 2021-D193 |

### RESPONSE TO MOTION TO UNSEAL AND CROSS-MOTION TO STAY PROCEEDINGS BEFORE THE BOARD OF PROFESSIONAL RESPONSIBILITY PENDING RESOLUTION IN THIS COURT

Comes now Jeffrey B. Clark, Respondent in the above-entitled matter, and submits this response to the Motion to Unseal filed by the Office of Disciplinary Counsel, and his Cross-Motion to Stay Proceedings Before the Board of Professional Responsibility Pending Resolution in This Court.

### NATURE OF THE CONTROVERSY

ODC opened this case in response to a highly publicized complaint by Senator Dick Durbin, who alleged that Respondent, while serving as an Assistant Attorney General of the United States, violated several provisions of D.C. Rule of Professional Conduct 8.4 when he proposed a draft letter—that was never sent—for

discussion and decision by other senior Department of Justice officials. Like every such investigation initiated under Rule XI, both the existence and nature of investigation are to remain confidential. (*See*, Rule XI § 17(a); Board Rules § 2.19). As was his right under Rule XI § 8(a), Respondent objected to ODC's questions and subpoena, and to the investigatory jurisdiction of the Board over senior DOJ officials on constitutional and other legal grounds. ODC responded to those objections by moving in this Court on February 3, 2022 to enforce that subpoena, and thus chose to put at least a range of the jurisdictional and constitutional issues at the heart of this case before this honorable Court.

Respondent contends here that ODC's volitional filing in this Court under seal divests the Board of Professional Responsibility, including any assigned Hearing Committee, of any jurisdiction to decide the constitutional and legal issues joined in the dispute over the subpoena until this Court relinquishes jurisdiction and remands it to the Board with instructions on how to proceed.

Before finishing the investigation he sought to complete by enforcing the subpoena, and notwithstanding the exclusive jurisdiction of this Court, Disciplinary Counsel filed public charges against Respondent, rupturing the confidentiality requirements of Rule XI §17(a) and Board Rule 2.19. Rule XI does not contemplate simultaneous proceedings arising from the same operative set of facts, and it certainly does not authorize ODC to multiply the proceedings when they are based

on the same allegations, implicate several of the same ethical issues, the same laws, and the same constitutional issues as the enforcement motion pending in this Court. And Rule XI certainly does not contemplate that a confidential investigation that currently has been brought up to this Court's jurisdiction be carried out in public.

Having directly intruded into this Court's exclusive jurisdiction to resolve disputed issues of law, Disciplinary Counsel now seeks this Court's blessing of his own Rule violations by seeking an order unsealing this case even before the Court has had the opportunity to provide the necessary guidance to which the Board— and Respondent—are entitled *before turning to* any hearings on the merits. ODC's actions are an affront to the jurisdiction of this Court, to the integrity of the investigatory process, and a serious violation of Respondent's right to due process of law before this Court.

## PROCEDURAL BACKGROUND

The Office of Disciplinary Counsel attempted to serve a subpoena on Respondent in late 2021. After a lengthy series of exchanges detailed elsewhere, a return date of January 31, 2022 was agreed to without waiving any deficiencies of service. On that date, Respondent delivered a set of thoroughly argued objections to the subpoena, including to the jurisdiction of the D.C. Bar over the subject matters of the investigation. On February 3, 2022, and without making any attempt to confer with counsel for Respondent regarding the objections, Disciplinary Counsel filed a

Motion to Enforce in this Court. On February 15, 2022, Respondent filed his response to the motion to enforce and a cross-motion to quash the subpoena. That filing argued that the D.C. Bar did not have jurisdiction over the conduct in question because (1) under the Take Care Clause and the Opinions Clause, a local bar association could not properly exercise disciplinary jurisdiction over the conduct of senior Department of Justice attorneys in the course of advising the President of the United States; (2) the federal statute giving local bar associations disciplinary authority over attorneys working for the federal government by its terms grants such authority only to States and not the District of Columbia; (3) for this same reason, the Department of Justice regulation that purports to extend disciplinary authority to the D.C. Bar fails at *Chevron* step one under ordinary principles of statutory construction in the administrative law context; and (4) even if the regulation were valid, by its terms it does not apply if the local jurisdiction "would not ordinarily apply its rules of ethical conduct to particular conduct or activity by the attorney." On this latter point, the undersigned are as yet *unaware of any precedent* in this jurisdiction or any other for disciplining a lawyer for the attenuated offense of "attempted dishonesty" in a confidential Pre-Decisional Discussion Draft of a letter that was never sent. Despite repeated calls for Disciplinary Counsel to identify such authority, neither he nor his subordinates have apparently found any such case law.

Respondent also argued to this Court that service of the subpoena was defective on several grounds. Seeking to cure those defects, Disciplinary Counsel served a second subpoena on Respondent. On the return date, Respondent lodged protective objections and a motion to quash with the Board. That submission made the same jurisdictional arguments, among others, to the Board as had been set forth in Respondent's response to the motion to enforce and motion to quash in this Court. Disciplinary counsel responded by filing a motion to strike *in this Court,* contending that this Court had exclusive jurisdiction until it disposed of the Motion to Enforce.

Nevertheless, on July 20, 2022, and while the motion to enforce and cross-motion to quash and the embedded jurisdictional arguments were—and are—still pending before this Court, Disciplinary Counsel filed a Specification of Charges at the Board level.

Disciplinary Counsel attempted to serve the Charges on Mr. Clark on July 20, 2022—without either any prior notice to counsel for Mr. Clark (who is obviously represented for these purposes) or any attempt arrange for acceptance of service as had been done with the second subpoena. This was the day right before the nationally televised prime time broadcast of the July 21, 2022 hearing of the January 6 Committee. After learning of the attempted service, on July 21, counsel arranged for service to be made by agreement, and Mr. Clark accepted service on the morning of July 22, 2022 near his workplace on Capitol Hill in the District. Within an hour, Mr.

Fox's office had blasted a copy of the complaint to six national reporters. *See* Exh. A attached hereto, an email from a Reuters reporter forwarding an email from Lawrence Bloom of the Office of Disciplinary Counsel transmitting a copy of the Charges to one reporter at Bloomberg, two at CNN, two at Reuters, and one at American Lawyer Media.

The filing of the charges was widely reported in the national news. *See*, *e.g.* Google search results for "Jeffrey Clark Bar charges": https://tinyurl.com/2p85nzzn (Approx. 6.5 million results on August 4, 2022). The confidentiality attached to the investigative stage, of which the still-pending proceedings in this Court are part, was thus deliberately circumvented, to great media fanfare.

## ARGUMENT AND CITATION OF AUTHORITY

### I. THIS COURT HAS EXCLUSIVE JURISDICTION.

When a matter comes before the District of Columbia Court of Appeals ("DCCA"), the lower tribunal is typically divested of jurisdiction pending resolution of the case in the DCCA. *See Stebbins v. Stebbins*, 673 A.2d 184, 189 (D.C. 1996), collects numerous authorities on this rule as follows:

> *Morfessis v. Hollywood Credit Clothing Co.*, 163 A.2d 825, 827 (D.C. 1960) (reversing grant of new trial where losing party had already noted an appeal); *Potts v. Catterton*, 82 A.2d 133, 134 (D.C. 1951) (affirming trial court's denial of motion for relief from judgment made during pendency of appeal on the ground that the trial court had no jurisdiction to grant the motion); *Maltby v. Thompson*, 55 A.2d 142–43 (D.C. 1947) (holding that grant of new trial by trial court after appeal had been noted was ineffective); *Lasier v. Lasier*, 47 App. D.C. 80 (1917) (reversing

6

> trial court's order correcting clerical mistake in decree where appeal had previously been perfected); *see also Pyramid Nat'l Van Lines v. Goetze*, 66 A.2d 693, 694 (D.C. 1949) ("When the mandate of an appellate court is filed in the lower court, that court reacquires the jurisdiction which it lost by the taking of the appeal."); *Smith v. Pollin*, 90 U.S. App. D.C. 178, 180, 194 F.2d 349, 350 (1952) ("It is clear that the District Court could not grant a motion for a new trial in a case which is pending in this court upon appeal. Jurisdiction of the case is in this court while the appeal is pending.").

Unlike most cases, this one originated in the DCCA rather than the Board. Despite the original filing coming in this Court, the regular principles of jurisdiction between subordinate and appellate tribunals apply in a straightforward fashion.

ODC opened this matter as a confidential investigation of Respondent. When ODC *by its own choice* filed its Motion to Enforce in this Court, it divested the various components of the Board of Professional Responsibility, including any assigned Hearing Committee, of jurisdiction of this matter. Once pending in this Court under seal, neither ODC, the Board, nor any Hearing Committee can exercise jurisdiction until this Court relinquishes jurisdiction and remands to the Board with instructions on how to proceed.

It is true that the DCCA does not apply this divestiture-of-jurisdiction rule inflexibly. Rather, the Court looks to whether it would be inefficient for a lower tribunal and the DCCA to be simultaneously addressing the same or similar issues: "While the line that marks the division between what the trial court may and may not do is usually cast in terms of 'lack of jurisdiction,' the doctrine is judge-made,

7

designed to avoid the confusion and waste of time that might flow from having two courts deal with a single case at the same time. Hence, it is subject to a common-sense flexibility in application." *Id.* (quoting *Carter v. Cathedral Ave. Coop.*, 532 A.2d 681, 684 n.7 (D.C. 1987)).

This flexibility was demonstrated in *Stebbins* itself, where the DCCA held that the request for mandamus to require the trial court to hold a jury trial did not deprive the trial court of jurisdiction to proceed with the case pending resolution of the mandamus petition. "Because the decision whether to issue an extraordinary writ is discretionary and turns on the particular facts of a given case, it would be inexpedient to create a blanket rule that the mere filing of any such petition has the effect of freezing proceedings in the trial court." *Stebbins*, 673 A.2d at 193.

This is not a situation where a matter so highly discretionary as a mandamus petition is pending in the Court of Appeals. In this case, by contrast, the matter before this court involves the propriety of the subpoenas, which in turn depends on how this Court resolves the legal arguments raised by Respondent's objections to the subpoena and cross-motion to quash. Unsurprisingly, the jurisdictional and merits arguments raised against the subpoena in this Court would significantly overlap with many of the anticipated legal defenses to be asserted in response to the Specification of Charges at the Board level and its subordinate Hearing Committee level. The jurisdictional arguments will include the same as the jurisdictional arguments raised

here. The merits arguments that there is no violation of the Rules will also be the same, though they are of course more focused now that specific charges have been filed. The gist of the merits argument, however, is clearly the same. Rule 8.4 is not violated (or even implicated) when a senior Justice Department attorney proposes a policy position in a draft letter and circulates it for discussion among other senior Department of Justice attorneys. Nor is Rule 8.4 violated (or even implicated) if that policy proposal is rejected after those discussions and the draft letter never goes out.

In light of the overlap between the arguments to be made here and below, there is no efficiency in allowing one matter to proceed in the DCCA while another matter proceeds before a Hearing Committee or the Board, particularly after this case has been pending for months in this Court and may thus have involved an investment in research here by the Judges. *See id.* at 189 ("[T]he issue is whether it is judicially efficient for the trial court to take a particular action in the face of the particular matter pending before the appellate court."). "The rule against trial court action affecting matters on appeal is grounded not in metaphysical notions regarding transfer of power, but on practical considerations concerning efficient judicial administration." *Id.* at 190. It would make no sense and be wasteful for the Hearing Committee, the Board, and the DCCA to simultaneously adjudicate the same or, at the very least, highly similar legal issues all going to the jurisdiction, validity and propriety of the investigation and now of the Charges.

9

Disciplinary Counsel's position on this Court's exclusive jurisdiction appears to have "evolved." When Respondent, in an abundance of caution, lodged his motion to quash with the Board, ODC responded with a motion to strike in this Court arguing "neither the Board nor any hearing committee that the Board might assign, has jurisdiction over this matter because the matter is before the Court." *See* Motion to Strike, filed March 15, 2021, p 3).[1] ODC was right then and wrong now. The Court may even wish to conclude that ODC is estopped from changing its position so long after this case was filed by ODC itself.

## II. THE PROCEEDINGS BELOW SHOULD BE STAYED AND ALL PROCEEDINGS SEALED PENDING THIS COURT'S DECISION.

The most appropriate resolution of this problem—created by ODC's decision to file charges before his motion to enforce and the cross-motion to quash have been decided—is to hold that the Board and Hearing Committee do not have jurisdiction over any aspect of this case unless and until it is remanded, once the DCCA has ruled. Since that is true *ab initio* as to the Charges, this Court would be within its rights in ordering the Charges dismissed without prejudice. We do not need to seek that remedy, at least not at this time. It suffices for us instead to ask right now only

---

[1] It appears that this "evolution" occurred simply because Disciplinary Counsel grew impatient with the pace of this Court's disposition of his Motion to Enforce, changed his mind on this Court's exclusive jurisdiction (without notifying the Board or Hearing Committee Chair, either of (a) the pendency of the sealed case Disciplinary Counsel himself had brought, or (b) of the position he himself had taken on divesture of jurisdiction). Instead, he elected to file and publicize charges on a schedule that happened to fit hand-in-glove with the January 6 Committee's prime time television hearing schedule.

for the lesser remedy of ordering a general stay of all proceedings in the D.C. Bar below (at any stage of its processes) pending resolution of the sealed case presently before this Court. This would allow Disciplinary Counsel the ability to argue, depending on how the pending cross-motions are resolved, that it should later be allowed to reactivate the case below without having to refile documents, although issues of scheduling would need to be reopened at that point.

In aid of its own jurisdiction and to protect the integrity of the proceedings, the Court should also order the Board and the Hearing Committee to seal *all proceedings* below, if any continue, pending the resolution of this case in this Court. Since the Board has no jurisdiction pending resolution of this case, Disciplinary Counsel's filing of public Charges at the Board level was improper. And such an improper act should not destroy the confidentiality of the investigative stage, which continues at least as long as the motion to enforce and cross-motion to quash remain pending in this Court.

Disciplinary Counsel's motion to unseal in this Court attempts to ju-jitsu the improperly filed Charges before the Board to leverage the unsealing of proceedings in this Court. The combined affront to this Court's jurisdiction *and to* the confidentiality of these proceedings is further illustrated by the Board below ordering the parties to *redact* their sealed Board filings, so as to make them publicly available. That remedy is directionally helpful in the sense that the Board seeks to

preserve the seal imposed on these proceedings narrowly defined, but it is far from sufficient to address the core impropriety of Disciplinary Counsel filing public charges in a sealed case over which the Board has no jurisdiction.

      Additionally, the Court has discretion under Rule XI, § 17(a) to order that the proceedings remain sealed, even after charges have been filed. In this case, the Court should, at the very least, exercise that discretion in the alternative to order all proceedings before the Board and in this Court to remain sealed pending the ruling of this Court. Keeping the case sealed would eliminate any further temptation or incentive to try the case in the press, or to coordinate filings with the respective internal or external schedules of the January 6 Committee or the Department of Justice. It would also protect Respondent from a public war of words in which he stands largely unarmed as a result of having invoked his right against self-incrimination. Insulating these proceedings from prejudicial publicity of the type that has already occurred would forestall any untoward public pressure in either direction, prevent further gamesmanship, and promote the orderly administration of justice.

Respectfully submitted this 11 day of August, 2022.

/s/ *Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Robert A. Destro*
Ohio Bar #0024315
4532 Langston Blvd, #520
Arlington, VA 22207
202-319-5303
robert.destro@protonmail.com

**Motion for pro hac vice admission in progress*

Harry W. MacDougald*
Georgia Bar No. 453076
Caldwell, Carlson, Elliott & DeLoach, LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

* *Motion for pro hac vice admission in progress*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this *Response to Motion to Unseal and Cross-Motion to Stay Proceedings Before the Board of Professional Responsibility Pending Resolution in This Court* by email addressed to:

Hamilton P. Fox
D.C. Bar
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org

This 11 day of August, 2022.

                                            */s/ Charles Burnham*
                                            Charles Burnham
                                            DC Bar No. 1003464
                                            Burnham and Gorokhov, PLLC
                                            1424 K Street, NW
                                            Suite 500
                                            Washington DC 20005
                                            (202)3866920
                                         charles@burnhamgorokhov.com

**Subject: FW: Public Specification of Charges (Clark)**

From: Lynch, Sarah N. (Reuters) - To: JEFFREY.B.CLARK@GMAIL.COM, hmacdougald@ccedlaw.com - Cc:  - Date: July 22, 2022 at 10:08 AM, Attachments: Spec. Jeffrey B. Clark.pdf

Jeff & Harry,

Do you have any response to these charges?
Please email if possible.
I am in court, covering the Bannon trial, so unable to take calls at this time.

Best,
Sarah

202 579 0289

---

**From:** Lawrence Bloom <blooml@dcodc.org>
**Sent:** Friday, July 22, 2022 10:01 AM
**To:** David McAfee <dMcAfee@bloombergindustry.com>; Katelyn Polantz <katelyn.polantz@warnermedia.com>; Scarcella, Mike (Reuters) <Mike.Scarcella@thomsonreuters.com>; Lynch, Sarah N. (Reuters) <Sarah.N.Lynch@thomsonreuters.com>; Tierney Sneed <tierney.sneed@warnermedia.com>; Vanessa Blum <vblum@alm.com>
**Cc:** Phil Fox <FoxP@dcodc.org>; Angela Thornton <thorntona@dcodc.org>
**Subject:** [EXT] Public Specification of Charges (Clark)

**External Email:** Use caution with links and attachments.


Lawrence K. Bloom
Senior Staff Attorney
Office of Disciplinary Counsel
515 Fifth Street, NW
Building A, Room 117
Washington, DC 20001
(202) 638-1501 ext. 1744

**Exhibit A**